IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| EMAS CHIYODA SUBSEA LIMITED, *et al.*, | § § § | Case No. 17-31146 |
| Debtors.[1] | § § § | (Jointly Administered) |

**OBJECTION OF CROWLEY MARINE SERVICES, INC. TO
DEBTORS' DISCLOSURE STATEMENT**

**TO THE HONORABLE JUDGE MARVIN ISGUR:**

Crowley Marine Services, Inc. ("Crowley") submits that the Court should not approve the Debtors' Disclosure Statement in its current form because it does not contain adequate information as that term is defined in Section 1125(a)(1) of the Bankruptcy Code. Crowley is unable to make informed judgments about the Debtors' Plan. In addition, the Disclosure Statement currently describes a Plan that is not confirmable.

### I.   PROCEDURAL BACKGROUND

1. On February 27, 2017, EMAS CHIYODA Subsea Limited and fourteen affiliated companies (collectively, the "Debtors") filed voluntary petitions in the United States Bankruptcy Court for the Southern District of Texas seeking relief under chapter 11 of the United States Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number and jurisdiction of formation are as follows: EMAS CHIYODA Subsea Limited (UK) (3187); EMAS Chiyoda Subsea Inc. (Delaware) (7884); EMAS CHIYODA Subsea Marine Base LLC (Texas) (5974); Lewek Falcon Shipping Pte. Ltd. (Singapore) (041E); EMAS CHIYODA Marine Base Holding Co., LLC (Texas) (7463); EMAS Chiyoda Subsea Services Pte. Ltd. (Singapore) (333Z); EMAS-AMC Pte. Ltd. (Singapore) (0442); EMAS Saudi Arabia Ltd. (Saudi Arabia) (0669); Lewek Constellation Pte. Ltd. (Singapore) (376E); EMAS CHIYODA ROV Pte. Ltd. (Singapore) (049M); EMAS CHIYODA Subsea Services B.V. (Netherlands) (4073); EMAS CHIYODA Subsea Services (UK) Limited (Scotland) (3187); EMAS CHIYODA Subsea Services LLC (Delaware) (1728); EMAS CHIYODA Subsea (Thailand) Co., Ltd. (Thailand) (1011); Gallatin Marine Management, LLC (Delaware) (8989). The address of the Debtors' U.S. headquarters is 825 Town & Country Ln, Suite 1500, Houston, TX 77024.

2. On March 21, 2017, the United States Trustee appointed a Committee of Unsecured Creditors, of which Crowley is a member. *See* Dkt. No. 130. Crowley disclosed its secured claims and lien rights in response to the submission of forms solicited by the Office of the United States Trustee.

3. On February 28, 2017, the Debtors filed a motion seeking approval of DIP financing to be funded jointly by Subsea 7 Finance (UK) PLC ("Subsea 7"), one of the Debtors' principal competitors, and Chiyoda Corporation, one of the Debtors' largest shareholders.

4. On May 6, 2017, the Debtors filed their Plan and Disclosure Statement, seeking expedited consideration, with the only exhibit to the Plan comprised of a draft proposal Bareboat Charter from the Constellation Lenders to Subsea 7, and all other exhibits designated as "[TO COME]." *See* Dkt. Nos. 356-57.

5. On May 8, 2017, Crowley filed its Proof of Claim against EMAS Chiyoda Subsea, Inc. POC No. 316.

6. On May 11, 2017, Crowley filed its Proof of Claim against Lewek Constellation Pte. Ltd. POC No. 378.

7. On May 15, 2017, Crowley filed its Proof of Claim against Gallatin Marine Management, LLC. POC No. 579.

8. On May 11, 2017, the Court entered an order to shorten the time period to object to the Disclosure Statement to May 22, 2017 at 4:00 p.m. (CST). Dkt. No. 368.

9. On May 19, 2017, Crowley filed its Notice of Perfection of Maritime Lien. Dkt. No. 402.

## II.     FACT BACKGROUND

10.     Crowley is a current creditor of the Debtors with both pre-petition and post-petition accruing amounts owed by the Debtors.  Pursuant to agreements with the Debtors, Crowley's 455-6 barge (referred to by the Debtors as the "RB1") was uniquely customized for the provision of supplies, storage, spooling of pipe, and transportation of pipe spools (both empty and loaded with strings of pipe) for the benefit of Debtors and the Lewek Constellation vessel (the "Constellation").  Support and service for the Constellation became and continues to be the RB1's sole function (with its customization, the RB1 can only provide services to the Constellation and cannot be used for any other purpose, as a cargo barge or otherwise).  After an active seven month project to fundamentally modify the RB1 (including extensive structural alterations and the addition of ballast transfer, hydraulic, electrical, and other systems above and below deck), it is the only barge in the world capable of supporting and enabling functions of the Constellation, including its rigid pipelay ability.  With the Constellation and the services of the RB1, the Debtors are able to secure and undertake offshore projects that others cannot as a result of the specialized functions of these vessels.

11.     As of the Petition Date, Crowley was owed at least $1,361,558.20 in unpaid monthly invoices.  Crowley continues to accrue post-petition damages at a rate of at least $9,300 per day, plus interest and attorneys' fees, relating to all pre and post-petition amounts due.  Crowley also faces damages from any failure of the Debtors to restore the RB1 to its original condition upon a final redelivery of the RB1, as both covenanted and guaranteed by the Debtors.  While all maintain that Crowley and the RB1 are critical to projects involving the Constellation, Crowley has received no payment since the filing of the Bankruptcy Cases and is generally unable to determine its proposed treatment under the Disclosure Statement or Plan.  Meanwhile,

the Debtors continue to control the RB1, Crowley's barge, without any payment or consideration to Crowley.

12. Crowley is a secured creditor as a result of self-perfecting maritime and possessory carrier liens. *See* Dkt. 402 and Claim No. 316. Crowley's maritime and carrier liens are against the Constellation and against the fixtures, appurtenances, equipment and apparel – specifically including the four pipe spools aboard – and infrastructure installed on its barge, the RB1.

13. As requested by the Debtors, Crowley has attempted to exercise patience. Nonetheless, even to this day with the current Disclosure Statement and Plan, Crowley remains in the dark as to the future of the Debtors' enterprise, the treatment of its claims and rights, and it is unable to assess and make informed judgments relating to the Plan.

### III.   STATUTORY FRAMEWORK

14. Under § 1125(b) of the Bankruptcy Code, a disclosure statement must contain "adequate information" before the debtor may solicit acceptance of a plan of reorganization or liquidation. 11 U.S.C. § 1125(b).

15. The Bankruptcy Code defines "adequate information" as:

> . . . information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan . . .

11 U.S.C. § 1125(a)(1).

16. "Adequate information" is defined to include information of a kind and in

sufficient detail insofar as is reasonably practicable in light of the nature and history of the debtor to enable a hypothetically reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about a proposed chapter 11 plan of reorganization. *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988), cert. denied, 488 U.S. 926 (1988); *In re Divine Ripe, L.C.C.*, 554 B.R. 395, 401-02 (Bankr. S.D. Tex. 2016).

## IV.   OBJECTIONS

### A. The Disclosure Statement and Plan Do Not Contain Information Leading to Any Assurances that Administrative Claims will be Paid or that the Plan is Feasible.

17.   The Disclosure Statement fails to adequately explain how administrative claims will be satisfied.  Moreover, there is no comfort from the Disclosure Statement that administrative claims *can* be satisfied from the proposed Plan.[2]  Unless a holder agrees to different treatment, administrative expense claims must be paid on the plan's effective date. Code Section 1129(a)(9)(A).  This requirement is a condition to the confirmation of a plan. *Id.* In addition to its pre-petition claims, Crowley has been wholly unpaid for its daily accruing charges post-petition for the Debtors continuing charter of the RB1.  Consequently, it is relevant for Crowley to understand that there will be sufficient payment available for Crowley's damages both as a secured creditor and administrative creditor.  It is also unsupportable for Newco, *in its sole discretion*, to determine which administrative claims are "ordinary course."  *See* Plan Article 1.14 and 1.15.  Finally, it is patently unconfirmable for some Allowed Administration Claims to become obligations transferred to an undetermined "affiliate of Newco into which purchased assets are transferred in the ordinary course of business."  Disclosure Statement, p. 22.  As a

---

[2] Debtors provide that there is no assurance that actual amounts of Allowed Claims will not exceed estimates. *See e.g.* Disclosure Statement, n. 3, at p. vi.

result of the delays and collection risk, such treatment is blatantly disparate to the treatment of other Administrative Claims (such as professional fees) receiving prompt cash payment. *Id*.

18. Further, the Debtors fail to make the disclosures necessary to determine whether the Plan is feasible. It is clear that Subsea 7 intends to inherit the Debtors' lucrative offshore projects (cited by the Debtors as having an order backlog with current potential revenue in excess of $1 billion, *see* Disclosure Statement, at p. 3). Unclear is whether the special purpose entity Newco to be created by Subsea 7 even intends to continue as an enterprise or if it will just assign such inherited business to its own affiliates. It is currently a mystery if Newco will even be directly capitalized. For confirmation, a plan may not likely be followed by the reorganized debtors liquidation or the need for further financial reorganization. Code Section 1129(a)(11). The Disclosure Statement provides no information for a creditor to make evaluations or determinations on these points. With no information or projections, it is impossible to weigh the future prospects of the Emerging Debtors. The exhibits necessary to assess any details are all noticed as forthcoming, including basic details such as a corporate chart. Such facts are also important to Crowley because it must analyze the ability of the Emerging Debtors to restore its barge (the RB1) upon the completion of such projects and as required upon its the RB1's Certificate of Redelivery. In addition, the Plan states that secured claimants may, as an alternative, receive the collateral securing its claim. Absent from the Disclosure Statement or Plan is how this process would work, particularly troubling considering that creditors and the Court have been largely left in the dark as to even the location of certain of the Debtors' vessels.

### B. No Liquidation Analysis

19. Creditors cannot meaningfully make determinations about the Plan without a liquidation analysis for each of the Emerging Debtors. The Debtors have not provided a

liquidation analysis for any of the Debtors.  Such an analysis is required for soliciting votes on a plan.  *See e.g. In re Zaruba,* 384 B.R. 254, 257 (Bankr. D. Alaska 2008); *In re Mbanugo,* 2009 WL2849066 (Bankr. N.D. Cal. 2009) (explaining lack of liquidation analysis and insufficient discussion of feasibility as the "most serious problems" with the disclosure statement).  Importantly, no liquidation analysis is provided for the Debtors' current contract and major project rights.  If the purpose of this Plan is principally to provide Subsea 7, the ability to inherit a series of major offshore projects, then creditors should have the ability to assess the value of these projects and the competitive process to market the transition of such projects.

### C.  No Market Test

20. Likewise, the Disclosure Statement contains no data relating to the value of the contracts, the value of the companies, or the value of the assets to be sold.  The Disclosure Statement has no information to determine market value, sale efforts and competitive interest, or metrics related to obtaining the highest value to the estates for the assignment of projects, in addition to the value of the assets or companies.  Meanwhile, the references to a "Competing Plan Sponsor" (and the potential submission of other offers) appears to ring hollow in light of (i) the absence of any disclosure regarding such alleged solicitation, and (ii) the brief history of the case and elements surrounding the DIP financing.  And, one must wonder, who would ever really bid when it must be on *all or nothing,* and a deposit would be required from any bidder equal to the full amount of the DIP Obligations (with the full amount nonrefundable with any failure to close by the closing date).  Moreover, there have never been any sale procedures or bid procedures filed (or even proposed) for any of these estate assets throughout the duration of these bankruptcy cases.

### D. The Disclosure Statement Ignores, Among Other Debtors, Gallatin Marine Services, Inc.

21. While the Debtors have identified five Emerging Debtors and three Liquidating Debtors in their Disclosure Statement and Plan, the Debtor Gallatin Marine Management ("Gallatin") is not mentioned. In addition to Crowley's rights against Debtors including EMAS-Chiyoda Subsea, Inc. and Lewek Constellation Pte. Ltd., Gallatin is an additional obligor to Crowley, including as a Charter Party designee. The Debtors reference such Charter Party is an executory contract (*see* Dkt. No 242, at p. 30), but the Debtors have failed to pay Crowley while continuing to control Crowley's barge.

22. The Disclosure Statement provides:

> Except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to Bankruptcy Code sections 365 and 1123 as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (i) is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases contained in the Plan Supplement . . .

Disclosure Statement, at p. 45, Article (VI)(I)(1)(a). To make informed decisions relating to the exercise of its rights, Crowley must know the Emerging Debtors' intentions relating to Crowley's assets and not be left guessing. In addition to Crowley's current inability to determine its rights as to Debtor counter-parties and the priority and source for payment of its secured claims, any discussion of Gallatin is glaringly absent, all disabling Crowley from making informed decisions from the current Disclosure Statement.

### E. The Disclosure Statement Fails to Address the Treatment of the RB1.

23. Although the Disclosure Statement discusses a potential sale and lease-back of the Lewek Constellation, Debtors make no mention of their plans for the continued utilization of the RB1. Without adequately addressing, or even referencing the RB1, the Debtors have not

provided adequate information to Crowley. While the Debtors have sought patience and indicated assurances, the Disclosure Statement and Plan are now on file, and Crowley and other creditors are entitled to substantive treatment descriptions in the Disclosure Statement and Plan.

### F. The Disclosure Statement Fails to Adequately Address the Treatment of Maritime Claims.

24. The Disclosure Statement fails to adequately account for the treatment of maritime and possessory liens. As a maritime debtor that owns numerous vessels, and as a company that specializes in deepwater subsea construction, a significant number of the Debtors' creditors may be able to assert maritime liens against the Debtors. The Debtors admit that such claims are present in their Motion to Pay Critical Vendors. *See* Dkt. No. 11 ("Unique to maritime cases, any Critical Vendor that supplies the Debtors' vessels with goods or services that could be considered "necessaries" at that term is understood under the maritime laws of the United States and most jurisdictions may claim a maritime lien against the vessels.") Yet the Disclosure Statement only mentions – in parenthesis – that maritime liens will be within the category of "Other Secured Claims." *See* Disclosure Statement, at p. 44, Article (VI)(H)(22). The Disclosure Statement should be modified to provide maritime lienholders with clear and adequate information so that they can understand their priority among claims the Debtors believe maritime lienholders have against each of the vessels – specifically the Constellation. Moreover, the Plan proposes to pay DIP Lenders in full and in cash, but meanwhile, the DIP Lenders only obtained liens subordinate to existing prep-petition lienholders such as Crowley.

25. Crowley seeks amendments to the Disclosure Statement to determine if its payment and other deficiencies will be quickly cured, and whether the Debtors can provide adequate assurances of future performance with the obligations to Crowley, including barge restoration. Critically, Crowley and other creditors are entitled to have definition surrounding

"Assumed Liabilities" to assess the Plan. Without clarity around these issues, Crowley is entitled to the immediate return of its barge from the Debtors in restored form and full payment on its secured and administrative claims.

### G. The Disclosure Statement Fails to Account For the Treatment of Maritime Claims Arising From the Potential Sale of The Constellation.

26. The Disclosure Statement states that on the Effective Date, "Newco . . . may acquire free and clear of all claims and interests to the fullest extent permitted by Bankruptcy Code section 1141(c) additional assets (including through the assumption of executory contracts) from a Liquidating Debtor through a sale or assumption, as the case may be, under the Plan." *See* Disclosure Statement, at p. 37, Article (VI)(H)(5). Lewek Constellation Pte. Ltd. is referenced by the Debtors to be an owner of the Constellation, a Liquidating Debtor. Crowley's maritime lien attaches to, among other things, the Constellation. *See* Dkt. No. 237, at p. 23. Despite the protections afforded to maritime claimants under the Federal Maritime Lien Act, it is unclear whether the Debtors seek to sell the Constellation to pay other claim holders – specifically the Constellation Lenders – impermissibly ahead of the maritime lienholders.[3] As previously mentioned, the Debtors treatment of maritime lien claims in their Disclosure Statement is vague and fails to provide maritime lien claimants with an informed judgment about the Plan.

### H. Additional Issues Justifying Objections – Substantive Consolidation, Absence of a Plan Support Agreement, a Lack of Meaningful Disclosure, and Disallowance of Credit Bidding.

27. The Disclosure Statement and Plan currently implement a substantive consolidation of the Debtors for general creditor recoveries while potentially preserving affiliate

---

[3] Pursuant to the Constellation Lenders' Stipulation and Agreed Order Concerning Adequate Protection, Dkt. No. 274, Crowley was carved-out from the grants of relief and replacement liens of the Constellation Lenders, with the lien rights of Crowley maintaining their relative priority under applicable law. Dkt. 274, para. 17, p.13.

and other claims. At least three different Debtors are liable for the full amount of Crowley's claims (EMAS Chiyoda Subsea Inc. as contractual guarantor and lien obligor, Gallatin as contractual obligor and lien obligor, and Lewek Constellation Pte. Ltd. as maritime lien obligor). Yet the Debtors' Plan proposes that certain creditors may only recover as though having one claim against the Debtors on a consolidated basis. The Debtors have the burden to show that prejudice resulting from consolidation is outweighed by the greater prejudice of the continued separation of estates. *AHF Dev. Ltd.,* 462 B.R. 186, 195 (Bankr. N.D. Tex. 2011). This is a burden the Debtors cannot demonstrate and have not even attempted to demonstrate. By virtue of the Constitutional rights implicated and its impact on the substantive rights of parties, substantive consolidation is subject to heightened scrutiny and should not be allowed here.

28.     Releases and exculpations under the Disclosure Statement and Plan appear inconsistent with the boundaries of propriety determined by the Fifth Circuit. Non-debtor releases are appropriate only if explicitly or implicitly allowed by the Bankruptcy Code (such as enjoining 3rd party asbestos claims). *In re Pacific Lumber Co.,* 584 F.3d 229 (5th Cir. 2009). Such releases are inconsistent with the text and purpose of the Bankruptcy Code. *Id.; In re Pilgrim's Pride Corp.,* No. 08-45664-DML-11, 2010 WL200000 (Bankr. N.D. Tex. Jan 14, 2010) ("Because *Pacific Lumber* is binding precedent, the court may not, over objection, approve through confirmation of the Plan third-party protections, other than those provided to the Committees, members of the Committee, and the Committees' Professionals."). While certain courts have nonetheless allowed releases when consideration (and consent) is provided and such transactions are tantamount as the settlement of a dispute, in the case at bar, no consideration is even present. *See e.g., In re Bigler LP,* 442 B.R. 537, 543 (Bankr. S.D. Tex. 2010).

29. Moreover, the Plan indicates that the Plan Sponsors would be entitled to an Expense Reimbursement of up to $1.75 million from the Debtors under certain circumstances. The justification for such a payment is absent, particularly as the Plan Sponsors likely dictated the terms of the Plan.  Likewise, parties in interest with no security and creditors that are under-secured are proposed to receive attorneys' fees and expenses, but maritime and possessory lien claimants are not provided with no similar treatment.

30. Also glaringly absent is any optics behind the Plan Support Agreement.  No such agreement has been filed or any details made available.  These facts are particularly troubling considering that these chapter 11 cases began with terms of a DIP financing pre-ordaining the terms creditors are struggling to evaluate today.

31. The Disclosure Statement and Plan fail to include a valuation analysis, liquidation analysis, financial projections, or optics into the history and nature of this proposed reorganization.  Also absent and needed is the identity of the "Assumed Liabilities."  The Plan and Disclosure Statement are generic in form and an open decision-tree in nature.  *In re Briscoe,* 138 B.R. 795 (N.D. Tex. 1992) (a plan which is a scheme based on conjecture, speculation or unreasonable projections is not sufficiently feasible to be confirmed); *In re Momentum,* 25 F.3d 1132, 1136 (2d Cir. 1994) ("prime importance in the reorganization process is the principle of disclosure").  If the Disclosure Statement or Plan are substantively modified, the expedited Disclosure Statement hearing should be delayed until parties can meaningfully evaluate whether the host of infirmities have been cured and to properly assess plan treatment and implications prior to solicitation.

32. The Disclosure Statement and Plan currently do not allow Crowley to credit bid its secured claims. These omissions are improper. 11 U.S.C § 1129(b)(2)(A)(ii); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070 (U.S. 2012).

## V. RESERVATION OF RIGHTS

33. Crowley reserves its rights to assert additional deficiencies at the hearing on the approval of the Disclosure Statement and incorporates applicable objections as may be filed by other creditors. Moreover, Crowley is concerned that significant nonconsensual amendments to the Plan and Disclosure Statement could deprive parties of proper notice as required by Bankruptcy Rule 2002.

34. **WHEREFORE**, Crowley respectfully requests that unless the Disclosure Statement and Plan are modified to satisfy these objections, as set forth in more detail herein, the Disclosure Statement should not be approved.

Dated: May 22, 2017                        **SIDLEY AUSTIN LLP**

*/s/ Michael Fishel*
Duston K. McFaul
Texas Bar No. 24003309
Federal Bar No. 21769
Michael Fishel
Texas Bar No. 24082998
Federal Bar No. 1726005
SIDLEY AUSTIN LLP
1000 Louisiana Street, Suite 6000
Houston, TX 77002
Telephone: (713) 495-4500
Facsimile: (713) 495-7799
dmcfaul@sidley.com
mfishel@sidley.com

**Counsel for Crowley Marine Services, Inc.**

ACTIVE 221993445v.3

## **CERTIFICATE OF SERVICE**

     I hereby certify that on May 22, 2017, a true and correct copy of the foregoing Objection of Crowley Marine Services, Inc. to the Disclosure Statement has been served on all parties in this action who receive electronic service through the Court's ECF system.

                                          */s/ Michael Fishel*
                                          Michael Fishel

Case 17-31146   Document 421   Filed in TXSB on 05/22/17   Page 14 of 14