## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11** |
|  | : |  |
| **EMAS CHIYODA SUBSEA LIMITED,** *et al.*, | : | **Case No. 17-31146 (MI)** |
|  | : |  |
|  | : | **(Jointly Administered)** |
| Debtors.[1] | : |  |

## THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF CERTAIN AFFILIATED DEBTORS OF EMAS CHIYODA SUBSEA LIMITED

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

George N. Panagakis
Justin M. Winerman
Robert Fitzgerald
Roy Leaf
155 N. Wacker Dr.
Suite 2700
Chicago, Illinois 60606
Telephone: (312) 407-0700
Fax: (312) 407-0411

Counsel for Debtors and Debtors in Possession

Dated: May 24, 2017

PORTER HEDGES LLP

John F. Higgins (No. 09597500)
Joshua W. Wolfshohl (No. 24038592)
Aaron J. Power (No. 24058058)
Brandon J. Tittle (No. 24090436)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Fax: (713) 228-1331

Counsel for Debtors and Debtors in Possession

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number and jurisdiction of formation are as follows: EMAS CHIYODA Subsea Limited (UK) (3187); EMAS Chiyoda Subsea Inc. (Delaware) (7884); EMAS CHIYODA Subsea Marine Base LLC (Texas) (5974); Lewek Falcon Shipping Pte. Ltd. (Singapore) (041E); EMAS CHIYODA Marine Base Holding Co., LLC (Texas) (7463); EMAS Chiyoda Subsea Services Pte. Ltd. (Singapore) (333Z); EMAS-AMC Pte. Ltd. (Singapore) (0442); EMAS Saudi Arabia Ltd. (Saudi Arabia) (0669); Lewek Constellation Pte. Ltd. (Singapore) (376E); EMAS CHIYODA ROV Pte. Ltd. (Singapore) (049M); EMAS CHIYODA Subsea Services B.V. (Netherlands) (4073); EMAS CHIYODA Subsea Services (UK) Limited (Scotland) (3187); EMAS CHIYODA Subsea Services LLC (Delaware) (1728); EMAS CHIYODA Subsea (Thailand) Co., Ltd. (Thailand) (1011); Gallatin Marine Management, LLC (Delaware) (8989).  The address of the Debtors' U.S. headquarters is 825 Town & Country Ln, Suite 1500, Houston, TX 77024.

# TABLE OF CONTENTS

**Page**

Article I

DEFINITIONS, RULES OF
INTERPRETATION, AND COMPUTATION OF TIME

A. Scope of Definitions .................................................................................1
B. Definitions.................................................................................................2
C. Rules of Interpretation ............................................................................20
D. Computation of Time ..............................................................................21
E. References to Monetary Figures .............................................................21
F. Exhibits ...................................................................................................21

Article II

ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

2.1 Administrative Claims .............................................................................21
2.2 DIP Facility Claims.................................................................................22
2.3 Professional Claims ................................................................................23
2.4 Priority Tax Claims.................................................................................23

Article III

CLASSIFICATION OF CLAIMS AND INTERESTS

3.1 Classification of Claims and Interests.....................................................24

Article IV
IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND
UNIMPAIRED BY THE PLAN

4.1 Classes of Claims that are Unimpaired...................................................26
4.2 Impaired Classes of Claims and Interests. ..............................................27

Article V

PROVISIONS FOR TREATMENT
OF CLAIMS AND INTERESTS

5.1 Classes 1A through 5A – Other Secured Claims (Emerging Debtors) .................28
5.2 Classes 6A through 8A – Other Secured Claims (Liquidating Debtors). ..............29
5.3 Class 8B – Helix Secured Claims (Marine Base Opco Debtor). .........................29
5.4 Class 6C – Constellation Lender Secured Claims (Constellation Debtor). ...........30

i

5.5     Class 7D – Falcon Lender Secured Claims (Falcon Debtor). .................................31
5.6     Classes 1E through 5E – Other Priority Claims (Emerging Debtors) ..................32
5.7     Class 6E – Other Priority Claims (Constellation Debtor)....................................32
5.8     Class 7E – Other Priority Claims (Falcon Debtor). ..............................................33
5.9     Class 8E – Other Priority Claims (Marine Base Opco Debtor) ..........................33
5.10    Classes 1F through 8F – Bank Guarantee Claims (All Plan Debtors)..................34
5.11    Classes 1G through 3G and 5G – General Unsecured Claims (Emerging
        Debtors).....................................................................................................................34
5.12    Classes 6G and 7G – General Unsecured Claims (Constellation Debtor
        and Falcon Debtor) ..................................................................................................35
5.13    Class 8G – General Unsecured Claims (Marine Base Opco Debtor) ..................35
5.14    Classes 1H through 8H – Cancelled Intercompany Claims (All Plan
        Debtors).....................................................................................................................35
5.15    Class 1I through 8I – Subordinated Claims (All Plan Debtors)...........................36
5.16    Class 1I through 8J – Interests (All Plan Debtors) ...............................................36

## Article VI

## ACCEPTANCE

6.1     Classes Entitled to Vote ..........................................................................................37
6.2     Acceptance by Impaired Classes ............................................................................37
6.3     Elimination of Classes .............................................................................................37
6.4     Deemed Acceptance if No Votes Cast ...................................................................37
6.5     Cramdown ................................................................................................................37

## Article VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

7.1     General Settlement of Claims and Interests............................................................37
7.2     Plan Funding ............................................................................................................38
7.3     Cancellation of the Prepetition Credit Facility and Interests ...............................38
7.4     Authorization and Issuance of New Equity in the Emerging Debtors to
        Newco and Purchase of US Debtor Assets ...........................................................38
7.5     Acquisition of Additional Debtor Assets ...............................................................38
7.6     Continued Corporate Existence ..............................................................................38
7.7     Restructuring Transactions .....................................................................................38
7.8     Plan Administrator ...................................................................................................39
7.9     Post-Emergence Structure of the Debtors ..............................................................40
7.10    New Corporate Governance Documents .................................................................40
7.11    Directors, LLC Managers, and Officers of the Plan Debtors ...............................40
7.12    Corporate Action......................................................................................................40
7.13    Effectuating Documents; Further Transactions ......................................................40
7.14    Employment, Retirement, and Other Agreements and Employee
        Compensation Plans.................................................................................................41
7.15    Causes Of Action .....................................................................................................42

7.16    Reservation of Rights.................................................................................42
7.17    Exemption from Certain Transfer Taxes and Recording Fees.............................43
7.18    Termination of Utility Deposit Account ........................................................43
7.19    Constellation Debtor ................................................................................43
7.20    All Asset Qualified Offers .........................................................................44
7.21    Falcon Vessel ..........................................................................................44
7.22    Sources of Cash for Plan Distributions.........................................................44
7.23    Allocation of Liabilities. ...........................................................................44
7.24    Reinstatement and Continuation of Insurance Policies. ...................................45

Article VIII

UNEXPIRED LEASES AND EXECUTORY CONTRACTS

8.1    Rejection of Executory Contracts and Unexpired Leases....................................45
8.2    Assumption of Executory Contracts and Unexpired Leases.................................46
8.3    General Reservation of Rights ...................................................................49

Article IX

PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

9.1    Determination of Claims and Interests .........................................................49
9.2    Claims Administration Responsibility...........................................................50
9.3    Objections to Claims................................................................................50
9.4    Expungement or Adjustment of Claims Without Objection..................................50
9.5    Disallowance of Claims ............................................................................51
9.6    Estimation of Claims................................................................................51
9.7    No Interest on Disputed Claims ..................................................................51
9.8    Amendments to Claims.............................................................................51

Article X

PROVISIONS GOVERNING DISTRIBUTIONS

10.1    Time of Distributions................................................................................52
10.2    Currency................................................................................................52
10.3    Distribution Agent ...................................................................................52
10.4    Distributions on Account of Claims Allowed After the Effective Date ...............52
10.5    Delivery Of Distributions ..........................................................................54
10.6    Compliance Matters .................................................................................55
10.7    Claims Paid or Payable by Third Parties .......................................................55
10.8    Setoffs and Recoupment ...........................................................................55
10.9    Allocation of Plan Distributions Between Principal and Interest .........................56

Article XI

EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

11.1   Vesting of Assets ................................................................................................56
11.2   Discharge of Certain of the Plan Debtors ..........................................................56
11.3   The Emerging Debtors ........................................................................................57
11.4   Compromises and Settlements ...........................................................................57
11.5   Release by Plan Debtors .....................................................................................57
11.6   Release by Holders of Claims and Interests ......................................................58
11.7   Exculpation and Limitation of Liability ............................................................59
11.8   Indemnification Obligations ..............................................................................59
11.9   Injunction ...........................................................................................................59
11.10  Subordination Rights .........................................................................................60
11.11  Protection Against Discriminatory Treatment ...................................................60
11.12  Release of Liens .................................................................................................60

Article XII

CONDITIONS PRECEDENT

12.1   Conditions to the Effective Date of this Plan.....................................................61
12.2   Waiver of Conditions Precedent ........................................................................62
12.3   Notice of Effective Date .....................................................................................62
12.4   Effect of Non-Occurrence of Conditions to Consummation ...............................62

Article XIII

RETENTION OF JURISDICTION

Article XIV

MISCELLANEOUS PROVISIONS

14.1   Binding Effect.....................................................................................................65
14.2   Payment of Statutory Fees .................................................................................65
14.3   Adequate Protection Obligations .......................................................................65
14.4   Modification and Amendments...........................................................................65
14.5   Confirmation of this Plan ...................................................................................66
14.6   Additional Documents ........................................................................................66
14.7   Dissolution of Creditors' Committee..................................................................66
14.8   Revocation, Withdrawal, or Non-Consummation ..............................................66
14.9   Notices ................................................................................................................67
14.10  Term of Injunctions or Stays..............................................................................68
14.11  Governing Law ...................................................................................................68
14.12  Entire Agreement ...............................................................................................68
14.13  Severability ........................................................................................................69

iv

14.14   No Waiver or Estoppel...........................................................................................69

14.15   Conflicts............................................................................................................69

## INTRODUCTION

The Plan Debtors hereby propose this joint chapter 11 plan of reorganization for the resolution of outstanding Claims and Interests and are the proponents of this Plan within the meaning of Bankruptcy Code section 1129.[1]  The distributions to be made to Holders of Claims are set forth herein.

Under Bankruptcy Code section 1125(b), a vote to accept or reject this Plan cannot be solicited from a Holder of a Claim or Interest until a disclosure statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Interests.  The Disclosure Statement relating to this Plan was approved by the Bankruptcy Court on [_____], 2017 and has been distributed simultaneously with this Plan to all parties whose votes are being solicited.  The Disclosure Statement contains, among other things, a discussion of the Debtors' history, business, properties and operations, risk factors associated with the business and this Plan, a summary and analysis of this Plan, and certain related matters.

**ALL HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.**

Subject to the restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019 and those restrictions on modifications set forth in <u>Article XIV</u> of this Plan, the Plan Debtors, subject to Section 14.4 hereof, expressly reserve their rights to alter, amend, modify, revoke, or withdraw this Plan, one or more times, prior to this Plan's substantial consummation.

## ARTICLE I

## DEFINITIONS, RULES OF <br> INTERPRETATION, AND COMPUTATION OF TIME

### A.      Scope of Definitions

For purposes of this Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined shall have the meanings ascribed to them in <u>Article I.B</u> of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

---

[1]      Unless the context otherwise requires, reference herein to the Debtors shall generally refer to the Plan Debtors or the applicable Plan Debtor as to which a provision pertains.  Further, for the avoidance of doubt, the Non-Reorganizing Debtors are not Plan Debtors for this Plan.

1

**B.**     **Definitions**

    1.1     "**Additional Cash**" means (a) the Existing Cash and (b) the Plan Cash Contribution.

    1.2     "**Adequate Protection Stipulation**" means the adequate protection stipulation entered on a final basis by the Bankruptcy Court on April 13, 2017 [Docket No. 274], as may be extended and modified in a manner consistent with the Plan Support Agreement.

    1.3     "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in Bankruptcy Code section 503(b) and entitled to priority under Bankruptcy Code section 507(a)(2), including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estates and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Cases, Section 503(b)(9) Claims, DIP Facility Claims, Professional Claims, and all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code.

    1.4     "**Administrative Claim Request Form**" means the form to be included in the Plan Supplement for submitting Administrative Claim requests.

    1.5     "**Administrative Claims Bar Date**" means the deadline for filing proofs of or requests for payment of Administrative Claims, which shall be 30 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, and except with respect to (i) DIP Facility Claims, (ii) Professional Claims, (iii) Administrative Claims Allowed by an order of the Bankruptcy Court on or before the Effective Date,  (iv) Ordinary Course Administrative Claims, or (v) Statutory UST Fees, for which the Holders of such Claims (i)-(v) shall not be required to file an Administrative Claim Request Form.

    1.6     "**Administrative Claims Objection Deadline**" means the last day for filing an objection to any request for the payment of an Administrative Claim, which shall be the later of (a) ninety (90) days after the Effective Date or (b) such other date specified in this Plan or ordered by the Bankruptcy Court.  The filing of a motion to extend the Administrative Claims Objection Deadline shall automatically extend the Administrative Claims Objection Deadline until a Final Order is entered on such motion.  In the event that such motion to extend the Administrative Claims Objection Deadline is denied by the Bankruptcy Court, the Administrative Claims Objection Deadline shall be the later of (i) the current Administrative Claims Objection Deadline (as previously extended, if applicable) or (ii) thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Administrative Claims Objection Deadline.

    1.7     "**Affiliates**" has the meaning ascribed to such term by Bankruptcy Code section 101(2).

    1.8     "**All Asset Qualified Offer**" means an offer that (a) is submitted by a party determined by the Plan Debtors, in consultation with the Committee, to have the financial capability to consummate the acquisition transaction, (b) unless the DIP Lenders in their sole discretion agree otherwise, is accompanied by a deposit in escrow of 5% of the Cash purchase

2

price (which deposit shall be nonrefundable in the event that such party is the winning bidder at any subsequent auction and fails to close by the closing date due to the actions or inactions of the such winning bidder), provided that unless the DIP Lenders in their sole discretion agree otherwise, within seven days after any bidder is accepted as the Alternative Plan Sponsor, (i) shall have obtained approval of DIP financing acceptable to the Debtors in consultation with the Creditors' Committee and (ii) shall pay the DIP Obligations in full in Cash, (c) is a binding agreement to consummate the transaction (together with a redline reflecting any modifications to the Plan that will be necessary to consummate such transaction), (d) contains consideration in Cash (inclusive of the deposit required pursuant to sub-section (b) hereof) not less than an amount equal to the Cash amount of the Purchase Price of the Purchased Assets (including, for the avoidance of doubt, an amount sufficient to pay all projected outstanding DIP Obligations in full in Cash as of the Effective Date), plus a topping amount of $125,000, (e) provides for the assumption of the assumed liabilities acceptable to the Debtors in consultation with the Creditors' Committee; provided that any qualified offer must provide for the assumption of the Parent Obligations, (f) be submitted at least ten (10) days prior to the Confirmation Hearing (upon acceptance of the All Asset Qualified Offer, the Cash deposit referred to in clause (b) above shall be released and paid to the DIP Lenders), and (g) not be subject to any due diligence, financing, environmental review or other material contingency.

   **1.9** "**Allowed**" means, as to a Claim or any portion thereof, a Claim or portion of a Claim

    (a) that has been allowed by a Final Order, or

    (b) as to which no Proof of Claim has been timely filed with the Bankruptcy Court by the Bar Date and (i) the liquidated and noncontingent amount of which is Scheduled other than (x) at zero, (y) in an unknown amount, or (z) as disputed and (ii) no objection to its allowance has been filed, or is intended to be filed by the Debtors or the Plan Administrator by the Claims Objection Deadline, or

    (c) as to which a Proof of Claim has been timely filed with the Bankruptcy Court by the Bar Date, but only to the extent that such Claim is identified in such Proof of Claim in a liquidated and noncontingent amount (or becomes liquidated or is rendered noncontingent under the procedures set forth in the Plan), and either (i) no objection to its allowance has been filed, or is intended to be filed by the Debtors or the Plan Administrator by the Claims Objection Deadline, or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order,

    (d) with respect to Administrative Claims that are not Professional Claims, Statutory UST Fees, or DIP Facility Claims, Administrative Claims as to which either (i) a timely Administrative Claim Request Form is filed on or before the Administrative Claims Bar Date, which is not subject to an objection submitted on or before the Administrative Claims Objection Deadline; or (ii) qualify as Ordinary Course Administrative Claims, or

(e)      with respect to Administrative Claims that are Professional Claims, as to which a timely application for allowance of such Professional Claims has been filed with the Bankruptcy Court and allowed by a Final Order of the Bankruptcy Court, or

(f)      with respect to DIP Facility Claims or Statutory UST Fees, the amount of such DIP Facility Claims or Statutory UST Fees, the entire amount of which shall automatically be deemed Allowed without further action by any party, or

(g)      that is expressly allowed in a liquidated amount in this Plan.

1.10    "**Alternative Plan Sponsor**" means the potential investors who may, in the discretion of the Debtors in consultation with the Committee, provide a superior exit path compared to the Plan Sponsor.

1.11    "**Assumed Contracts**" means those executory contracts and unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases.

1.12    "**Assumed Liabilities**" means (a) all obligations under the Assumed Contracts, which, for the avoidance of doubt, include all Cure amounts, (b) all Assumed Parent Obligations, (c) such other liabilities and obligations identified by the Plan Sponsors, and (d) such other liabilities and obligations expressly assumed by Newco in its sole and absolute discretion, including Ordinary Course Administrative Claims and the Bank Guarantee Claims, all of (a)-(d) to be set forth in the Plan Supplement.

1.13    "**Assumed Parent Obligations**" means all parent company guarantees, bonds, bank guarantees, or other surety instruments issued in connection with the Assumed Contracts.

1.14    "**Avoidance Actions**" means any and all rights, claims, and causes of action which a trustee, debtor in possession, or other appropriate party in interest would be able to assert on behalf of any of the Estates under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code sections 544, 545, 547, 548, 550, and 553.

1.15    "**Bank Guarantee Claims**" means any claims relating to the bank guarantees that have been issued in connection with existing projects that constitute Purchased Assets, and which shall constitute Assumed Liabilities, the identity and outstanding amounts of which shall be identified in the Plan Supplement.

1.16    "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the date hereof but, with respect to amendments to the Bankruptcy Code subsequent to commencement of the Chapter 11 Cases, only to the extent that such amendments were made expressly applicable to bankruptcy cases which were filed as of the enactment of such amendments.

**1.17** "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas or such other court as may have jurisdiction over the Chapter 11 Cases.

**1.18** "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Bankruptcy Local Rules, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

**1.19** "**Bar Date**" means the deadlines set by the Bankruptcy Court under the Bar Date Order or other Final Order for filing proofs of claim in the Chapter 11 Cases, as the context may require, which is May 15, 2017, except for Governmental Units, for whom the Bar Date is August 28, 2017.

**1.20** "**Bar Date Orders**" means the order entered by the Bankruptcy Court on March 28, 2017 [Docket No. 177], which established the Bar Date, and any subsequent order supplementing such order or relating thereto.

**1.21** "**Business Day**" means any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Houston, Texas.

**1.22** "**Cancelled Intercompany Claims**" means Intercompany Claims (a) amongst the Singapore/Saudi Debtors, (b) between the Singapore/Saudi Debtors on the one hand and the US Debtor on the other, and (c) Intercompany Claims allegedly held by ECS against any Emerging Debtor (based on evidence to be provided on the record at the Confirmation Hearing).

**1.23** "**Cash**" means legal tender of the United States of America and equivalents thereof.

**1.24** "**Causes of Action**" means any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise, including actions brought prior to the Petition Date, actions under chapter 5 of the Bankruptcy Code, including any Avoidance Actions, and actions against any Entity for failure to pay for products or services provided or rendered by the Plan Debtors, all claims, suits, or proceedings relating to enforcement of the Plan Debtors' intellectual property rights, including patents, copyrights, and trademarks, and all claims or causes of action seeking recovery of the Plan Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtors' or the Plan Debtors' businesses, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

**1.25** "**Champion Vessel**" means the Lewek Champion vessel IMO number 9377377.

**1.26** "**Chapter 11 Cases**" means the chapter 11 cases of the Plan Debtors pending in the Bankruptcy Court and being jointly administered under Case No. 17-31146 (MI).

**1.27** "**Chiyoda**" means Chiyoda Corporation.

**1.28** "**Claim**" means any claims against the Plan Debtors, whether or not asserted, as defined in Bankruptcy Code section 101(5), or an Administrative Claim, as applicable.

**1.29** "**Claims, Noticing, and Solicitation Agent**" means Epiq Bankruptcy Solutions, LLC.

**1.30** "**Claims Objection Deadline**" means, as applicable (except for Administrative Claims), (a) the day that is the later of (i) the first Business Day that is 120 days after the Effective Date and (ii) as to proofs of claim filed after the Bar Date, the first Business Day that is at least 30 days after a Final Order is entered deeming the late filed claim timely filed or (b) such later date as may be established by the Bankruptcy Court upon request of the Plan Debtors or the Plan Administrator without further notice to parties-in-interest.

**1.31** "**Class**" means a category of Holders of Claims or Interests classified together under Bankruptcy Code sections 1122 and 1123(a)(1), as described in Article III of this Plan.

**1.32** "**Confirmation**" means the entry, within the meaning of Bankruptcy Rules 5003 and 9012, of the Confirmation Order, subject to all conditions specified having been satisfied or waived.

**1.33** "**Confirmation Date**" means the date on which Confirmation occurs.

**1.34** "**Confirmation Hearing**" means the hearing before the Bankruptcy Court held under Bankruptcy Code section 1128 to consider confirmation of this Plan and related matters, which hearing may be adjourned or continued from time to time.

**1.35** "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan under Bankruptcy Code section 1129, which order shall in form and substance be reasonably acceptable to the Debtors and the Plan Support Parties.

**1.36** "**Constellation Credit Agreement**" means that certain $503,000,000.00 secured facility agreement, dated as of May 16, 2012, among Lewek Constellation Pte. Ltd., as borrower, Ezra Holdings Limited, EMAS-AMC Pte. Ltd., EMAS-AMC AS, EMAS CHIYODA Subsea Inc. (*f/k/a* EMAS-AMC Inc.) and EMAS CHIYODA Subsea Limited, as guarantors, the lenders party thereto, and DNB Bank ASA, Singapore Branch, as agent and security trustee, as amended and restated from time to time.

**1.37** "**Constellation Debtor**" means Lewek Constellation Pte. Ltd.

**1.38** "**Constellation Lenders**" means those lenders under the Constellation Credit Agreement.

6

**1.39** "**Constellation Lender Claim**" means Claims of the Constellation Lenders against the Constellation Debtor arising out of the Constellation Credit Agreement. The Constellation Lender Claims shall be Allowed in an amount of not less than $388,607,842.41, plus, interest and, pursuant to the procedures set forth in the Adequate Protection Order, any approved accrued fees, costs, and expenses.

**1.40** "**Constellation Lender Deficiency Claim**" means that portion of a Constellation Lender Claim that is not a Constellation Lender Secured Claim.

**1.41** "**Constellation Lender Guarantee Claims**" means Claims against any of the Plan Debtors arising out of a guaranty of the obligations owing under the Constellation Credit Agreement.

**1.42** "**Constellation Lender Secured Claim**" means the portion of a Constellation Lender Claim that is a Secured Claim.

**1.43** "**Constellation Qualified Offer**" means an offer to purchase the Constellation Vessel or the Constellation Debtor (a) submitted by a party determined by the Debtors, in consultation with the Committee and the Constellation Lenders, to have the financial capability to consummate the acquisition transaction, (b) submitted prior to June 29, 2017, and (c) not subject to any due diligence, financing, environmental review, or other material contingency.

**1.44** "**Constellation Vessel**" means the Lewek Constellation vessel IMO number 9629756.

**1.45** "**Creditor**" has the meaning ascribed to such term in Bankruptcy Code section 101(10).

**1.46** "**Creditors' Committee**" means the official committee of unsecured Creditors appointed under Bankruptcy Code section 1102(a) in the Chapter 11 Cases on March 21, 2017, as may be reconstituted from time to time.

**1.47** "**Cure**" means the payment or other honoring of all obligations required to be paid or honored in connection with an Assumed Contract by the Emerging Debtors under Bankruptcy Code section 365, including (a) the cure of any non-monetary defaults to the extent required, if at all, under Bankruptcy Code section 365, and (b) with respect to monetary defaults, the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court in an amount equal to all unpaid monetary obligations or such other amount as may be agreed upon by the parties, under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**1.48** "**Cure Cost Savings**" means the documented savings between the Cure amounts that the Debtors, in consultation with the Committee and the Plan Sponsors, believe in good faith are owed on account of the Assumed Contracts and the Cure amount ultimately paid by Newco or the Emerging Debtors, so long as the Creditors' Committee uses its best efforts to assist the Debtors and the Plan Sponsors to achieve such savings.

7

**1.49** "**Cure Notice**" means the notice of proposed Cure amount provided to counterparties to assumed Executory Contracts or Unexpired Leases under Section 8.2(e) of this Plan.

**1.50** "**Cure Objection Deadline**" means the deadline for filing objections to a Cure Notice or proposed Cure, which shall be 14 days after the applicable counterparty was served with a Cure Notice, which date shall be set forth in the Cure Notice.

**1.51** "**DBS**" means DBS Bank Limited.

**1.52** "**Debtors**" means, collectively, EMAS CHIYODA Subsea Limited, EMAS Chiyoda Subsea Inc., EMAS CHIYODA Subsea Marine Base LLC, Lewek Falcon Shipping Pte. Ltd., EMAS CHIYODA Marine Base Holding Co., LLC, EMAS Chiyoda Subsea Services Pte. Ltd., EMAS-AMC Pte. Ltd., EMAS Saudi Arabia Ltd., Lewek Constellation Pte. Ltd., EMAS CHIYODA ROV Pte. Ltd., EMAS CHIYODA Subsea Services B.V., EMAS CHIYODA Subsea Services (UK) Limited, EMAS CHIYODA Subsea Services LLC, EMAS CHIYODA Subsea (Thailand) Co., Ltd., and Gallatin Marine Management, LLC.

**1.53** "**DIP Borrower**" means ECS, as borrower and a debtor-in-possession.

**1.54** "**DIP Credit Agreement**" means the Debtor-in-Possession Credit Agreement, dated as of March 1, 2017 (as amended, modified, or supplemented from time to time), among the DIP Borrower and the DIP Lenders.

**1.55** "**DIP Facility**" means that certain debtor-in-possession secured credit facility provided to the Debtors by the DIP Lenders under the DIP Credit Agreement as authorized by the Bankruptcy Court under the DIP Order, as may be amended or modified from time to time.

**1.56** "**DIP Facility Claim**" means any Claim arising under, derived from, based upon, or as a result of the DIP Facility, including all reasonable and documented fees and expenses, if any, owed under the DIP Facility.

**1.57** "**DIP Lenders**" means Chiyoda and Subsea 7 in their capacities as post-petition lenders under the DIP Credit Agreement.

**1.58** "**DIP Loan Cash**" means Cash in an amount equal to the DIP Obligations.

**1.59** "**DIP Obligations**" means all of the outstanding obligations of the DIP Borrower under the DIP Credit Agreement.

**1.60** "**DIP Order**" means, collectively, that certain interim order that was entered by the Bankruptcy Court on March 1, 2017 [Docket No. 50], authorizing and approving the DIP Facility and the agreements related thereto and all interim orders and any final order entered by the Bankruptcy Court and approving the DIP Obligations.

**1.61** "**Disallowed**" means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, or as provided in this Plan, (b) a Claim or any

portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a Proof of Claim bar date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court under either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a Proof of Claim bar date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court under either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.62    "**Disclosure Statement**" means the written disclosure statement or any supplements thereto that relates to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time, all as approved by an order of the Bankruptcy Court under Bankruptcy Code sections 1125 and 1127 and Bankruptcy Rule 3017.

1.63    "**Disputed**" means any Claim, or any portion thereof, prior to it having become an Allowed Claim or a Disallowed Claim.

1.64    "**Distribution Agent**" means the Plan Administrator or such Entity designated by the Plan Administrator.

1.65    "**Distribution Record Date**" means the date for determining which Holders of Allowed Claims are eligible to receive distributions under this Plan, which shall be (a) the Confirmation Date, or (b) such other date as designated by an order of the Bankruptcy Court.

1.66    "**Distribution Reserve**" means, as applicable, one or more reserves of property for distribution to holders of Allowed Claims in the Chapter 11 Cases to be reserved pending allowance of Disputed Claims in accordance with Section 10.5 of this Plan.

1.67    "**DNB**" means DNB Bank ASA, Singapore Branch.

1.68    "**ECS**" means EMAS CHIYODA Subsea Limited.

1.69    "**Effective Date**" means the date on which this Plan shall take effect, which date shall be a Business Day on or after the Confirmation Date on which all conditions precedent to the effectiveness of this Plan specified in Section 12.1, have been satisfied, or, if capable of being waived, waived, which date shall be specified in a notice filed by the Plan Debtors with the Bankruptcy Court.

1.70    "**Emerging Debtors**" means, collectively, the Singapore/Saudi Debtors and the US Debtor (provided, however, that, as to the US Debtor, on the terms and conditions set forth in Sections 7.4 and 7.9 of this Plan).

1.71    "**Entity**" has the meaning ascribed to such term in Bankruptcy Code section 101(15).

1.72    "**Equity Security**" has the meaning ascribed to such term in Bankruptcy Code section 101(16).

1.73    "**Estates**" means the bankruptcy estates of the Plan Debtors created under Bankruptcy Code section 541.

1.74    "**Excess Spool Base Proceeds**" means proceeds of the sale of the Ingleside Spool Base net of any costs of sale and the payment of all valid, perfected and fully enforceable liens upon such spool base.

1.75    "**Exculpated Claim**" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtors' in or out of court restructuring, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, the settlement of Claims or renegotiation of Executory Contracts or Unexpired Leases, the negotiation of the Plan, the DIP Credit Agreement, the DIP Facility, the Plan Support Agreement, the Plan Supplement, or any contract, instrument, release, or other agreement, or document created or entered into in connection with the Disclosure Statement or the Plan (including any attachments or exhibits to any of the foregoing), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration, consummation, and implementation of the Plan, the distribution of property under the Plan, or any transaction contemplated by the Plan or the Disclosure Statement, or in furtherance thereof.

1.76    "**Exculpated Parties**" means, collectively, each of the following in their respective capacities as such: (a) the Debtors; (b) Newco and the Emerging Debtors, from and after the Effective Date; (c) the DIP Lenders; (d) the Plan Support Parties; (e) the Creditors' Committee and each of its members; (f) all Professionals; and (g) with respect to each of the above-named Entities described in subsections (a) through (f), such Entity's respective predecessors, successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, Affiliates and its and their subsidiaries, principals, partners, managed funds, parents, equity holders, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants.

1.77    "**Executory Contract**" means any contract to which any of the Debtors is a party that is subject to assumption or rejection under Bankruptcy Code sections 365 or 1123.

1.78    "**Exhibit**" means an exhibit attached to this Plan, contained in the Plan Supplement, or annexed as an appendix to the Disclosure Statement.

1.79    "**Existing Cash**" means all Cash on hand at the Emerging Debtors immediately prior to the Effective Date and all proceeds from the sale of the Ingleside Spool Base received by the Emerging Debtors other than any such Ingleside Spool Base Proceeds constituting GUC Cash.

1.80    "**Face Amount**" means (a) when used in reference to a Disputed Claim or Disallowed Claim, the full stated liquidated amount claimed by the Holder of a Claim in any Proof of Claim, or amendment thereof in accordance with applicable law, timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, or the amount estimated for such Claim in an order of the

10

Bankruptcy Court, and (b) when used in reference to an Allowed Claim or Allowed Interest, the Allowed amount of such Claim or Interest.  If none of the foregoing applies, the Face Amount of the Claim shall be zero dollars.

1.81    "**Falcon Credit Agreement**" means that certain credit agreement between Lewek Falcon Shipping Pte. Ltd. as borrower and OCBC as lender dated March 27, 2012, as amended and restated from time to time.

1.82    "**Falcon Debtor**" means Lewek Falcon Shipping Pte. Ltd.

1.83    "**Falcon Lender**" means OCBC.

1.84    "**Falcon Lender Claim**" means Claims of the Falcon Lender against the Falcon Debtor arising out of the Falcon Credit Agreement.

1.85    "**Falcon Lender Deficiency Claim**" means that portion of the Falcon Lender Claim that is not a Falcon Lender Secured Claim.

1.86    "**Falcon Lender Guarantee Claims**" means Claims against any of the Plan Debtors arising out of a guaranty of the obligations owing under the Falcon Credit Agreement.

1.87    "**Falcon Lender Secured Claim**" means the portion of a Falcon Lender Claim that is a Secured Claim.

1.88    "**Final Order**" means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, is in full force and effect, and as to which any order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request re-argument or further review or rehearing has expired and no appeal, petition for certiorari, or request for re-argument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for re-argument or further review or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for re-argument or further review or rehearing has been or can be taken or granted; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedures, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order; provided, further, that the Debtors or the Plan Debtors, as applicable, reserve the right to waive any appeal period for an order or judgment to become a Final Order.

1.89    "**Final Satisfaction**" means the treatment provided under this Plan in exchange for and in full and final satisfaction, settlement, release, and discharge of, such Claim.

1.90    "**General Unsecured Claim**" means, as to the respective Plan Debtor, any Claim that is not an Administrative Claim, DIP Facility Claim, Priority Tax Claim, Other Secured Claim, Other Priority Claim, Bank Guarantee Claim, Helix Secured Claim, Constellation Lender Secured Claim, Falcon Lender Secured Claim, Cancelled Intercompany

Claim, or Subordinated Claim.  For the avoidance of doubt, General Unsecured Claims shall include Rejection Damages Claims, Constellation Lender Deficiency Claims (solely as against the Constellation Debtor), Constellation Lender Guarantee Claims, Falcon Lender Deficiency Claims (solely as against the Falcon Debtor), Falcon Lender Guarantee Claims, Preserved Intercompany Claims, and Reclamation Claims (that are not Allowed Section 503(b)(9) Claims).

      1.91    "**Governmental Unit**" has the meaning ascribed to such term in Bankruptcy Code section 101(27).

      1.92    "**GUC Cash**" means (i) $4.5 million in Cash, plus (ii) the first $1.25 million of Cure Cost Savings, plus (iii) 25% of incremental Cure Cost Savings above the first $1.25 million, exclusive of any savings on account of STX Offshore & Shipbuilding Co. Ltd. contract-related matters in an amount not to exceed $1.5 million, plus (iv) 50% of the proceeds of the sale of the Ingleside Spool Base received by the Emerging Debtors over and above the Stalking Horse Bid of $14,875,000, as reflected in the Ingleside Spool Base Motion, in an amount not to exceed $2.5 million.  For the avoidance of doubt, the GUC Cash (i) may be used to fund the Wind-Down Account in an amount not to exceed $300,000 and (ii) shall be distributed to holders of General Unsecured Claims in Classes 1G through 3G and 5G.

      1.93    "**Helix Secured Claim**" means the portion of the Claim of Helix Ingleside LLC against the Marine Base Opco Debtor arising out of that certain promissory note secured by that certain Deed of Trust, Security Agreement and Assignment of Leases and Rent, which is a Secured Claim.

      1.94    "**Holder**" means an Entity that is a holder of a Claim against or Interest in the Plan Debtors.

      1.95    "**Impaired**" means with respect to any Class of Claims or Interests, a Claim or Interest that is impaired within the meaning of Bankruptcy Code section 1124.

      1.96    "**Indemnification Obligations**" means obligations of the Plan Debtors, if any, to indemnify, reimburse, advance, or contribute to the losses, liabilities, or expenses of an Indemnitee under the Plan Debtors' certificate of formation, limited liability company agreement, bylaws, policy of providing employee indemnification, applicable law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for, or on behalf of the Debtors.

      1.97    "**Indemnitee**" means all managers, officers, or employees of the Debtors, in each case employed by the Plan Debtors or serving as a manager or officer immediately prior to or as of the Effective Date and acting in their respective capacities as such immediately prior to the Effective Date, who are entitled to assert Indemnification Obligations.

      1.98    "**Ingleside Spool Base**" means that certain tract or parcel of land being approximately 119 acres in San Patricio County, State of Texas, together with the improvements, and certain equipment identified in Ingleside Spool Base Motion.

**1.99** "**Ingleside Spool Base Motion**" means the motion to sell the Ingleside Spool Base filed by the Debtors on March 21, 2017 and entered on the docket of the Chapter 11 Cases as Docket No. 122.

**1.100** "**Initial Bareboat Charter**" means a bareboat charter for the Constellation Vessel to be granted or otherwise procured by the Constellation Lenders for Subsea 7 or its designee, at the Constellation Lenders' option, commencing on the Effective Date and terminating on the first anniversary thereof at the charter rate and on such other terms as set forth on Exhibit A.

**1.101** "**Initial Bareboat Charter Notice**" has the meaning set forth in Section 7.19.

**1.102** "**Initial Distribution Date**" means the date selected by the Plan Debtors or the Plan Administrator, in their sole discretion, upon which distributions to Holders of Allowed Claims entitled to receive distributions under the Plan shall commence, which shall be on or as soon as reasonably practicable after the Effective Date.

**1.103** "**Intercompany Claim**" means a Claim by any Plan Debtor or other subsidiary of ECS asserted by or against any Plan Debtor or other subsidiary of ECS.

**1.104** "**Interests**" means any Equity Security in any of the Plan Debtors existing immediately prior to the Effective Date, including all issued, unissued, authorized, or outstanding shares of stock or limited liability company interests (including all common and preferred units existing immediately prior to the Effective Date, whether convertible or not) together with any warrants, options, or contractual rights to purchase or acquire such Equity Securities at any time and all rights arising with respect thereto.

**1.105** "**Lien**" has the meaning ascribed to such term in Bankruptcy Code section 101(37).

**1.106** "**Liquidating Debtors**" means Constellation Debtor, Falcon Debtor, and Marine Base Opco Debtor.

**1.107** "**Long Term Bareboat Charter**" means a long term bare boat charter granted by the Constellation Lenders to Subsea 7 or its designee at the option of Subsea 7 or such designee for the Constellation Vessel solely upon the Constellation Lenders' election to grant or otherwise procure the Initial Bareboat Charter, on the terms and conditions set forth on Exhibit A.

**1.108** "**Marine Base Opco Debtor**" means EMAS CHIYODA Subsea Marine Base LLC.

**1.109** "**Maritime Lien Claim**" means a Claim (other than a Constellation Lender Secured Claim or a Falcon Lender Secured Claim) against a Debtor or its assets that is secured under applicable maritime law against a vessel.

**1.110** "**Net GUC Cash**" means all GUC Cash, after the Wind-Down Account is funded as set forth in <u>Section **Error! Reference source not found.**</u>, <u>plus</u> the net proceeds of any sale of US Debtor assets that are not purchased by the Plan Sponsors under the Plan, <u>plus</u> the proceeds of any Retained Avoidance Actions and Retained Plan Administrator Causes of Action, <u>plus</u> any excess amount remaining in Wind-Down Account in connection with the closing of the Chapter 11 Cases.

**1.111** "**Newco**" means a newly formed entity to be owned by a member of the Subsea 7 group and designated by Subsea 7.

**1.112** "**New Corporate Governance Documents**" means the corporate governance documents of the Emerging Debtors from and after the Effective Date.

**1.113** "**New Emerging Debtor Boards**" means the initial boards of directors of the Emerging Debtors, the members of which shall be identified, to the extent practicable, prior to the Confirmation Hearing.

**1.114** "**New Equity Interests**" means 100% of the equity in the Emerging Debtors, to be issued to Newco under this Plan, except, as otherwise provided herein, with respect to the US Debtor.

**1.115** "**Non-Ordinary Course Administrative Claims**" means Administrative Claims against the Emerging Debtors that are not Ordinary Course Administrative Claims.

**1.116** "**Non-Ordinary Course Other Priority Claims**" means Other Priority Claims against the Emerging Debtors that are not Ordinary Course Other Priority Claims.

**1.117** "**Non-Reorganizing Debtor**" means any Debtor that is not a Plan Debtor.

**1.118** "**OCBC**" means Oversea-Chinese Banking Corporation Limited.

**1.119** "**Ordinary Course Administrative Claim**" means an Administrative Claim that is incurred by a Plan Debtor in the ordinary course of business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim.

**1.120** "**Ordinary Course Other Priority Claims**" means Other Priority Claims that arise in the ordinary course business of an applicable Emerging Debtor, which are Assumed Liabilities (as determined by Newco in its sole and absolute discretion), and which are not due and payable on or before the Effective Date.

**1.121** "**Ordinary Course Professionals Order**" means the Bankruptcy Court's Order Authorizing the Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business [Docket No. 176].

**1.122** "**Other Priority Claim**" means any Claim entitled to priority payment as specified in Bankruptcy Code section 507(a), other than an Administrative Claim or a Priority Tax Claim.

14

**1.123** "**Other Secured Claim**" means any Secured Claim other than the following: (a) a DIP Facility Claim, (b) a Constellation Lender Secured Claim, (c) a Falcon Lender Secured Claim, (d) a Helix Secured Claim, or (e) a Bank Guarantee Claim that is a Secured Claim.

**1.124** "**Periodic Distribution Date**" means such Business Days after the Initial Distribution Date selected by the Plan Debtors or the Plan Administrator, as the case may be, in their reasonable discretion for making subsequent distributions under this Plan.

**1.125** "**Petition Date**" means February 27, 2017.

**1.126** "**Plan**" means this joint plan of reorganization for the resolution of outstanding Claims and Interests in the Chapter 11 Cases, as may be modified in accordance with the Bankruptcy Code and Bankruptcy Rules, including the Plan Supplement and all Exhibits, supplements, appendices, and schedules.

**1.127** "**Plan Administrator**" means the Entity designated by the Debtors, with the consent of the Creditors' Committee, and identified at or prior to the Confirmation Hearing, to, among other things, (a) object to Claims, (b) administer the Claims allowance process, and (c) authorize distributions to Holders of Claims, in each case, as set forth in the Plan Administrator Agreement to be filed as part of the Plan Supplement.

**1.128** "**Plan Administrator Agreement**" means that certain document, to be filed as part of the Plan Supplement, governing the rights and duties of the Plan Administrator, which document shall be in form and substance acceptable to the Creditors' Committee.

**1.129** "**Plan Cash Contribution**" means all Cash (other than the GUC Cash) necessary to make the distributions required to be made under the Plan from Additional Cash minus the Existing Cash.

**1.130** "**Plan Debtors**" means, collectively, the Emerging Debtors and the Liquidating Debtors.

**1.131** "**Plan Sponsors**" means Chiyoda and Subsea 7 in their capacity as plan sponsors.

**1.132** "**Plan Supplement**" means the supplement or supplements to the Plan containing certain Exhibits and documents relevant to the implementation of this Plan, to be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date, and as may be amended, supplemented, or modified after the Plan Supplement Filing Date, which may include: (a) the Schedule of Assumed Executory Contracts and Unexpired Leases, (b) a list of retained Causes of Action (including Retained Avoidance Actions), (c) the Administrative Claim Request Form, (d) to the extent known, the New ECS Board, (e) the Plan Administrator Agreement, and (e) other Exhibits and documents relevant to the implementation of the Plan.

**1.133** "**Plan Supplement Filing Date**" means the date on which the Plan Supplement shall be filed with the Bankruptcy Court, which date shall be at least four days prior

to the Voting Deadline or such later date as may be approved by the Bankruptcy Court without further notice.

        **1.134** "**Plan Support Agreement**" means that certain Plan Support Agreement entered or to be entered into by and among the Debtors and the Plan Support Parties, as may be further amended, supplemented, restated, or otherwise modified from time to time in accordance with the terms therewith, under which the Debtors and the Plan Support Parties shall agree to support the Plan, subject to the conditions thereof.

        **1.135** "**Plan Support Parties**" means (i) the Plan Sponsors, (ii) DBS, (iii) DNB, and (iv) the other parties who are or become party to the Plan Support Agreement from time to time, each solely in the capacities set forth in the Plan Support Agreement.

        **1.136** "**Plan Transaction Documents**" means all definitive documents and agreements to which the Plan Debtors will be a party as contemplated by this Plan, including (a) this Plan and any documentation or agreements related thereto; (b) the Confirmation Order and pleadings in support of entry thereof; (c) the Disclosure Statement, the solicitation materials in respect of this Plan, the motion to approve the Disclosure Statement, and the Disclosure Statement Approval Order; (d) the New Corporate Governance Documents; and (e) all other documents that will comprise the Plan Supplement, which Plan Transaction Documents must be in form and substance reasonably acceptable to the Plan Sponsors.

        **1.137** "**Preserved Intercompany Claims**" means Intercompany Claims that are not Cancelled Intercompany Claims.

        **1.138** "**Priority Tax Claim**" means a Claim of a Governmental Unit entitled to priority under Bankruptcy Code section 507(a)(8).

        **1.139** "**Pro Rata**" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed interests under this Plan.

        **1.140** "**Professional**" means any Entity retained in the Chapter 11 Cases by separate Final Order under Bankruptcy Code sections 327, 328, 363, and 1103 or otherwise; provided, however, that Professional does not include any Entity retained under the Ordinary Course Professionals Order.

        **1.141** "**Professional Claim**" means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and prior to and including the Effective Date.

        **1.142** "**Professional Fee Escrow**" means that certain bank account, which exists for the sole purpose of receiving Budgeted Professional Fee Amounts, the Professional Fee

Reserve, and any applicable Fee Difference Amount (each as defined in the DIP Credit Agreement) and making disbursements thereof.

1.143   "**Professional Fee Order**" means the order entered by the Bankruptcy Court on March 22, 2017 [Docket No. 139], authorizing the interim payment of Professional Claims.

1.144   "**Proof of Claim**" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

1.145   "**Purchase Price**" means, collectively, GUC Cash, plus Plan Cash Contribution, plus the DIP Loan Cash, plus the assumption of the Assumed Liabilities.

1.146   "**Purchased Assets**" means all of the New Equity Interests or assets of the Emerging Debtors and any other assets directly or indirectly acquired by Newco as part of the restructuring transactions or otherwise through the Plan.

1.147   "**Reclamation Claim**" means any Claim for the reclamation of goods delivered to the Debtors asserted under Bankruptcy Code section 546(c) and that is not part of an Assumed Contract.

1.148   "**Reinstated**" or "**Reinstatement**" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Claim Holder so as to leave such Claim Unimpaired in accordance with Bankruptcy Code section 1124, or (b) notwithstanding any contractual provision or applicable law that entitles the Claim Holder to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Bankruptcy Code section 365(b)(2); (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Claim Holder for any damages incurred as a result of any reasonable reliance by such Claim Holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Claim Holder; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants, or restrictions on merger or consolidation, "going dark" provisions, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated in order to accomplish Reinstatement.

1.149   "**Rejection Damages Claim**" means any Claim on account of the rejection of an Executory Contract or Unexpired Lease under Bankruptcy Code section 365 or the repudiation of such contract.

1.150   "**Released Parties**" means each of the following in their respective capacities as such:  (a) the Debtors; (b) Newco and the Emerging Debtors, from and after the Effective Date; (c) the DIP Lenders; (d) the Plan Support Parties; (e) the Creditors' Committee and each of its members; (f) all Professionals; and (g) with respect to each of the above-named Entities described in subsections (a) through (f), such Entity's respective predecessors,

successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, Affiliates and its and their subsidiaries, principals, partners, managed funds, parents, equity holders, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants; provided, however, that Ezra Holdings Ltd. and its non-Debtor Affiliates, EMAS AMC-AS, Fode & Emas Joint Venture Company Limited, EMAS CHIYODA Subsea Pty Ltd., and Lewek Constellation AS shall not be deemed Released Parties.

      **1.151** "**Releasing Parties**" means each of the following in their respective capacities as such:  (a) the Released Parties, (b) all Holders of Claims and Interests that are deemed to accept this Plan, (c) each Holder of a Claim voting to accept this Plan or abstaining from voting to accept or reject this Plan, unless such Holder elects to opt out of the releases contained in Section 11.6 by checking the box on its timely submitted ballot, and (d) with respect to each of the foregoing Entities in subparts (b) through (c), their respective current and former officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.  For the avoidance of doubt, and notwithstanding anything herein to the contrary, in no event shall an Entity that checks the box on the Ballot and returns such Ballot in accordance with the Disclosure Statement Order to opt out of the third party releases contained in Section 11.6 hereof be a Releasing Party.

      **1.152** "**Remaining Administered Assets**" means the Additional Cash, the Net GUC Cash, and any other assets of the Plan Debtors that are not Purchased Assets.

      **1.153** "**Required Constellation Lenders**" means those Constellation Lenders who, at any time, constitute "Majority Lenders" (as such term is defined in the Constellation Credit Agreement).

      **1.154** "**Retained Avoidance Actions**" means those Avoidance Actions identified as part of the Plan Supplement, which exhibit shall be in form and substance acceptable to the Plan Debtors, Plan Sponsor (or Alternative Plan Sponsor), and the Creditors' Committee.  For the avoidance of doubt, only those Avoidance Actions against parties to Assumed Contracts, parties who received critical vendor payments, those counter-parties who would otherwise be entitled to assert valid maritime liens and Avoidance Actions against Released Parties shall be released; all other Avoidance Actions as identified in the Plan Supplement shall be preserved for the benefit of the general unsecured creditors of the Plan Debtors.

      **1.155** "**Retained Plan Administrator Causes of Action**" means those Causes of Action identified as part of the Plan Supplement, which exhibit shall be in form and substance acceptable to Plan Debtors, Plan Sponsor (or Alternative Plan Sponsor), and the Creditors' Committee, setting forth those retained Causes of Action that will be brought, prosecuted, or settled by the Plan Administrator, in its sole discretion, on behalf of the Plan Debtors.

      **1.156** "**Saudi Arabia Debtor**" means EMAS Saudi Arabia Ltd.

**1.157** "**Schedule of Assumed Executory Contracts and Unexpired Leases**" means the schedule of certain Executory Contracts and Unexpired Leases to be assumed by the Plan Debtors under this Plan, in the form filed as part of the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

**1.158** "**Scheduled**" means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

**1.159** "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs filed in the Chapter 11 Cases by the Plan Debtors under Bankruptcy Code section 521, which incorporate by reference the global notes and statement of limitations, methodology, and disclaimer regarding the Plan Debtors' schedules and statements, as such schedules or statements have been or may be further modified, amended, or supplemented from time to time in accordance with Bankruptcy Rule 1009 or Final Orders of the Bankruptcy Court.

**1.160** "**Section 503(b)(9) Claim**" means any Claim asserted under Bankruptcy Code section 503(b)(9) equal to the value of any goods received by the Plan Debtors within 20 days before the Petition Date in which the goods have been sold to the Plan Debtors in the Plan Debtors' ordinary course of business.

**1.161** "**Secured Claim**" means a Claim (i) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with Bankruptcy Code section 506(a) or (ii) subject to a valid right of setoff under Bankruptcy Code section 553.

**1.162** "**Short Term Bareboat Charter**" means a short term bareboat charter for the Constellation Vessel and its associated reels granted or otherwise procured by the Constellation Lenders to Subsea 7 or its designee at a charter rate of $37,000 per day commencing on the Effective Date, and terminating on September 30, 2017, for the purpose of completing existing contracts in effect on the Petition Date; provided, however, that Subsea 7 or its designee shall have the option to extend the term of such short term bareboat charter for 5 successive one month periods on the same commercial terms.

**1.163** "**Singapore Debtor**" means EMAS-AMC Pte. Ltd.

**1.164** "**Singapore/Saudi Debtors**" means, collectively, Singapore Debtor, SSPL Debtor, and Saudi Arabia Debtor.

**1.165** "**SSPL Debtor**" means EMAS CHIYODA Subsea Services Pte Ltd.

**1.166** "**Statutory UST Fees**" means statutory fees payable under section 1930 of title 28 of the United States Code.

**1.167** "**Subordinated Claim**" means any Claim against the Plan Debtors that is subject to subordination under Bankruptcy Code section 510(b), whether arising from rescission of a purchase or sale of a security of the Plan Debtors or an Affiliate of the Plan Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under Bankruptcy Code section 502 on account of such Claim.

**1.168** "**Subsea 7**" means Subsea 7 Finance (UK) PLC.

**1.169** "**Unclaimed Distribution**" means any distribution under this Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Plan Debtors of an intent to accept a particular distribution; (c) responded within 150 days, to the Debtors' or Plan Debtors' or Plan Administrators' request for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

**1.170** "**Unexpired Lease**" means a lease of nonresidential real property to which any of the Plan Debtors is a party that is subject to assumption or rejection under Bankruptcy Code sections 365 or 1123.

**1.171** "**Unimpaired**" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Impaired.

**1.172** "**US Debtor**" means EMAS CHIYODA Subsea Inc.

**1.173** "**Utility Deposit Account**" shall have the meaning ascribed to such term in the Debtors' Emergency Motion for Order (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment, (II) Establishing Procedures for Resolving Objections by Utility Companies, and (III) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Service [Docket No. 48].

**1.174** "**Voting Deadline**" means [June 23] 2017, at 4:00 p.m. Prevailing Central Time.

**1.175** "**Wind-Down Account**" means the account referenced in Section **Error! Reference source not found.** of this Plan.

## C.    Rules of Interpretation

For purposes of this Plan, unless otherwise provided herein, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and neuter; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in Bankruptcy Code section 102 shall apply; (i) to the extent the Disclosure Statement is inconsistent with the terms of this Plan, this Plan shall control; (j) to the extent this Plan is inconsistent with the Confirmation Order, the Confirmation Order shall control; (k) references to "shares," "shareholders," "directors," shall also include "membership units," "members," "managers," and/or "officers," or other functional

20

equivalents, as applicable, as such terms are defined under the applicable state corporation law or alternative comparable laws, as applicable; (l) any action that may be undertaken by the Debtors or Plan Debtors herein, after the Effective Date, may only be undertaken by the Debtors, Plan Debtors, or Plan Administrator, as applicable; and (m) any immaterial effectuating provision may be interpreted by the Plan Debtors in a manner that is consistent with the overall purpose and intent of this Plan without further Final Order of the Bankruptcy Court.

### D.   Computation of Time

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

### E.   References to Monetary Figures

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

### F.   Exhibits

All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein.  Once filed, copies of Exhibits may be obtained upon email request to the Claims, Noticing, and Solicitation Agent at tabulation@epiqsystems.com, or by downloading such exhibits from the Debtors' informational website at http://dm.epiq11.com/ECS/.

## ARTICLE II

## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

**2.1   Administrative Claims.**   Except to the extent that the Holder of an Allowed Administrative Claim agrees to less favorable treatment, Allowed Administrative Claims (other than Professional Fee Claims, which shall be subject to Section 2.3 of the Plan and DIP Facility Claims, which shall be paid out of the DIP Loan Cash) shall be paid in Cash as set forth below:

**(a)**   In Final Satisfaction of Allowed Ordinary Course Administrative Claims against an Emerging Debtor, on the Effective Date, such Claims shall be Assumed Liabilities and shall be paid by the respective Emerging Debtor or the affiliate of Newco into which purchased assets are transferred in the ordinary course of business in accordance with their terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

**(b)**   In Final Satisfaction of Allowed Non-Ordinary Course Administrative Claims against an Emerging Debtor or Allowed Administrative Claims against the Constellation Debtor (which, for the avoidance of doubt, includes post-petition maritime-related claims), on, or as soon as reasonably practicable after, the later of (a) the Effective Date for the Chapter 11 Plans of the Emerging Debtors, or (b) the date on which an Administrative Claim becomes an Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall receive Cash paid out of the Additional Cash equal to the unpaid portion of such

21

Allowed Administrative Claim; provided, however, that no payments shall be made in respect of any Claims under Bankruptcy Code section 507(b); provided, further, however, that Allowed post-petition maritime-related Claims against the Constellation Debtor shall be paid from the DIP Facility.  To the extent that the Additional Cash is insufficient, such Non-Ordinary Course Administrative Claims shall be assumed by Newco; and all Administrative Claims must be paid in accordance with the Bankruptcy Code.

(c)      In Final Satisfaction of Allowed Administrative Claims against Marine Base Opco Debtor, on, or as soon as reasonably practicable after, the later of (a) the Effective Date, or (b) the date on which an Administrative Claim becomes an Allowed Administrative Claim, each Holder of An Allowed Administrative Claim against Marine Base Opco Debtor shall receive the Cash out of the Excess Spool Base Proceeds equal to the unpaid portion of such Allowed Administrative Claim.

(d)      In Final Satisfaction of Allowed Administrative Claims against the Falcon Debtor, on, or as soon as reasonably practicable after the later of (a) the Effective Date, or (b) the date on which an Administrative Claim becomes an Allowed Administrative Claim, each Holder of an Allowed Administrative Claim against Falcon Debtor shall receive Cash from the Falcon Lender equal to the unpaid portion of such Allowed Administrative Claim.

Holders of Administrative Claims (other than Ordinary Course Administrative Claims) shall have filed an Administrative Claim Request Form by the Administrative Claims Bar Date (unless otherwise provided herein) and such Claim shall have become an Allowed Claim prior to receiving any payment hereunder (unless otherwise provided herein).  Except as otherwise provided herein, all requests for payment of Administrative Claims must be filed, in substantially the form of the Administrative Claim Request Form contained in the Plan Supplement, with the Claims, Noticing, and Solicitation Agent and served on counsel for the Debtors and the Plan Debtors no later than the Administrative Claims Bar Date.  Any request for payment of an Administrative Claim under this Section 2.1 that is not timely filed and served shall be Disallowed automatically without the need for any objection from the Debtors or the Plan Debtors.  The applicable Debtors or Plan Debtors, before the Effective Date, or Plan Sponsor or Newco, after the Effective Date, may settle an Administrative Claim without further Bankruptcy Court approval.  In the event that the Debtors or the Plan Debtors, before the Effective Date, or Plan Sponsors or Newco, after the Effective Date, objects to an Administrative Claim and there is no settlement, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

**2.2    DIP Facility Claims.**  The DIP Obligations shall be Allowed in the aggregate amount of principal outstanding plus accrued interest to the Effective Date plus applicable fees.  Holders of Allowed DIP Facility Claims shall be paid in full from the DIP Loan Cash on the Effective Date and such payment shall be in Final Satisfaction of each and every DIP Facility Claim; provided, however, that in the case of an All Asset Qualified Offer, the DIP Obligations must have been paid in full, in Cash.

### 2.3   Professional Claims.

(a)   **Final Fee Applications**.  Prior to the Effective Date, Professionals shall provide good-faith estimates of accrued but unpaid Professional fees as of the Effective Date, which shall be funded into the Professional Fee Escrow.  All final requests for payment of Professional Claims and requests for reimbursement of expenses of members of the Creditors' Committee must be filed no later than thirty (60) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Claims and expenses shall be determined by the Bankruptcy Court and paid in full from the Professional Fee Escrow established under the DIP Credit Agreement or from the proceeds of the DIP Facility.  For the avoidance of doubt, the treatment set forth in this Section 2.3(a) shall apply to Professional Claims whether incurred on behalf of the Emerging Debtors, the Liquidating Debtors, or the Non-Reorganizing Debtors.

(b)   **Post-Effective Date Retention.**  Upon the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors and the Plan Debtors, as the case may be, shall employ and pay Professionals in the ordinary course of business (including the reasonable fees and expenses incurred by Professionals in preparing, reviewing, prosecuting, defending, or addressing any issues with respect to final fee applications).

(c)   **Constellation Success Fee.**  Any and all Professional Fee Claims constituting a success fee resulting from Confirmation of the Plan for the Constellation Debtor or a sale of the Constellation Vessel shall be payable by the Constellation Lenders, and shall not constitute Administrative Claims, provided, however, that the amount of any such Claims shall be acceptable to the Required Constellation Lenders, the Constellation Debtor and the relevant Professional with such amount to be set forth in a letter agreement between the Constellation Debtor, the Required Constellation Lenders, and the relevant Professional.

### 2.4   Priority Tax Claims.

(a)   Except to the extent that a Holder of an Allowed Priority Tax Claim against a Plan Debtor and such Plan Debtor agree to a less favorable treatment to such Holder, on, or as soon as reasonably practicable after, the later of (a) the Effective Date, or (b) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive (from the respective source set forth in subsection (b) below), one of the following treatments in Final Satisfaction of such Claim: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, (b) Cash in an amount agreed to by the relevant Plan Debtor and such Holder, provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim to occur at a later date, or (c) at the sole option of such Plan Debtor, Cash in the aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of not more than five (5) years after the Petition Date under Bankruptcy Code section 1129(a)(9)(C); provided, however, that any Priority Tax Claim that is not an Allowed Claim,

23

including any Allowed Priority Tax Claim not due and owing on the Effective Date, will be paid in accordance with this section when such Claim becomes due and owing.

**(b)** All payments on account of Allowed Priority Tax Claims in respect of (a) the Emerging Debtors and Constellation Debtor shall be paid from Additional Cash, (b) the Marine Base Opco Debtor shall be paid from the Excess Spool Base Proceeds, and (c) the Falcon Debtor shall be paid by the Falcon Lender.

## ARTICLE III

## <u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>

### 3.1 **Classification of Claims and Interests.**

**(a)** There are seven (7) Plan Debtors, four (4) are Emerging Debtors and the other three (3) are Liquidating Debtors, except to the extent provided for in Sections 7.4 and 7.9 of this Plan. Each Plan Debtor has been assigned a number below for purposes of classifying and treating Claims against and Interests in each Plan Debtor for balloting purposes. The Claims against and Interest in each Plan Debtor, in turn, have been assigned to separate lettered Classes with respect to each such Debtor, based on the type of Claim involved. Accordingly, the classification of any particular Claim against or Interest in any Plan Debtor depends on the particular Plan Debtor against which such Claim is asserted (or in which such Interest is held) and the type of Claim or Interest in question. The number will denote which Plan Debtor against which a Claim or Interest has been asserted, and the letter will denote the Class of such Claim or Interest. The numbers applicable to the various Debtor groups are as follows:

| Plan Debtor Number | Plan Debtor Name |
|---|---|
| **EMERGING DEBTORS** | |
| 1 | EMAS-AMC Pte. Ltd. |
| 2 | EMAS Saudi Arabia Ltd. |
| 3 | EMAS CHIYODA Subsea Services Pte Ltd. |
| 4 | Intentionally Omitted |
| 5 | EMAS CHIYODA Subsea Inc. |
| **LIQUIDATING DEBTORS** | |
| 6 | Lewek Constellation Pte. Ltd. |
| 7 | Lewek Falcon Shipping Pte. Ltd. |
| 8 | EMAS CHIYODA Subsea Marine Base LLC |

  **(b)** The Plan is a single plan of reorganization for the jointly administered Chapter 11 Cases, but does not constitute a substantive consolidation of the Debtors' Estates for voting purposes. The Plan, though proposed jointly, constitutes a separate plan for each of the Plan Debtors for voting purposes. Therefore, all Claims against and Interests in a particular Plan Debtor are placed in the Classes set forth below with respect to such Debtor. Classes that are not applicable as to a particular Plan Debtor shall be eliminated as set forth more fully in <u>Section 6.3</u> below. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims (including Professional Claims), DIP Facility Claims, and Priority Tax Claims of the kinds specified in Bankruptcy Code sections 507(a)(1) and 507(a)(8) have not been classified and their treatment is set forth in <u>Article II</u> above.

  **(c)** Under Bankruptcy Code sections 1122 and 1123, set forth below is a designation of classes of Claims against and Interests in the Plan Debtors. A Claim or Interest is placed in a particular Class for the purposes of voting on this Plan and, to the extent applicable, receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

(d)   Claims and Interests are divided into lettered Classes.  Not all of the Classes apply to every Plan Debtor, and consequently not all of the lettered Classes appear in the case of each Plan Debtor.  For purposes of voting, Claims within the Class shall be counted for each applicable Plan Debtor.  Whenever such a Class of Claims or Equity Interests is relevant to a particular Plan Debtor, that class of Claims or Interests shall be grouped under the appropriate lettered Class from the following list:

| Class | Claim or Interest |
|---|---|
| A | Class A consists of all Other Secured Claims against the applicable Debtor |
| B | Class B consists of all Helix Secured Claims against the Marine Base Opco Debtor |
| C | Class C consists of all Constellation Lender Secured Claims against the Constellation Debtor |
| D | Class D consists of all Falcon Lender Secured Claims against the Falcon Secured Lender |
| E | Class E consists of all Other Priority Claims against the applicable Debtor |
| F | Class F consists of all Bank Guarantee Claims against the applicable Debtor |
| G | Class G consists of all General Unsecured Claims against the applicable Debtor |
| H | Class H consists of all Cancelled Intercompany Claims against the applicable Debtor |
| I | Class I consists of all Subordinated Claims against the applicable Debtor |
| J | Interests consists of all Interests in the applicable Debtor |

**ARTICLE IV**
**IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND UNIMPAIRED BY THE PLAN**

**4.1     Classes of Claims that are Unimpaired.**  The following Classes of Claims are Unimpaired by the Plan:

| | |
|---|---|
| **Classes 1A through 5A** | **(Other Secured Claims against the Emerging Debtors)** |

| Classes 6A through 8A | (Other Secured Claims against the Liquidating Debtors) |
|---|---|
| Class 8B | (Helix Secured Claims against Marine Base Opco Debtor) |
| Class 6C | (Constellation Lender Secured Claims against Constellation Debtor) |
| Class 7D | (Falcon Lender Secured Claims against Falcon Debtor) |
| Classes 1E through 5E | (Other Priority Claims against the Emerging Debtors) |
| Class 6E | (Other Priority Claims against the Constellation Debtor) |
| Class 7E | (Other Priority Claims against the Falcon Debtor) |
| Class 8E | (Other Priority Claims against the Marine Base Opco Debtor) |
| Classes 1F through 8F | (Bank Guarantee Claims against All Plan Debtors) |

      **4.2    Impaired Classes of Claims and Interests.**  The following Classes of Claims and Interests are Impaired by the Plan:

| Classes 1G through 3G and 5G | (General Unsecured Claims against Emerging Debtors) |
|---|---|
| Classes 6G and 7G | (General Unsecured Claims against Constellation Debtor and Falcon Debtor) |

| | |
|---|---|
| **Classes 8G** | **(General Unsecured Claims against Marine Base Opco Debtor)** |
| **Classes 1H through 8H** | **(Cancelled Intercompany Claims, as applicable)** |
| **Classes 1I through 8I** | **(Subordinated Claims, against all Plan Debtors)** |
| **Classes 1J through 8J** | **(Interests in All Plan Debtors)** |

## ARTICLE V

## PROVISIONS FOR TREATMENT
## OF CLAIMS AND INTERESTS

### 5.1   Classes 1A through 5A – Other Secured Claims (Emerging Debtors).

(a)   Classification: Classes 1A through 5A consists of all Other Secured Claims against the relevant Emerging Debtor.  The numerical portion of the Class designation corresponds to the applicable Plan Debtor number on the chart above.

(b)   Treatment:  Except to the extent that the Holder of an Allowed Other Secured Claim against an Emerging Debtor and the Emerging Debtor agree to a less favorable treatment to such Holder, on, or as soon as reasonably practicable after, the later of (i) the Effective Date, or (ii) the date on which such Secured Claim becomes an Allowed Secured Claim, in Final Satisfaction of every Allowed Other Secured Claim, each such Holder shall, at the sole option of the Plan Sponsor, (a) have its Allowed Other Secured Claim Reinstated and rendered Unimpaired in accordance with Bankruptcy Code section 1124(2), notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Other Secured Claim to demand or to receive payment of such Allowed Other Secured Claim prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of a default, or (b) receive the collateral securing its Allowed Other Secured Claim.

(c)   Voting:  Classes 1A through 5A are Unimpaired, and Holders of Allowed Claims in Classes 1A through 5A are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f).  Therefore, Holders of Allowed Claims in Classes 1A through 5A are not entitled to vote to accept or reject this Plan.

28

**5.2    Classes 6A through 8A – Other Secured Claims (Liquidating Debtors).**

(a)  <u>Classification</u>: Classes 6A through 8A consists of all Other Secured Claims against the relevant Liquidating Debtor.

(b)  <u>Treatment</u>:  Notwithstanding any other provision in this Plan, except to the extent that a Holder of an Allowed Other Secured Claim and the relevant Liquidating Debtor agree to a less favorable treatment to such Holder, on, or as soon as reasonably practicable after, the later of (i) the Effective Date, or (ii) the date on which such Secured Claim becomes an Allowed Secured Claim, in Final Satisfaction of every Allowed Other Secured Claim, each such Holder of an Allowed Other Secured Claim shall have its Allowed Other Secured Claim Reinstated and rendered Unimpaired in accordance with Bankruptcy Code section 1124(1) and shall retain all rights under applicable law to enforce and collect on their security interest with regard to their respective interest in the Falcon or Constellation vessels.

(c)  <u>Voting</u>:  Classes 6A through 8A are Unimpaired, and Holders of Allowed Claims in Classes 6A through 8A are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f).  Therefore, Holders of Allowed Claims in Classes 6A through 8A are not entitled to vote to accept or reject this Plan.

**5.3    Class 8B – Helix Secured Claims (Marine Base Opco Debtor).**

(a)  <u>Classification</u>: Class 8B consists of all Helix Secured Claims against the Marine Base Opco Debtor.

(b)  <u>Treatment</u>:  Except to the extent that a Holder of an Allowed Helix Secured Claim and Marine Base Opco Debtor agree to a less favorable treatment to such Holder, on, or as soon as reasonably practicable after, the later of (i) the Effective Date, (ii) the date on which such Secured Claim becomes an Allowed Secured Claim, or (iii) the date on which the sale of the Ingleside Spool Base closes, in Final Satisfaction of every Allowed Helix Secured Claim, each such Holder of an Allowed Helix Secured Claim shall receive Cash in the Allowed amount of such Claim out of the proceeds of such sale.

(c)  <u>Voting</u>:  Class 8B is Unimpaired, and Holders of Allowed Claims in Class 8B are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f).  Therefore, Holders of Allowed Claims in Class 8B are not entitled to vote to accept or reject this Plan.

**5.4    Class 6C – Constellation Lender Secured Claims (Constellation Debtor).**

      **(a)** Classification:   Class 6C consists of all Constellation Lender Secured Claims against the Constellation Debtor.

      **(b)** Treatment:  The Holders of Allowed Constellation Lender Secured Claims shall have the following treatment:

      **(i)**    If the Constellation Lenders accept a Constellation Qualified Offer, the Constellation Vessel shall be conveyed by the Constellation Debtor to the purchaser identified in the Constellation Qualified Offer free and clear of all liens, claims, and encumbrances (other than any Other Secured Claims, including Secured Maritime Lien Claims, the treatment of which is provided for in Section 5.2) such liens, claims, and encumbrances to attach to the proceeds of such sale in order of priority, and on the terms and conditions set forth in such Constellation Qualified Offer and the Constellation Lenders shall receive from the Constellation Debtor the gross proceeds of the Constellation Qualified Offer (net of any outstanding amounts required to administer the Constellation Debtor's estate during any period after the Effective Date of all Emerging Debtors' Plans and before the Effective Date of the Constellation Debtor Plan) up to the amount of their Allowed Constellation Lender Secured Claim against the Constellation Debtor in Final Satisfaction of each and every Allowed Constellation Lender Secured Claim.  The Constellation Debtor shall file with the Bankruptcy Court a notice disclosing the identity of the purchaser, the amount of the accepted Constellation Qualified Offer, and attaching the definitive documentation.  Such notice may be filed after confirmation of the chapter 11 plan of the Constellation Debtor, in which case the Constellation Debtor will request entry of a supplemental order authorizing and approving the sale to the purchaser.  The deposit paid in connection with the accepted Constellation Qualified Offer, as proceeds of the Constellation Vessel, shall be held in an account with the agent under the Constellation Credit Agreement.

      **(ii)**    If the Constellation Lenders do not accept a Constellation Qualified Offer, then on the Effective Date, at the direction of the Required Constellation Lenders (a) the Constellation Vessel shall be conveyed by the Constellation Debtor to a special purpose vehicle owned by the Constellation Lenders, (b) all Interests in the Constellation Debtor shall be cancelled and reissued or transferred by the Constellation Debtor to the Constellation Lenders, in each case, in Final Satisfaction of every Constellation Lender Secured Claim, and the Constellation Debtor shall be dissolved hereunder, or (c) the automatic stay shall be lifted to permit the Constellation Lenders to immediately exercise any rights or remedies they may have in relation to the Constellation Vessel.  The Constellation Debtor shall file a notice with the Bankruptcy Court setting forth the Constellation Lenders' election in accordance with this Section, which such notice may be filed after confirmation of the chapter 11 plan of the Constellation Debtor.

      **(iii)**    The Short Term Bareboat Charter, Initial Bareboat Charter and the Long Term Bareboat Charter, in each case only as applicable pursuant to Section 7.19 hereof, shall survive (a) the purchase of the Constellation Vessel under a Constellation Qualified Offer, (b) the direct or indirect transfer of the Constellation Vessel to the Constellation Lenders,

whether pursuant to Section 5.4(b)(ii) or otherwise, and (c) the entry by the Constellation Lenders, directly or indirectly, into a third party charter agreement. In connection with the Short Term Bareboat Charter, the party granting such Short Term Bareboat Charter shall be granted access to the Constellation Vessel for ten (10) certified seafarers. Without limiting the generality of the foregoing, no agreement in respect of the Constellation Vessel or any direct or indirect transfer of the Constellation Vessel under the Plan shall affect, modify or impair any of the rights of Subsea 7 under the Short Term Bareboat Charter, Initial Bareboat Charter (if any) or the Long Term Bareboat Charter (if any) and any such charters shall be unaffected in any manner whatsoever by the Confirmation of the Plan or the occurrence of the Effective Date.  For the avoidance of doubt, any purchaser of the Constellation Vessel pursuant to a Constellation Qualified Offer under this Plan shall acquire title to the Constellation Vessel free and clear of any liens, claims, or encumbrances, including free and clear of any obligation to enter into the Initial Bareboat Charter or the Long Term Bareboat Charter, <u>provided</u>, <u>however</u>, that such purchaser shall be required to acquire the Constellation Vessel subject to the terms of the Short Term Bareboat Charter.

> **(c)** Voting:  Class 6C is Unimpaired, and Holders of Allowed Claims in Class 6C are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f).  Therefore, Holders of Allowed Claims in Class 6C are not entitled to vote to accept or reject this Plan.

### 5.5 Class 7D – Falcon Lender Secured Claims (Falcon Debtor).

> **(a)** Classification:  Class 7D consists of all Falcon Lender Secured Claims.

> **(b)** Treatment:  Except to the extent that a Holder of an Allowed Falcon Lender Secured Claim and the Falcon Debtor agree to a less favorable treatment to such Holder, on, or as soon as reasonably practicable after, the later of (i) the Effective Date, or (ii) the date on which such Secured Claim becomes an Allowed Secured Claim, in Final Satisfaction of every Allowed Falcon Lender Secured Claim, each such Holder of an Allowed Falcon Lender Secured Claim shall, at the sole option of the Falcon Lender, (a) have its Allowed Falcon Lender Secured Claim Reinstated and rendered Unimpaired in accordance with Bankruptcy Code section 1124(2), notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Other Secured Claim to demand or to receive payment of such Allowed Other Secured Claim prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of a default, (b) receive the collateral securing its Falcon Lender Secured Claim and the Falcon Debtor shall be dissolved hereunder, (c) at the direction of the Falcon Lender, all Interests in the Falcon Debtor shall be cancelled and reissued or transferred to the Falcon Lender, or (d) if the Falcon Debtor and OCBC agree upon appropriate consideration (whether in the form of Cash or a waiver of Claims against the Debtors) to the Debtors for managing the Falcon Vessel in a sale process and as long as any administrative claims only arise against the Falcon Debtor, then the Falcon Debtor's estate for so long as OCBC funds it may conduct a sale of the Falcon Vessel, free and clear of all liens, claims, and encumbrances (other than any Other Secured Claims, including Secured Maritime Lien Claims, the treatment of which is provided for in Section 5.2) such liens, claims, and encumbrances to attach to the proceeds of such sale in order of

31

priority, and OCBC would receive from the Falcon Debtor the proceeds of any sale (net of any outstanding amounts required to administer the Falcon Debtor's estate) up to the amount of their Allowed Falcon Lender Secured Claim against the Falcon Debtor in Final Satisfaction of each and every Allowed Falcon Lender Secured Claim.

          **(c)**  <u>Voting</u>:  Class 7D is Unimpaired, and Holders of Allowed Claims in Class 7D are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f).  Therefore, Holders of Allowed Claims in Class 7D are not entitled to vote to accept or reject this Plan.

### 5.6      Classes 1E through 5E – Other Priority Claims (Emerging Debtors).

          **(a)**  <u>Classification</u>: Classes 1E through 5E consists of all Other Priority Claims against the relevant Emerging Debtor.

          **(b)**  <u>Treatment</u>:  Except to the extent that the Holder of an Allowed Other Priority Claim agrees to less favorable treatment, Allowed Other Priority Claims shall be paid in Cash as set forth below:

          **(i)**      In Final Satisfaction of Allowed Ordinary Course Other Priority Claims, on, or as soon as reasonably practicable after the later of (a) the Effective Date, or (b) the date on which an Ordinary Course Other Priority Claim becomes an Allowed Ordinary Course Other Priority Claim, such Claims shall be Assumed Liabilities and shall be paid by the respective Restructured Emerging Debtor or the affiliate of Newco into which purchased assets are transferred in the ordinary course of business in accordance with their terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

          **(ii)**     In Final Satisfaction of Non-Ordinary Course Other Priority Claims, (a) on or as soon as reasonably practicable after the Effective Date, the Plan Administrator shall receive on behalf of all Holders of such Claims against the applicable Emerging Debtor, the Additional Cash, and (b) on the Initial Distribution Date, the Plan Administrator shall pay the Holder of such Allowed Non-Ordinary Course Other Priority Claim Cash in the full amount of such Claim. To the extent the Additional Cash is insufficient, such Non-Ordinary Course Other Priority Claim shall be assumed by Newco and all Other Priority Claims must be paid in accordance with the Bankruptcy Code.  For the avoidance of doubt, the Allowed Non-Ordinary Course Priority Claims shall not be paid from the GUC Cash.

          **(c)**  <u>Voting</u>: Classes 1E through 5E are Unimpaired, and Holders of Allowed Classes 1E through 5E Claims are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f).  Therefore, Holders of Allowed Class 1E through 5E Claims are not entitled to vote to accept or reject this Plan.

### 5.7      Class 6E – Other Priority Claims (Constellation Debtor).

          **(a)**  <u>Classification</u>: Class 6E consists of all Other Priority Claims against the Constellation Debtor.

**(b)** <u>Treatment</u>:  Except to the extent that a Holder of an Allowed Other Priority Claim against the Constellation Debtor and the Constellation Debtor agree to a less favorable treatment to such Holder, in Final Satisfaction of each and every Allowed Other Priority Claim, (a) on or as soon as reasonably practicable after the Effective Date, the Plan Administrator shall receive on behalf of all Holders of such Claims (in the amount of the Allowed and unpaid portion of such claims) the Cash from the Constellation Lenders (as may be agreed between the Constellation Debtor and the Constellation Lenders) with respect to Allowed Other Priority Claims against the Constellation Debtor, and (b) on the Initial Distribution Date, the Plan Administrator shall pay the Holder of such Allowed Other Priority Claim Cash in the full amount of such Claim.

**(c)** <u>Voting</u>: Class 6E is Unimpaired, and Holders of Allowed Class 6E, Claims are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f).  Therefore, Holders of Allowed Class 6E Claims are not entitled to vote to accept or reject this Plan.

### 5.8    Class 7E – Other Priority Claims (Falcon Debtor).

**(a)** <u>Classification</u>: Class 7E consists of all Other Priority Claims against the Falcon Debtor.

**(b)** <u>Treatment</u>:  Except to the extent that a Holder of an Allowed Other Priority Claim against the Falcon Debtor and the Falcon Debtor, agree to a less favorable treatment to such Holder, in Final Satisfaction of each and every Allowed Other Priority Claim, (a) on or as soon as reasonably practicable after the Effective Date, the Plan Administrator shall receive on behalf of all Holders of such Claims, Cash (in the amount of the Allowed and unpaid portion of such claims) from the Falcon Lender with respect to Allowed Other Priority Claims against the Falcon Debtor, and (b) on the Initial Distribution Date, the Plan Administrator shall pay the Holder of such Allowed Other Priority Claim Cash in the full amount of such Claim.

**(c)** <u>Voting</u>:  Class 7E is Unimpaired, and Holders of Allowed Class 7E Claims are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f).  Therefore, Holders of Allowed Class 7E Claims are not entitled to vote to accept or reject this Plan.

### 5.9    Class 8E – Other Priority Claims (Marine Base Opco Debtor).

**(a)** <u>Classification</u>: Class 8E consists of all Other Priority Claims against the Marine Base Opco Debtor.

**(b)** <u>Treatment</u>:  Except to the extent that a Holder of an Allowed Other Priority Claim against the Marine Base Opco Debtor and the Marine Base Opco Debtor agree to a less favorable treatment to such Holder, in Final Satisfaction of each and every Allowed Other Priority Claim against the Marine Base Opco, on, or as soon as reasonably practicable after the later of (a) the Effective Date, or (b) the date on which an Other Priority Claim becomes an Allowed Other Priority Claim, the Holder of the Allowed Other Priority Claim

33

shall receive Cash out of the Excess Spool Base Proceeds equal to the Allowed and unpaid portion of such Claim.

(c) <u>Voting</u>:  Class 8E is Unimpaired, and Holders of Allowed Class 8E Claims are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f).  Therefore, Holders of Allowed Class 8E Claims are not entitled to vote to accept or reject this Plan.

### 5.10    Classes 1F through 8F – Bank Guarantee Claims (All Plan Debtors).

(a) <u>Classification</u>: Classes 1F through 8F consists of all Bank Guarantee Claims against the relevant Plan Debtor.

(b) <u>Treatment</u>:  Except to the extent that a Holder of an Allowed Bank Guarantee Claim against the relevant Plan Debtor and the applicable Plan Debtor agree to a less favorable treatment to such Holder, each Allowed Bank Guarantee Claim will be Reinstated and rendered Unimpaired in accordance with Bankruptcy Code section 1124(2), notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Bank Guarantee Claim to demand or to receive payment of such Allowed Bank Guarantee Claim prior to the stated maturity of such Allowed Bank Guarantee Claim from and after the occurrence of a default.

(c) <u>Voting</u>: Classes 1F through 8F are Unimpaired, and Holders of Allowed Claims in Classes 1F through 8F are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f).  Therefore, Holders of Allowed Claims in Classes 1F through 8F are not entitled to vote to accept or reject this Plan.

### 5.11    Classes 1G through 3G and 5G – General Unsecured Claims (Emerging Debtors).

(a) <u>Classification</u>: Classes 1G through 3G and 5G consist of all General Unsecured Claims against the relevant Debtors.

(b) <u>Treatment</u>:  In Final Satisfaction of each and every Allowed General Unsecured Claim against the relevant Plan Debtor, (i) on or as soon as reasonably practicable after the Effective Date, the Plan Administrator shall receive on behalf of all Holders of such Claims against the relevant Debtor, the GUC Cash, and (ii) on the Initial Distribution Date, the Plan Administrator shall pay each Holder of an Allowed General Unsecured Claim its Pro Rata share of the Net GUC Cash as to which all Holders of Allowed General Unsecured Claims would be entitled as if Classes 1G through 3G and 5G were a single class; <u>provided</u>, <u>however</u>, that any Holder of an unsecured guarantee Claim against more than one relevant Plan Debtor shall be limited to a single recovery on account of such guarantee Claims; <u>provided</u>, <u>further</u>, <u>however</u>, that distributions on account of the Constellation Lender Guarantee Claims shall be made to the holders of the other General Unsecured Creditors in Classes 1G through 3G and 5G.

(i) If a Plan as to a particular Plan Debtor is not confirmed or a Plan is withdrawn, then the Holders of Allowed General Unsecured Claims with respect to such

34

Debtor will not receive the treatment set forth above, and the recovery they would have otherwise received shall be distributed among the other Holders of Allowed General Unsecured Claims in the remaining classes.

(c)  <u>Voting</u>: Classes 1G through 3G and 5G are Impaired and Holders of Allowed Claims in Classes 1G through 3G and 5G are entitled to vote to accept or reject this Plan.

**5.12    Classes 6G and 7G – General Unsecured Claims (Constellation Debtor and Falcon Debtor)**.

(a)  <u>Classification</u>: Classes 6G, and 7G consist of all General Unsecured Claims against the relevant Debtor.

(b)  <u>Treatment</u>:  In Final Satisfaction of each and every Allowed General Unsecured Claim against the relevant Plan Debtor, on the Effective Date, or as soon as reasonably practicable thereafter, the Plan Administrator shall receive on behalf of each Holder of an Allowed General Unsecured Claim against the relevant Plan Debtor, such Holder's Pro Rata share of distributable value from the relevant Debtor's estate, if any, after payment of all senior claims in respect of the relevant Plan Debtor.

(c)  <u>Voting</u>: Classes 5G through 7G are Impaired and Holders of Allowed Claims in Classes 5G through 7G are entitled to vote to accept or reject this Plan.

**5.13    Class 8G – General Unsecured Claims (Marine Base Opco Debtor)**.

(a)  <u>Classification</u>: Class 8G consists of all General Unsecured Claims against Marine Base Opco Debtor.

(b)  <u>Treatment</u>:  In Final Satisfaction of each and every such Claim, on the Effective Date, or as soon as reasonably practicable thereafter, the Plan Administrator shall receive such Holder's Pro Rata share of the Excess Spool Base Proceeds, if any, after payment of all senior claims in respect of the Marine Base Opco Debtor.

(c)  <u>Voting</u>: Class 8G is Impaired and Holders of Allowed Claims in Classes 8G are entitled to vote to accept or reject this Plan.

**5.14    Classes 1H through 8H – Cancelled Intercompany Claims (All Plan Debtors)**.

(a)  <u>Classification</u>:  Classes 1H through 8H consists of all Cancelled Intercompany Claims against the relevant Debtor.

(b)  <u>Treatment</u>: Holders of Allowed Cancelled Intercompany Claims will receive the following treatment:

(i)  Intercompany Claims amongst the Singapore/Saudi Debtors shall be cancelled or subordinated.

(ii)     Intercompany Claims as between the Singapore/Saudi Debtors on the one hand and the US Debtor on the other shall be cancelled or subordinated.

(iii)     Intercompany Claims allegedly held by ECS against any Emerging Debtor shall be cancelled or subordinated, based on evidence to be provided on the record at the Confirmation Hearing.

(c)  <u>Voting</u>:  Classes 1H through 8H are Impaired, and Holders of Allowed Claims in Classes 1H through 8H are conclusively presumed to have rejected this Plan under Bankruptcy Code section 1126(g).  Therefore, Holders of Allowed Claims in Classes 1H through 8H are not entitled to vote to accept or reject this Plan.

### 5.15    Class 1I through 8I – Subordinated Claims (All Plan Debtors).

(a)  <u>Classification</u>:  Classes 1I through 8I consists of all Subordinated Claims against the relevant Debtor.

(b)  <u>Treatment</u>: Holders of Allowed Claims in Classes 1I through 8I shall not receive any distributions on account of such Allowed Claims in Classes 1I through 8I, and on the Effective Date all Allowed Claims in Classes 1I through 8I shall be released, waived, and discharged.

(c)  <u>Voting</u>: Classes 1I through 8I are Impaired, and Holders of Allowed Claims in Classes 1I through 8I are deemed to have rejected this Plan under Bankruptcy Code section 1126(g).  Therefore, Holders of Allowed Claims in Classes 1I through 8I are not entitled to vote to accept or reject this Plan.

### 5.16    Class 1I through 8J – Interests (All Plan Debtors).

(a)  <u>Classification</u>:  Classes 1J through 8J consists of all Interests in the relevant Debtor.

(b)  <u>Treatment</u>: On the Effective Date, Interests in Classes 1J through 8J shall be deemed automatically cancelled, released, and extinguished without further action by the Debtors or the Plan Debtors and the obligations of the Debtors and the Plan Debtors thereunder shall be discharged and the Holders of Interests in Classes 1J through 8J shall not receive or retain any property or interests on account of such Interests in Classes 1J through 8J; <u>provided</u>, <u>however</u>, that Interests in any Emerging Debtors other than an Emerging Debtor that is an immediate subsidiary of the DIP Borrower and, unless Subsea 7 agrees otherwise in its sole and absolute discretion, the US Debtor, shall remain intact solely to preserve corporate structure, but shall not be entitled to any distribution; <u>provided</u>, <u>further</u>, <u>however</u>, with respect to the Liquidating Debtors, in the event that there are any excess proceeds available after all creditors at any particular Liquidating Debtors are paid in full, those proceeds will be distributed to shareholders of such Liquidating Debtor Pro Rata.

(c)  <u>Voting</u>: Classes 1J through 8J are Impaired, and Holders of Interests in Classes 1J through 8J are deemed to have rejected this Plan under Bankruptcy

Code section 1126(g).  Therefore, Holders of Interests in Classes 1J through 8J are not entitled to vote to accept or reject this Plan.

## ARTICLE VI

## ACCEPTANCE

**6.1     Classes Entitled to Vote.**  Classes 1G through 8G are Impaired and are entitled to vote to accept or reject this Plan.  By operation of law, Classes 1A through 8A, 8B, 6C, 7D, 1E through 8E, and 1F through 8F are Unimpaired and are deemed to have accepted this Plan and, therefore, are not entitled to vote.  By operation of law, Classes 1H through 8H, 1I through 8I, and 1J through 8J are deemed to have rejected this Plan and are not entitled to vote.

**6.2     Acceptance by Impaired Classes.**  An Impaired Class of Claims shall have accepted this Plan if, not counting the vote of any Holder designated under Bankruptcy Code section 1126(e), (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept this Plan.

**6.3     Elimination of Classes.**  To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of commencement of the Confirmation Hearing, shall, for each applicable Debtor, be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under Bankruptcy Code section 1129(a)(8).

**6.4     Deemed Acceptance if No Votes Cast.**  If no Holders of Claims eligible to vote in a particular Class vote to accept or reject this Plan, this Plan shall be deemed accepted by the Holders of such Claims in such Class.

**6.5     Cramdown.**  To the extent necessary, the Plan Debtors shall request confirmation of this Plan, as it may be modified from time to time in accordance with the terms hereof, under Bankruptcy Code section 1129(b).  The Plan Debtors reserve the right to modify, amend, or withdraw this Plan, with respect to all Plan Debtors or any individual Plan Debtor or group of Plan Debtors to the extent, if any, that confirmation under Bankruptcy Code section 1129(b) requires modification.

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1     General Settlement of Claims and Interests.**  Under Bankruptcy Code section 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, on the Effective Date, the provision of this Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved under this Plan.

**7.2     Plan Funding.**  If Newco acquires the Emerging Debtors, the Plan shall be funded from the proceeds of the Purchase Price, plus any additional Cash received on account of Retained Avoidance Actions and the Retained Plan Administrator Causes of Action, and the sale of additional assets of the U.S. Debtor.   If an Alternative Plan Sponsor acquires the Emerging Debtors, the Plan shall be funded by such Alternative Plan Sponsor.

**7.3     Cancellation of the Prepetition Credit Facility and Interests.**  On the Effective Date, except to the extent otherwise provided in this Plan, all notes, instruments, certificates, and other documents evidencing or creating any indebtedness or obligation of or ownership in the Plan Debtors shall be cancelled, and the obligations in any way related thereto shall be fully satisfied, released, and discharged.   On the Effective Date, except to the extent otherwise provided in this Plan, all Interests in the Plan Debtors shall be cancelled, and the obligations in any way related thereto shall be fully satisfied, released, and discharged.

**7.4     Authorization and Issuance of New Equity in the Emerging Debtors to Newco and Purchase of US Debtor Assets.**  On the Effective Date, the Emerging Debtors (other than the US Debtor) shall authorize and directly or indirectly issue (or transfer) all of the New Equity Interests to Newco.  With respect to the US Debtor, the Purchased Assets from the US Debtor (as identified by Newco or its designee) and the US Debtor's employees shall be conveyed to Newco or its designee through an asset purchase pursuant to this Plan; provided, however, that Newco or its designee may elect to acquire such Purchased Assets through the issuance of New Equity Interests in Newco's sole and absolute discretion.

**7.5     Acquisition of Additional Debtor Assets.**  On the Effective Date, Newco or its designee may acquire free and clear of all claims and interests to the fullest extent permitted by Bankruptcy Code section 1141(c) additional assets (including through the assumption of executory contracts) from a Liquidating Debtor through a sale or assumption, as the case may be, under the Plan.  In such a case, the purchase price of such assets shall be paid to the applicable Liquidating Debtor and shall be used by such Debtor to fund its estate.

**7.6     Continued Corporate Existence.**  Except as otherwise provided in this Plan, the Plan Debtors shall continue to exist after the Effective Date as separate entities, with all the powers under applicable law in the jurisdictions in which the Debtors have been formed, and under their certificates of formation and limited liability company agreements or other organizational documents in effect prior to the Effective Date, except to the extent such certificates of formation and limited liability company agreements or other organizational documents are amended and restated by this Plan, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date. To the extent such documents are amended, such documents are deemed to be amended under this Plan without any further notice to or action, order, or approval of the Bankruptcy Court or any other court of competent jurisdiction (other than the requisite filings required under applicable state, provincial, or federal law).

**7.7     Restructuring Transactions.**

**(a)** On or following the Confirmation Date, the Debtors or Plan Debtors, as the case may be, shall take such actions as may be necessary or appropriate to

effect the relevant restructuring transactions as set forth in this Plan and the Plan Transaction Documents, and may take other actions on or after the Effective Date.

(b)  Prior to, on, or after the Effective Date, and under this Plan, the Plan Debtors shall enter into the restructuring transactions described herein and in the Disclosure Statement and the Plan Transaction Documents.  The Debtors or the Plan Debtors, as applicable, shall take any actions as may be necessary or appropriate to effect a restructuring of the Debtors' businesses or the overall organizational structure of the Plan Debtors.  The restructuring transactions may include one or more restructurings, conversions, dissolutions, or transfers as may be determined by the Debtors or the Plan Debtors, as the case may be, to be necessary or appropriate.  The actions taken by the Debtors or the Plan Debtors, as applicable, to effect the restructuring transactions may include: (i) the execution, delivery, adoption, and/or amendment of appropriate agreements or other documents of restructuring, conversion, disposition, or transfer containing terms that are consistent with the terms of this Plan, the Disclosure Statement, the Plan Transaction Documents, and any ancillary documents and that satisfy the applicable requirements of applicable state, federal, and foreign law and any other terms to which the applicable parties may agree; (ii) the execution, delivery, adoption, and/or amendment of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan, the Disclosure Statement, the Plan Transaction Documents, and any ancillary documents and having other terms for which the applicable parties may agree; (iii) the filing of appropriate certificates of formation, incorporation, merger, consolidation, dissolution, or conversion under applicable law, including but not limited to an amended certificate of formation, incorporation, LLC agreement, or bylaws with the appropriate governmental authorities; (iv) the cancellation of Interests, membership units, and warrants; and (v) all other actions that the Debtors or the Plan Debtors, as applicable, determine to be necessary, desirable, or appropriate to implement, effectuate, and consummate this Plan or the restructuring transactions contemplated hereby, including making filings or recordings that may be required by applicable law in connection with the restructuring transactions.

### 7.8    Plan Administrator.

(a)  The Plan Administrator shall have the power to administer the Remaining Administered Assets and make or authorize distributions to creditors hereunder. Without limiting the generality of the foregoing, the Plan Administrator shall (a) hold and administer the Remaining Administered Assets; (b) have authority to pay from the Wind-Down Account all out of pocket expenses incurred in connection with the discharge of its duties under the Plan; (c) have the power and authority to retain such attorneys, advisors, other professionals and employees as may be appropriate to perform the duties required of the Plan Administrator hereunder; (d) make distributions as provided in the Plan; (e) prosecute and settle all Retained Avoidance Actions and the Retained Plan Administrator Causes of Action, as further set forth in Section 7.15 of the Plan, and (f) file with the Court periodic reports and updates regarding the status of the administration of the Remaining Administered Assets as may be reasonably required.   The Emerging Debtors shall cooperate in a commercially reasonable manner and in good faith with the Plan Administrator to assure that the Plan Administrator has full and complete access to the Emerging Debtors' books and records in possession of the Emerging Debtors in connection with its duty to object to Claims

and administer the Remaining Administered Assets. Without limiting the generality of the foregoing, the Emerging Debtors shall preserve all records and documents (including any electronic records and documents) related to Claims and the Remaining Administered Assets until the earlier of (i) the fifth (5th) anniversary of the Effective Date, and (ii) thirty (30) days after receiving notice from the Plan Trustee that such records are no longer required to be preserved.

(b) On the Effective Date, an amount of Cash determined by the Plan Debtors and the Creditor's Committee sufficient to perform the functions of the Plan Administrator in connection with its responsibilities, including professional fees, shall be segregated into a Wind-Down Account. Any excess amount remaining in the Wind-Down Account in connection with the closing of the Chapter 11 Cases shall be treated as distributable GUC Cash in any final distribution. In no event shall the amount of Cash determined by the Plan Debtors and the Creditors' Committee to be segregated into a Wind-Down Account be more than $300,000 of the GUC Cash.

**7.9     Post-Emergence Structure of the Debtors.** As of the Effective Date, the New Equity Interests in the Emerging Debtors shall be, directly or indirectly, held by Newco.

**7.10     New Corporate Governance Documents.** The New Corporate Governance Documents shall be adopted and amended as may be required so that they are consistent with the provisions of this Plan and otherwise comply with Bankruptcy Code section 1123(a)(6). The Emerging Debtors shall enter into such agreements and amend its corporate governance documents to the extent necessary to implement the terms and conditions of this Plan. After the Effective Date, the Emerging Debtors may amend and restate the New Corporate Governance Documents and other constituent documents as permitted by applicable law.

**7.11     Directors, LLC Managers, and Officers of the Plan Debtors.** On the Effective Date, the term of the current members of the board of directors, managers, or members, as the case may be, of the Emerging Debtors shall expire. On the Effective Date, the New Emerging Debtor Boards shall be appointed. On and after the Effective Date, each manager or officer of the Emerging Debtors shall serve under the terms of the New Corporate Governance Documents and applicable state limited liability company law or alternative comparable law, as applicable.

**7.12     Corporate Action.** Each of the matters provided for under this Plan involving the corporate structure of the Plan Debtors or corporate action to be taken by or required of the Debtors or the Plan Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, Creditors, or directors of the Debtors or the Plan Debtors. Such actions may include (i) the adoption and filing of the New Corporate Governance Documents, (ii) the appointment of the New Emerging Debtor Boards, and (iii) all other actions contemplated by this Plan (whether to occur before, on, or after the Effective Date).

**7.13     Effectuating Documents; Further Transactions.** On and after the Effective Date, the Plan Debtors, and the officers thereof and members of the New Emerging

Debtor Boards, shall be authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan, or to otherwise comply with applicable law, in the name of and on behalf of the Plan Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under this Plan.

**7.14    Employment, Retirement, and Other Agreements and Employee Compensation Plans.**

(a)  **Employment Agreements.**  The Plan Debtors shall assume or reject employment, severance (change in control), retirement, indemnification, or other agreement with their pre-Effective Date managers, officers, and employees in accordance with the provisions of Article VIII of this Plan.  If the Plan Debtors do not list such agreement on the list of "Assumed Executory Contracts and Unexpired Leases" contained in the Plan Supplement in accordance with Section 8.1 of this Plan, such agreement shall be deemed rejected.  The Plan Debtors may enter into new employment arrangements and/or change in control agreements with the Plan Debtors' officers who continue to be employed after the Effective Date; provided, however, that to enter into or to obtain the benefits of any such employment agreement, such executive officer must contractually waive and release all pre-existing claims, including those arising from pre-existing employment, change in control, or other employment-related agreements and/or benefits under certain pre-existing compensation and benefit arrangements. On or after the Effective Date, the Emerging Debtors may adopt, approve, and authorize the new employment arrangement and/or change in control agreement with respect to such officers of the Emerging Debtors without further action, order, or approval of the New Emerging Debtor Boards.

(b)  **Other Incentive Plans and Employee Benefits.**  Unless otherwise specified in this Plan, on and after the Effective Date, the Emerging Debtors shall have the sole discretion to (a) amend, adopt, assume, and/or honor, in the ordinary course of business or as otherwise provided herein, any contracts, agreements, policies, programs, and plans assumed under Article VIII of this Plan for, among other things, compensation, under the terms thereof or hereof, including any incentive plan, 401(k) plan, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation benefits, life insurance, and accidental death and dismemberment insurance for the managers, officers, and employees of the Emerging Debtors who served in such capacity from and after the Petition Date, and (b) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date.

(c)  **Employee Incentive Plan**.  In accordance with that certain Order Authorizing and Approving the Debtors' Executive Incentive Plan, the Debtors seek an increase of up to 10 percent of the amounts payable under the Executive Incentive Plan.

7.15    **Causes Of Action.**

(a)    **Release of Avoidance Actions.**    On the Effective Date, all Avoidance Actions other than Retained Avoidance Actions shall be released.    Retained Avoidance Actions shall remain property of the applicable Plan Debtor's Estate and may be asserted by the Plan Administrator on behalf and for benefit of General Unsecured Creditors.

(b)    **Preservation of Causes of Action.**    Except as otherwise set forth in this Plan (including in Section 7.15(a) above), in accordance with Bankruptcy Code section 1123(b)(3), the applicable Plan Debtors shall retain and may (but are not required to) enforce all rights to commence and pursue any and all Causes of Action that are not released under <u>Section 7.15(a)</u> or <u>Section 11.5</u> or exculpated under <u>Section 11.7</u> of this Plan or an order of the Bankruptcy Court, whether arising before or after the Petition Date, including any actions or categories of actions specifically enumerated in a list of retained Causes of Action contained in the Plan Supplement, and such Causes of Action are preserved and shall vest in the Plan Debtors as of the Effective Date.    The Plan Debtors or the Plan Administrator in the case of the Retained Avoidance Actions and the Retained Plan Administrator Causes of Action, in their sole and absolute discretion, shall determine whether to bring, settle, release, compromise, or enforce such Causes of Action (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action.    The Plan Debtors, or the Plan Administrator in the case of the Retained Avoidance Actions and the Retained Plan Administrator Causes of Action, may pursue such litigation claims in accordance with the best interests of the Plan Debtors' or any successor holding such rights of action, or, in the case of the Retained Avoidance Actions and the Retained Plan Administrator Causes of Action, the applicable Debtor's general unsecured creditors.    **No Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, Plan Debtors, or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against them.    The Plan Debtors and, in the case of the Retained Avoidance Actions, the Plan Administrator expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in this Plan.**    Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or an order of the Bankruptcy Court, the Plan Debtors and the Plan Administrator expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or consummation of this Plan.

7.16    **Reservation of Rights.**    With respect to any Cause of Action or Retained Plan Administrator Cause of Action that the Plan Debtors or the Plan Administrator, as applicable, expressly abandon, if any, the Plan Debtors and the Plan Administrator reserve all rights, including the right under Bankruptcy Code section 502(d) to use defensively the abandoned Causes of Action as a basis to object to all or any part of a claim against any of the Estates asserted by a Creditor who obtains the benefit of the abandoned Cause of Action.    Except as set forth in <u>Article XI</u> of this Plan, nothing contained in this Plan shall constitute or be deemed a waiver or abandonment of any Cause of Action that the Plan Debtors, the Plan Administrator, or any Entity may hold against any other Entity, including insurers under any policies of

42

insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**7.17    Exemption from Certain Transfer Taxes and Recording Fees.**  Under Bankruptcy Code section 1146(a), any transfers of property under this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment to the fullest extent contemplated by Bankruptcy Code section 1146(a), and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation of any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**7.18    Termination of Utility Deposit Account.**  On the Effective Date, the Utility Deposit Account created under Bankruptcy Code section 366 shall be automatically terminated, and funds therein vested in the Plan Debtors.  All deposits provided to utility providers under Bankruptcy Code section 366 shall likewise be sent to the Plan Debtors on the Effective Date.

**7.19    Constellation Debtor.**  The Constellation Debtor or the Debtors, as applicable, shall be authorized to evaluate Constellation Qualified Offers (as defined below) through the later of (a) June 29, 2017 and (b) so long as Subsea 7 is a Plan Sponsor on such date, the Effective Date.  If a Constellation Qualified Offer is accepted by the Constellation Lenders, then the Constellation Debtor and its assets shall be reorganized or liquidated as set forth in such offer and in accordance with this Plan.  If no Constellation Qualified Offer is accepted, then, on the Effective Date, at the option of the Required Constellation Lenders, (a) the Constellation Vessel shall be transferred to a special purpose vehicle to be owned by the Constellation Lenders and the Constellation Debtor shall be dissolved under the Plan as set forth herein, (b) the Constellation Lenders shall receive all of the Equity Interests of the Constellation Debtor, or (c) the automatic stay shall be lifted to permit the Constellation Lenders to immediately exercise any rights or remedies they may have in relation to the Constellation Vessel.

In addition, the Constellation Debtor or the Debtors, as applicable, in consultation with the Constellation Lenders and the Creditors' Committee, shall have the right to evaluate third party offers for a bareboat charter with respect to the Constellation Vessel through the later of (a) June 29, 2017 and (b) so long as Subsea 7 is a Plan Sponsor on such date, the Effective Date; provided that Subsea 7 shall have a right of first refusal with respect to such offers.  The Constellation Lenders shall provide Subsea 7 with written notice of any such third party offers and Subsea 7 shall have 48 hours from the receipt of such notice to exercise its right of first refusal.  Once Subsea 7 agrees to match the prevailing market charter offer, the Debtors and the Constellation Lenders will cease their efforts to market the charter.

On the Effective Date, if Subsea 7 is a Plan Sponsor on such date, the Constellation Lenders may, at their option, by written notice (the "Initial Bareboat Charter Notice") require Subsea 7 to enter into the Initial Bareboat Charter.  If the Constellation Lenders exercise such option, neither the Emerging Debtors nor Subsea 7 shall be entitled to enter into the Short Term

Bareboat Charter and Subsea 7 shall have the right to enter into the Long Term Bareboat Charter within 14 days of the receipt of the Initial Bareboat Charter Notice.

On the Effective Date, if the Constellation Lenders do not elect to cause Subsea 7 to enter into an Initial Charter, the Constellation Lenders and Subsea 7 shall enter into the Short Term Bare Boat Charter.

**7.20   All Asset Qualified Offers.** The Debtors may continue to seek an Alternative Plan Sponsor pursuant to an All Asset Qualified Offer through June 15, 2017.

On and after the date on which the Debtors accept an All Asset Qualified Offer, all expenses of the Chapter 11 Cases shall be funded exclusively by the Alternative Plan Sponsor, including any amounts required to amend or resolicit the Plan, if any.

**7.21   Falcon Vessel.** To the extent that OCBC desires to fund all costs associated with owning and selling the Falcon Vessel (including all costs of operating, maintaining, docking, and running a sales process), the Debtors will accept reasonable direction from OCBC in connection with its disposition, including running a 363 sales process and/or lifting the automatic stay to permit OCBC to take control of the Falcon Vessel). If OCBC does not fund such costs, the Debtors will seek to abandon their interest in such vessel and dismiss the Falcon Debtor's Chapter 11 Case.

**7.22   Sources of Cash for Plan Distributions.** With respect to the Emerging Debtors, all Cash necessary for the Plan Administrator to make distributions in respect of Administrative Claims, Priority Claims, Priority Tax Claims, Other Secured Claims (including maritime liens), and General Unsecured Claims shall be obtained from the Remaining Administered Assets, including the Additional Cash; provided, however, for the avoidance of doubt, only creditors in Classes 1G through 3G and 5G shall be entitled to receive distributions from the Net GUC Cash. With respect to Marine Base Opco, all Cash necessary for the Plan Administrator to make distributions in respect of Administrative Claims, Priority Claims, Priority Tax Claims, Other Secured Claims, and General Unsecured Claims (including Allowed Preserved Intercompany Claims), shall be obtained from the proceeds of the sale of the Ingleside Spool Base. The Constellation Lender Secured Claims shall be paid from the proceeds of the sale of the Constellation Vessel, if any. The Falcon Lender Secured Claims shall be paid from the proceeds of the sale of the Falcon Vessel, if any. Except for the payment of the Purchase Price and the assumption of the Assumed Liabilities, under no circumstances shall any Administrative Claims, Priority Claims, Priority Tax Claims, Other Secured Claims, General Unsecured Claims, Intercompany Claims or Subordinated Claims be paid by or with the assets of the Emerging Debtors, including the Purchased Assets.

**7.23   Allocation of Liabilities.** Except for Assumed Liabilities, all liabilities and expenses accrued by the Emerging Debtors before 12:00 a.m. Prevailing Central Time on the Effective Date shall be for the account of the Estates and shall not be liabilities of the Emerging Debtors on and after the Effective Date. All liabilities and expenses accrued by the Emerging Debtors on and after 12:00 a.m. Prevailing Central Time on the Effective Date shall be the obligations of the Emerging Debtors and enforceable in accordance with applicable law.

   **7.24** **Reinstatement and Continuation of Insurance Policies**. From and after the Effective Date, each of the Debtors' insurance policies in respect of the Emerging Debtors in existence immediately prior to the Effective Date shall be reinstated and continued in accordance with its terms and shall, to the extent applicable, be deemed assumed by the applicable Emerging Debtor pursuant to section 365 of the Bankruptcy Code.

**ARTICLE VIII**

**UNEXPIRED LEASES AND EXECUTORY CONTRACTS**

   **8.1** **Rejection of Executory Contracts and Unexpired Leases.**

     **(a)** **Automatic Rejection.** Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed automatically rejected under Bankruptcy Code sections 365 and 1123 as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (i) is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases contained in the Plan Supplement; (ii) has been previously assumed or rejected by the Debtors by Final Order of the Bankruptcy Court or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to assume or reject pending as of the Effective Date; or (iv) is otherwise assumed under the terms herein.

   The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections under Bankruptcy Code sections 365 and 1123 as of the Effective Date; provided however, that until the Effective Date, the Plan Debtors may subsequently seek to assume an Executory Contract or Unexpired Lease previously slated for rejection by filing a motion to assume such Executory Contract or Unexpired Lease prior to the Effective Date, as set forth in Section 8.1(d). Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases subject to compliance with the requirements herein.

     **(b)** **Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.** Rejection of any Executory Contract or Unexpired Lease under this Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases. In particular, notwithstanding any non-bankruptcy law to the contrary, to the extent allowed by applicable bankruptcy law, the Plan Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or the Plan Debtors, as applicable, from counterparties to rejected Executory Contracts.

     **(c)** **Claims Procedures Related to Rejection of Executory Contracts or Unexpired Leases.** Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases under this Plan or otherwise must be filed with the Claims, Noticing, and Solicitation Agent no later than 30 days after the later of the Effective Date or the effective date

45

of rejection.  Any Proofs of Claim arising from the rejection of the Executory Contracts or Unexpired Leases that are not timely filed shall be disallowed automatically and forever barred, estopped, and enjoined from assertion and shall not be enforceable against the Debtors, without the need for any objection by the Plan Debtors or the Plan Administrator or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims.

(d)  **Reservation of Rights.**  Notwithstanding anything to the contrary herein, prior to the Effective Date, the Debtors may amend their decision with respect to the rejection of any Executory Contract or Unexpired Lease.

**8.2     Assumption of Executory Contracts and Unexpired Leases.**

(a)  **Assumption.**  Except as otherwise provided herein, upon the occurrence of the Effective Date, each Executory Contract and Unexpired Lease listed on the Schedule of Assumed Executory Contracts and Unexpired Leases shall be assumed, or assumed and assigned, as applicable, and shall vest in and be fully enforceable by the Plan Debtors or its assignee in accordance with its terms, except as modified by the provisions of this Plan or any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law.  With respect to each such Executory Contract and Unexpired Lease listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, the Plan Debtors shall, with the consent of the Plan Sponsors, designate a proposed Cure, and the assumption of such Executory Contracts and Unexpired Leases may be conditioned upon the disposition of all issues with respect to such Cure.

The Confirmation Order will constitute an order of the Bankruptcy Court approving such assumptions under Bankruptcy Code sections 365 and 1123 as of the Effective Date.  To the extent any provision in any Executory Contract or Unexpired Lease assumed under this Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Plan Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision shall be deemed modified such that the transactions contemplated by this Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  Each Executory Contract and Unexpired Lease assumed under this Article of this Plan will revest in and be fully enforceable by the Plan Debtors in accordance with its terms, except as modified by the provisions of this Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

(b)  **Modifications, Amendments, Supplements, Restatements, or Other Agreements.**  Unless otherwise provided in this Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any

46

of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated hereunder.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Plan Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**(c)  Proofs of Claim Based on Executory Contracts or Unexpired Leases that Have Been Assumed.**  To the extent that any and all Proofs of Claims include any claims based on Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, under the order approving such assumption, including the Confirmation Order and unless the Plan Debtors and the non-Debtor counter party agree otherwise, the portion of such Proofs of Claim addressing cure obligations for Executory Contracts or Unexpired Leases shall be deemed disallowed and expunged from the claims register as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court.

**(d)  Cure Procedures and Payments Related to Assumption of Executory Contracts and Unexpired Leases.**  With respect to each of the Executory Contracts or Unexpired Leases assumed hereunder, the Plan Debtors, with the consent of the Plan Sponsors, shall designate a proposed Cure, and the assumption of such Executory Contract or Unexpired Lease shall be conditioned upon the disposition of all issues with respect to Cure. Except as otherwise set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases in the Plan Supplement, the Cure amount with respect to each of the Executory Contracts or Unexpired Leases assumed hereunder is designated by the Plan Debtors as $0, subject to the determination of a different Cure amount under the procedures set forth herein and in the Cure Notices.  Except with respect to Executory Contracts and Unexpired Leases for which the Cure is $0, the Cure shall be satisfied by the Plan Debtors or their assignee, if any, by payment of the Cure in Cash on the later of (i) 30 days following the occurrence of the Effective Date or as soon as reasonably practicable thereafter; or (ii) for any Cure amounts subject to dispute, 30 days after the underlying Cure dispute is resolved, or on such other terms as may be ordered by the Bankruptcy Court or agreed upon by the parties to the applicable Executory Contract or Unexpired Lease without any further notice to or action, order, or approval of the Bankruptcy Court.  All payments on account of the Cure shall be paid by Newco or the Emerging Debtors in connection with the Assumed Contracts.

Any provisions or terms of the Executory Contracts or Unexpired Leases to be assumed under this Plan that are, or may be, alleged to be in default, shall be satisfied solely by Cure, or by an agreed-upon waiver of Cure.  If there is a dispute regarding such Cure, the ability of the Plan Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of Bankruptcy Code section 365, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Plan Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.  The Debtors or the Plan Debtors, as applicable, reserve the right either to reject or nullify the assumption of any Executory Contract or Unexpired Lease

47

after a Final Order determining the Cure or any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease is made.

Assumption of any Executory Contract or Unexpired Lease under this Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

(e)  **Cure Notices.**  No later than 3 days after the Plan Debtors file the Schedule of Assumed Executory Contracts and Unexpired Leases (or any amendments thereof), the Debtors shall serve upon counterparties to such Executory Contracts and Unexpired Leases (but shall not file) a Cure Notice that will (i) notify the counterparty of the proposed assumption, (ii) list the applicable Cure, if any, set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, (iii) describe the procedures for filing objections to the proposed assumption or assumption and assignment of the applicable Executory Contract or Unexpired Lease, (iv) describe the procedures for filing objections to the proposed Cure of the applicable Executory Contract or Unexpired Lease, and (v) explain the process by which related disputes will be resolved by the Bankruptcy Court.  If no objection is timely received, (x) the non-Debtor party to the Executory Contract or Unexpired Lease to be assumed shall be deemed to have consented to the assumption of the applicable Executory Contract or Unexpired Lease and shall be forever barred from asserting any objection with regard to such assumption, and (y) the proposed Cure shall be controlling, notwithstanding anything to the contrary in any applicable Executory Contract or Unexpired Lease or other document as of the date of the filing of this Plan, and the non-Debtor party to an applicable Executory Contract or Unexpired Lease shall be deemed to have consented to the Cure amount and shall be forever barred from asserting, collecting, or seeking to collect any additional amounts relating thereto against the Debtors or the Plan Debtors, or the property of any of them.

(f)  **Cure Objections.**  The Cure Notice shall set forth, among other things, the time period in which parties must file an objection to any Cure Notice.  If a proper and timely objection to the Cure Notice or proposed Cure was filed by the Cure Objection Deadline, the Cure shall be equal to (i) the amount agreed to between the Debtors or Plan Debtors, as applicable, and the applicable counterparty, or, (ii) to the extent the Debtors or Plan Debtors and counterparty do not reach an agreement regarding any Cure or any other matter related to assumption, the Bankruptcy Court shall determine the Allowed amount of such Cure and any related issues.  Objections, if any, to the proposed assumption and/or Cure must be in writing, filed with the Bankruptcy Court and served in hard-copy form on the parties identified in the Cure Notice so that they are actually received by the Cure Objection Deadline.

(g)  **Hearing with Respect to Objections.**  If an objection to the proposed assumption and/or to the Cure is timely filed and received in accordance with the procedures set forth in Section 8.2(f), and the parties do not reach a consensual resolution of such objection, a hearing with respect to such objection shall be held at such time scheduled by the Bankruptcy Court or the Debtors or Plan Debtors.  Objections to the proposed Cure or assumption of an Executory Contract or Unexpired Lease will not be treated as objections to Confirmation of this Plan.

48

(h)   **Reservation of Rights.**   Notwithstanding anything to the contrary herein, prior to the Effective Date, the Debtors, with the consent of the Plan Sponsors as to contracts being assumed by the Emerging Debtors, may amend their decision with respect to the assumption of any Executory Contract or Unexpired Lease and provide a new notice amending the information provided in the applicable notice.   In the case of an Executory Contract or Unexpired Lease designated for assumption that is the subject of a Cure Objection which has not been resolved prior to the Effective Date, the Debtors or the Plan Debtors, as applicable, may designate such Executory Contract or Unexpired Lease for rejection at any time prior to the payment of the Cure.

**8.3**   **General Reservation of Rights.**   Neither the exclusion nor inclusion of any contract or lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in this Plan, shall constitute an admission by the Debtors or the Plan Sponsors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Plan Debtors, or any of their Affiliates, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE IX

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

**9.1**   **Determination of Claims and Interests.**   After the Effective Date, the Plan Administrator shall have and retain any and all rights, claims, causes of action, and defenses the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date, including the Causes of Action retained under Section 7.15, except with respect to any Causes of Action expressly released under this Plan.

Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed by the Plan Administrator, in its sole discretion (including by written agreement with the affected Claim Holder or Interest Holder) or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Interest.   All settled Claims approved prior to the Effective Date under a Final Order of the Bankruptcy Court, under Bankruptcy Rule 9019 or otherwise shall be binding on all parties.   For the avoidance of doubt, any Claim determined and liquidated pursuant to (a) an order of the Bankruptcy Court, (b) applicable non-bankruptcy law (which determination has not been stayed, reversed, or amended and as to which determination or any revision, modification, or amendment thereof as to which the time to appeal or seek review or rehearing has expired and no appeal or petition for review or rehearing was filed or, if filed, remains pending), or (c) an agreement with the Debtors or the Plan Administrator as set forth herein shall be deemed an Allowed Claim in such liquidated amount and satisfied in accordance with this Plan.

Nothing contained in this Section 9.1 shall constitute or be deemed a waiver of any claim, right, or Cause of Action that the Debtors or the Plan Administrator may have against any Entity

in connection with or arising out of any Claim, including any rights under section 157(b) of title 28 of the United States Code.

        **9.2**    **Claims Administration Responsibility.**  Except as otherwise specifically provided for in this Plan, after the Effective Date, the Plan Administrator shall retain responsibility for and have authority to (a) administer, dispute, object to, compromise, or otherwise resolve all Claims against, and Interests in, the Plan Debtors, including (i) filing, withdrawing, or litigating to judgment objections to Claims or Interests, (ii) settling or compromising any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, and (iii) administering and adjusting the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court, and (b) making distributions with respect to all Claims.  After the Effective Date, the Plan Administrator shall be entitled to settle any Claim by written agreement with the claimholder, without any further notice to or action, order, or approval by the Bankruptcy Court, and the Distribution Agent shall be entitled to rely on the Plan Administrator's representation and adjust the claims register accordingly.

        **9.3**    **Objections to Claims.**  Unless otherwise extended by the Bankruptcy Court, any objections to Claims (other than Administrative Claims) shall be served and filed on or before the Claims Objection Deadline (or such later date as may be established by the Bankruptcy Court upon request of the Plan Administrator without further notice to parties-in-interest).  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtors or the Plan Administrator effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for a Holder of a Claim or Interest is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto (or at the last known addresses of such Holders of Claims if no Proof of Claim is filed or if the Debtors have been notified in writing of a change of address), or (c) by first class mail, postage prepaid, on any counsel that has appeared on behalf of the Holder of the Claim in the Chapter 11 Cases and has not withdrawn such appearance.

        With regard to Maritime Lien Claims, at the option of the Holder of such Claim, or the Constellation Lenders, or any other party in interest, to the extent permitted by applicable law, the jurisdiction of the Bankruptcy Court may be invoked to adjudicate the Maritime Lien Claims.

        **9.4**    **Expungement or Adjustment of Claims Without Objection.**  Any Claim that has been fully or partially paid, satisfied, or superseded may be expunged or adjusted on the claims register by the Plan Administrator, or the Claims, Noticing, and Solicitation Agent acting at the direction of the Plan Administrator.  Any claim that has been amended (by agreement between the Plan Administrator and the affected Creditor, or otherwise) may be adjusted on the claims register by the Plan Administrator, or the Claims, Noticing, and Solicitation Agent acting at the direction of the Plan Administrator.  The Plan Administrator is authorized to take the foregoing actions without requiring that a claims objection be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

9.5    **Disallowance of Claims.**  EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE DEADLINE FOR FILING SUCH PROOFS OF CLAIM SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO, OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

Nothing herein shall in any way alter, impair, or abridge the legal effect of the Bar Date Order, or the rights of the Debtors, the Plan Debtors, or the Creditors' Committee before the Effective Date, or other parties in interest to object to Claims on the grounds that they are time barred or otherwise subject to disallowance or modification.  Nothing in this Plan shall preclude amendments to timely filed Proofs of Claim to the extent permitted by applicable law; provided, however, that any such amendments that are filed after the Effective Date shall require permission from the Bankruptcy Court, unless such requirement is expressly waived by the Plan Administrator.

9.6    **Estimation of Claims.**  Before or after the Effective Date, the Debtors or the Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate a Claim under Bankruptcy Code section 502(c) for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Disputed Claim, including during the litigation of any objection to any Disputed Claim or during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under this Plan (including for purposes of distributions), without prejudice to the Holder of such Claim's right to request that estimation should be for the purpose of determining the Allowed amount of such Claim, and the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in this Plan are cumulative and not necessarily exclusive of one another.  All estimation procedures set forth in this Plan shall be applied in accordance with Bankruptcy Code section 502(c). Disputed Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by this Plan or the Bankruptcy Court.

9.7    **No Interest on Disputed Claims.**  Unless otherwise specifically provided for in this Plan or as otherwise required by Bankruptcy Code section 506(b), postpetition interest shall not accrue or be paid on Claims or Interests, and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any Claim or Interest.  Additionally, and without limiting the foregoing, unless otherwise specifically provided for in this Plan or as otherwise required by Bankruptcy Code section 506(b), interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made, when and if such Disputed Claim becomes an Allowed Claim.

9.8    **Amendments to Claims.**  On or after the Effective Date, except as otherwise provided herein, a Claim may not be amended without the authorization of the

Bankruptcy Court or the Plan Debtors, and, to the extent such authorization is not received, any such new or amended Claim shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.  On or after the Effective Date, except as otherwise provided herein, a Claim may not be filed or amended without the authorization of the Bankruptcy Court or the Plan Debtors, and, to the extent such authorization is not received, any such new or amended Claim filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE X

## PROVISIONS GOVERNING DISTRIBUTIONS

**10.1    Time of Distributions.**    Except as otherwise provided for herein or ordered by the Bankruptcy Court, all distributions under this Plan on account of Claims that are Allowed Claims as of the Effective Date shall be made on or as soon as reasonably practicable after the Initial Distribution Date or, to the extent applicable, and distributions on account of Claims that become Allowed Claims after the Effective Date shall be made on the next Periodic Distribution Date in accordance with this Plan.

**10.2    Currency.**  Except as otherwise provided in this Plan or Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate as of the Effective Date at 4:00 p.m. prevailing Central Time, mid-range spot rate of exchange for the applicable currency as published in the next The Wall Street Journal, National Edition following the Effective Date.

**10.3    Distribution Agent.**    Except as otherwise provided herein, all distributions under this Plan shall be made by the Distribution Agent, or by such other Entity designated by the Plan Administrator as the Distribution Agent on the Effective Date.  The Distribution Agent shall not be required to give any bond or surety or other security for the performance of the Plan Administrator's duties as Distribution Agent unless otherwise ordered by the Bankruptcy Court.  The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, under this Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.  If the Distribution Agent is an entity other than the Plan Administrator, such entity shall be paid its reasonable fees and expenses, including the reasonable fees and expenses of its attorneys or other professionals.

**10.4    Distributions on Account of Claims Allowed After the Effective Date.**

**(a) No Distributions Pending Allowance.**    No payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined

by a Final Order of the Bankruptcy Court, and the Disputed Claim has become an Allowed Claim.

        **(b) Distribution Claim Reserve.** The Debtors, Plan Administrator, or Disbursing Agent (as the case may be) shall withhold a Disputed Claim reserve from the property to be distributed to particular classes under the Plan based upon the Face Amount of Disputed Claims as directed by the Plan Administrator. The Debtors, Plan Administrator, or Disbursing Agent (as the case may be) shall withhold such amounts or property as may be necessary from property to be distributed to such Classes of Claims under the Plan on a Pro Rata basis based upon the Face Amount of such Claims. Debtors, Plan Administrator, or Disbursing Agent (as the case may be) may request estimation for any Disputed Claim that is contingent or unliquidated, and the Disbursing Agent will withhold the applicable Disputed Claim Reserve based upon the estimated amount of each such Claim as estimated by the Bankruptcy Court. If Debtors, Plan Administrator, or Disbursing Agent (as the case may be) elects not to request such an estimation from the Bankruptcy Court with respect to a Disputed Claim that is contingent or unliquidated, the Disbursing Agent shall withhold the applicable Disputed Claim Reserve based upon the good faith estimate of the Debtors or their designated Disbursing Agent of such Claim. The Debtors, Plan Administrator, or Disbursing Agent (as the case may be) shall also place in the applicable Distribution Reserve any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property withheld as the applicable Distribution Reserve, to the extent that such property continues to be withheld as the applicable Distribution Reserve at the time such distributions are made or such obligations arise. Nothing in this Plan or the Disclosure Statement shall be deemed to entitle the Holder of a Disputed Claim to postpetition interest on such Claim.

        **(c) Distributions after Allowance.** Payments and distributions from the Distribution Reserve to each respective Holder of a Claim on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made on the first Periodic Distribution Date following the date when a Disputed Claim becomes an Allowed Claim. Such distributions shall be based upon the cumulative distributions that would have been made to the holder of such Claim under the Plan if the Disputed Claim had been Allowed on the Effective Date and shall not be limited by the Disputed Claim Amounts previously reserved with respect to such Disputed Claim to the extent that additional amounts are available therefor, but only to the extent that such additional amounts have not yet been distributed to holders of Allowed Claims; provided, however, that no interest shall be paid on account to such Allowed Claims unless required under applicable bankruptcy law. Upon such distribution, the Distribution Reserve shall be reduced by an amount equal to the amount reserved with respect to such Disputed Claim.

53

### 10.5    Delivery Of Distributions.

(a)    **Record Date for Distributions.**  On the Distribution Record Date, the claims register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record Holders listed on the claims register as of the close of business on the Distribution Record Date.

(b)    **Cash Distributions.**  Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Plan Administrator, except that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(c)    **Address for Distributions.**  Distributions to Holders of Allowed Claims shall be made by the Distribution Agent (i) at the addresses set forth on the Proofs of Claim filed by such Holders of Claims (or at the last known addresses of such Holders of Claims if no Proof of Claim is filed or if the Debtors or the Distribution Agent have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent after the date of any related Proof of Claim, or (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address.  The Debtors, the Plan Debtors, and the Distribution Agent shall not incur any liability whatsoever on account of any distributions under this Plan.

(d)    **Undeliverable Distributions.**  If any distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of such Claim shall be made unless and until the Distribution Agent is notified of the then-current address of such Holder of the Claim, at which time all missed distributions shall be made to such Holder of the Claim without interest, dividends, or accruals of any kind on the next Periodic Distribution Date.  Amounts in respect of undeliverable distributions shall be returned to the Plan Administrator until such distributions are claimed.

(e)    **Reversion.**  Any distribution under this Plan that is an Unclaimed Distribution for a period of six months after such distribution shall be deemed unclaimed property under Bankruptcy Code section 347(b) and such Unclaimed Distribution shall constitute a Remaining Asset free of any restrictions thereon.  Thereafter, the Claim of any Holder or successor to such Holder with respect to such property shall be cancelled, discharged, and forever barred, notwithstanding federal or state escheat, abandoned, or unclaimed property laws to the contrary.  The provisions of this Plan regarding undeliverable distributions and Unclaimed Distributions shall apply with equal force to distributions that are issued by the Plan Administrator or the Distribution Agent made under any note, indenture, or certificate (but only with respect to the initial distribution to Holders that are entitled to be recognized under the relevant note, indenture, or certificate and not with respect to Entities to whom those recognized Holders distribute), notwithstanding any provision in such note, indenture, or certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned, or unclaimed property law.

**(f)   De Minimis Distributions.**  Notwithstanding any other provision of this Plan to the contrary, the Plan Administrator and the Distribution Agent shall not be required to make a distribution on account of an Allowed Claim if (i) the aggregate amount of all distributions authorized to be made on the Periodic Distribution Date in question is or has a value less than $100,000; provided that the Plan Administrator shall make, or cause to be made, a distribution on a Periodic Distribution Date of less than $100,000 if the Plan Administrator expect that such Periodic Distribution Date shall be the final Periodic Distribution Date; or (ii) the amount to be distributed to the specific Holder of the Allowed Claim on the particular Periodic Distribution Date does not both (x) constitute a final distribution to such Holder and (y) have a value of at least $25.00.

**(g)   Fractional Distributions.**  Notwithstanding any other provision of this Plan to the contrary, the Plan Administrator and the Distribution Agent shall not be required to make distributions or payments of fractions of dollars.  Whenever any payment of Cash of a fraction of a dollar under this Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

**10.6   Compliance Matters.**  In connection with this Plan, to the extent applicable, the Plan Administrator and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions under this Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Plan Administrator and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Plan Administrator reserves the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

**10.7   Claims Paid or Payable by Third Parties.**  The Claims, Noticing, and Solicitation Agent shall reduce in full a Claim to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or the Plan Administrator without any further notice to or action, order, or approval of the Bankruptcy Court.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtors or the Plan Administrator on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution under this Plan to the Plan Administrator, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan.

**10.8   Setoffs and Recoupment.**  Except as otherwise expressly provided for in this Plan, the Plan Administrator under the Bankruptcy Code (including Bankruptcy Code section 553), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against or recoup from any Allowed Claim and the distributions to be made under

55

this Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature that the Debtors may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether under this Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim under this Plan shall constitute a waiver or release by the Plan Administrator of any such Claims, rights, and Causes of Action that the Plan Administrator may possess against such Holder.

**10.9    Allocation of Plan Distributions Between Principal and Interest.**  To the extent that any Allowed Claim entitled to a distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

## ARTICLE XI

## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

**11.1    Vesting of Assets.**  Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estates (including Causes of Action, but excluding the Remaining Administered Assets and property that has been abandoned under an order of the Bankruptcy Court) shall vest in the Plan Debtors free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests.  As of and following the Effective Date, the Plan Debtors may operate their business and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Causes of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

**11.2    Discharge of Certain of the Plan Debtors.  Pursuant to Bankruptcy Code section 1141(d), except as otherwise specifically provided in this Plan or the Confirmation Order, and effective as of the Effective Date: (a) the distributions and rights that are provided in this Plan, if any, and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Causes of Action (whether known or unknown, including any interest accrued on such Claims from and after the Petition Date) against, liabilities of, Liens on, obligations of, rights against, and Interests in the Plan Debtors (other than Marine Base Opco Debtor) or any of their assets or properties, regardless of whether any property shall have been distributed or retained under this Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not (i) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed under Bankruptcy Code section 501, (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under Bankruptcy Code section 502, or (iii) the Holder of such a Claim, right, or Interest accepted this Plan; (b) this Plan shall bind all Holders of Claims and Interests notwithstanding whether any such Holders failed to vote to accept or reject this Plan or voted to reject this Plan; (c) all Claims and**

Interests shall be satisfied, discharged, and released in full, and the Plan Debtors' (other than Marine Base Opco Debtor's) liability with respect thereto shall be extinguished completely, including any liability of the kind specified under Bankruptcy Code section 502(g); and (d) all Entities shall be precluded from asserting against the Plan Debtors (other than Marine Base Opco Debtor), the Estates, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in the Plan Debtors (other than Marine Base Opco Debtor), subject to the occurrence of the Effective Date.

       **11.3**    **The Emerging Debtors**. Without limiting the generality of <u>Section 11.1</u> and <u>Section 11.2</u>, on the Effective Date and as otherwise set forth in the Plan, the Purchased Assets shall vest in Newco, its designee, or the Emerging Debtors (as the case may be) free and clear of all Claims and Interests arising on or before the Effective Date and the Emerging Debtors shall have no responsibility of any kind or nature whatsoever for any liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors that arose on the before the Effective Date. Further, except for the payment of the Purchase Price, neither Newco nor any Emerging Debtor shall have any responsibility whatsoever for the administration of the Plan on and after the Effective Date and all cost related to such administration shall be paid from the Additional Cash and any other Remaining Administered Assets.

       **11.4**    **Compromises and Settlements**  This Plan is intended to incorporate the agreements reached in the Plan Support Agreement.  Under Bankruptcy Rule 9019(a), the Debtors may compromise and settle various (a) Claims or Interests and (b) Causes of Action that the Debtors have against other Entities up to the Effective Date. After the Effective Date, any such right shall pass to the Plan Debtors as contemplated in <u>Section 11.1</u> of this Plan, without the need for further approval of the Bankruptcy Court.  Under Bankruptcy Code section 363 and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan or any distribution to be made on account of an Allowed Claim, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that any such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and is fair, equitable, and reasonable

       **11.5**    <u>**Release by Plan Debtors**</u>.  **Pursuant to Bankruptcy Code section 1123(b), as of the Effective Date, the Plan Debtors and their Estates, and each of their respective current and former Affiliates shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted or capable of being asserted on behalf of the Plan Debtors and their Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually**

or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Plan Debtors, the operation of the Plan Debtors prior to, on, or after the Petition Date, the Plan Debtors' restructuring, the Chapter 11 Cases, the DIP Facility, the purchase, sale, or rescission of the purchase or sale of any security of the Plan Debtors, provided under any applicable law, rule, or regulation, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the DIP Credit Agreement, this Plan, the Disclosure Statement, the Plan Support Agreement, the Plan Supplement, any other Plan Transaction Document, or related agreements, instruments, exhibits, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of this Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence as determined by a Final Order.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under this Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan.

For the avoidance of doubt, nothing in this <u>Section 11.5</u> shall in any way affect the operation of <u>Section 11.2</u> of this Plan, under Bankruptcy Code section 1141(d).

      **11.6**    <u>Release by Holders of Claims and Interests</u>.  As of the Effective Date, the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged the Plan Debtors, their Estates, non-Debtor Affiliates, and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted or capable of being asserted, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the operation of the Debtors prior to, on, or after the Petition Date, the Debtors' restructuring, the Chapter 11 Cases, the DIP Facility, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Plan Debtors provided under any applicable law, rule, or regulation, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the DIP Credit Agreement, this Plan, the Disclosure Statement, the Plan Support Agreement, the Plan Supplement, any other Plan Transaction Document, or related agreements, instruments, exhibits, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of this Plan, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence as determined by a Final Order.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under this Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan.

For the avoidance of doubt, except as expressly provided herein, nothing in this **Section 11.6** shall in any way affect the operation of **Section 11.2** of the Plan, under Bankruptcy Code section 1141(d).  Furthermore, the Constellation Lenders, DNB, and DBS shall not grant, or be deemed to have granted, any release, waiver or discharge of Claims against the Constellation Debtor under this **Section 11.6** unless and until the Effective Date as to the Plan for the Constellation Debtor has occurred.

**11.7    Exculpation and Limitation of Liability.  The Exculpated Parties shall neither have, nor incur any liability to any Entity for any Exculpated Claim; _provided, however_, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; _provided, further_, that no Exculpated Party shall be exculpated under this Section 11.7 for any Exculpated Claim against the Constellation Debtor related to the Plan for the Constellation Debtor or any sale of the Constellation Vessel unless and until the Effective Date as to the Plan for the Constellation Debtor has occurred.**

**The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and, therefore, are not and shall not be liable at any time for the violations of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made under this Plan.**

**11.8    Indemnification Obligations.**  From and after the Effective Date, any obligations or rights of any Plan Debtor to indemnify, defend, or advance expenses to its present and former directors, officers, employees, agents, representatives, or other Indemnitees under any Debtor's certificate of incorporation, certificate of formation, bylaws, operating agreement, other corporate governance documents, employee indemnification policy, or under state law, or any agreement with respect to any claim, demand, suit, cause of action, or proceeding related to such person's service with, for, or on behalf of any of the Debtors prior to the Effective Date shall be nullified and rejected as of the Effective Date, and the Plan Debtors' shall not be required to indemnify, defend, or advance expenses to any such party or Indemnitee for any such obligations (including Indemnification Obligations) based on claims, transactions, events, or occurrences occurring prior to the Effective Date.  The treatment of Indemnification Obligations in this Section 11.8 and under this Plan shall be in complete satisfaction, discharge, and release of any such indemnity claims or Indemnification Obligations, subject to the effectiveness of Sections 11.5, 11.6, and 11.7, as such Sections appear without any amendment or modification in the original filing of this Plan.

**11.9    Injunction.  The satisfaction, release, and discharge under this Article XI shall act as an injunction, from and after the Effective Date, against any Entity (a) commencing or continuing in any manner or in any place, any action, employment of process, or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Lien or encumbrance, in each case with respect to any Claim, Interest, or Cause of Action satisfied, released or to be released, exculpated or to be exculpated, or discharged under this Plan or pursuant to the Confirmation Order and to the fullest extent authorized or**

provided by the Bankruptcy Code, including to the extent provided for or authorized by sections 524 and 1141 thereof; provided, however, that nothing contained herein shall preclude such Entities from exercising their rights pursuant to and consistent with the terms of this Plan or the Confirmation Order.

11.10   **Subordination Rights.**

(a)   All Claims and all rights and claims between or among Holders of Claims relating in any manner whatsoever to distributions on account of Claims or Interests, based upon any claimed subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under this Plan to Holders of Claims having such subordination rights, and such subordination rights shall be deemed waived, released, discharged, and terminated as of the Effective Date.  Except as otherwise specifically provided for in this Plan, distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any Holder of a Claim by reason of any subordination rights or otherwise, so that each Holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in this Plan.

(b)   Except as otherwise provided in this Plan, including Section 11.4 and Section 11.6, the right of the Debtors or the Plan Debtors to seek subordination of any Claim or Interest under Bankruptcy Code section 510 is fully reserved, and the treatment afforded any Claim or Interest that becomes a subordinated Claim or Interest at any time shall be modified to reflect such subordination.  Unless this Plan or the Confirmation Order otherwise provide, no distributions shall be made on account of a Claim subordinated under this Section 11.10(b) unless ordered by the Bankruptcy Court.

11.11   **Protection Against Discriminatory Treatment.**   Consistent with Bankruptcy Code section 525 and paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against the Plan Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Plan Debtors, or another entity with whom the Plan Debtors have been associated, solely because the Debtors have been debtors under chapter 11, have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

11.12   **Release of Liens.**   Except as otherwise provided in this Plan, or in any contract, instrument, release, or other agreement or document created under this Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates (including any purported statutory Liens asserted by parties whose Claims are disallowed, expunged, withdrawn, or classified or reclassified as General Unsecured Claims) shall be fully released, expunged, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Plan Debtors and their successors and assigns without further action; provided, however, that the Debtors are authorized to take such action as may be necessary to effectuate the foregoing, including filing Lien releases or withdrawals on behalf of the holders of such Liens through a power of attorney or otherwise.  Notwithstanding the above, nothing in this Plan

60

or the Confirmation Order shall release any deed restriction, easements, or institutional control that runs with the land under environmental law.

## ARTICLE XII

## CONDITIONS PRECEDENT

**12.1    Conditions to the Effective Date of this Plan.**    The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 12.2 of this Plan:

**(a)**  this Plan and the Plan Transaction Documents shall be in form and substance consistent in all material respects with the Plan Support Agreement and, to the extent a Plan Transaction Document materially affects unsecured creditors, such Plan Transaction Document shall be reasonably acceptable to the Creditors' Committee, to the extent a Plan Transaction Document materially affects the Constellation Debtor, such Plan Transaction Document shall be reasonably acceptable to the Creditors' Committee or Required Constellation Lenders;

**(b)**  each condition precedent in each Plan Transaction Document shall have been satisfied or waived by the Plan Sponsors;

**(c)**  all Professional Fee Claims constituting a success fee resulting from Confirmation of a Plan for the Constellation Debtor or the sale of the Constellation Vessel shall not exceed amounts paid by the Constellation Lenders;

**(d)**  the Bankruptcy Court shall have entered the Disclosure Statement Order in form and substance acceptable to the Plan Sponsors and the Creditors' Committee, and such order shall be a Final Order;

**(e)**  the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Debtors the Plan Support Parties (including the Plan Sponsors), the Creditors' Committee, and such order shall be a Final Order unless the Plan Sponsors, in their sole discretion, waive the requirement that the Confirmation Order be a Final Order;

**(f)**  the New Corporate Governance Documents shall have been adopted and (where required by applicable law) filed with the applicable authorities of the relevant jurisdictions of organization and shall have become effective in accordance with such jurisdiction's corporation, limited liability company, or alternative comparable laws, as applicable;

**(g)**  all authorizations, consents, certifications, approvals, rulings, no action letters, opinions, or other documents or actions required by any law, regulation, or order to be received or to occur in order to implement this Plan on the Effective Date shall have been obtained or shall have occurred unless failure to do so will not have a material adverse effect on the Plan Debtors;

61

(**h**)  all other documents and agreements necessary to implement this Plan on the Effective Date shall have been executed and delivered and all other actions required to be taken in connection with the Effective Date shall have occurred;

(**i**)  July 27, 2017 shall not have occurred;

(**j**)  the total amount of Allowed Administrative Expense Claims and Allowed Other Priority Claims against the Emerging Debtors to be assumed by Newco shall be satisfactory to Subsea 7 in its sole and absolute discretion;

(**k**)  there shall be sufficient Cash (other than Net GUC Cash) to satisfy all Allowed Professional Claims;

(**l**)  all third party consents to the acquisition of the Emerging Debtors and the assumption of the Assumed Contracts are obtained in a manner satisfactory to Subsea 7 in its sole and absolute discretion and have not been rescinded, and Subsea 7 does not in good faith determine that any party to an Assumed Contract: (i) intends to terminate such contract, whether for breach, for convenience, or otherwise in accordance with its terms; or (ii) in the case of an Assumed Contract that is a frame agreement with a client, intends to decline to permit Newco or Subsea 7 to bid for or to be awarded work thereunder;

(**m**)  unless otherwise agreed to in writing by the Plan Sponsors, since the Petition Date, there has been no development, event or condition, including any political, environmental, commercial, financial, war or terrorism related event, which has had or could reasonably be expected to have a material adverse effect on the Emerging Debtors' near- and/or medium term trading prospects or market conditions or operating environment on which the Emerging Debtors depend or will depend for their business to be sustainable in the near- and/or medium term following emergence; and

(**n**)  all statutory fees and obligations then due and payable to the Office of the United States Trustee shall have been paid and satisfied in full.

**12.2    Waiver of Conditions Precedent.**  Except as set forth in <u>Section 12.1</u>, the conditions set forth in <u>Section 12.1</u> of this Plan may be waived, in whole or in part, by the Plan Sponsors, the Debtors, and, to the extent that such waiver materially affects the Constellation Debtor, the Required Constellation Lenders, without any notice to any other parties in interest or the Bankruptcy Court and without a hearing; <u>provided</u>, <u>however</u>, that the condition set forth in Section 12.1(a), (d), (e), and (k) and any conditions which impact the amount of Net GUC Cash may only be waived with the consent of the Creditors' Committee.

**12.3    Notice of Effective Date.**  The Debtors or the Emerging Debtors as applicable shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date within a reasonable period of time after the conditions in <u>Section 12.1</u> of this Plan have been satisfied or waived under <u>Section 12.2</u> of this Plan.

**12.4    Effect of Non-Occurrence of Conditions to Consummation.**  If prior to consummation of this Plan, the Confirmation Order is vacated under a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, this Plan will

62

be null and void in all respects, and nothing contained in this Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtors or any other Entity, or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XIII

## RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and this Plan, including jurisdiction to:

(a)   resolve any matters related to Executory Contracts and Unexpired Leases, including: (i) the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the Plan Debtors' amendment, modification, or supplement after the Effective Date, under Article VIII of this Plan, of the lists of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(b)   adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained under the Chapter 11 Cases, this Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests, and all controversies and issues arising from or relating to any of the foregoing;

(c)   ensure that distributions to Holders of Allowed Claims are accomplished as provided herein and adjudicate any and all disputes arising from or relating to distributions under this Plan;

(d)   allow in whole or in part, disallow in whole or in part, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including hearing and determining any and all objections to the allowance or estimation of Claims or Interests filed and adjudicating any disputes between Creditors regarding priority or rights to payment or turnover of consideration distributed under the Plan, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and the resolution of request for payment of any Administrative Claim;

(e)   hear and determine or resolve any and all matters related to Causes of Action;

(f)   enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

**(g)**  issue and implement orders in aid of execution, implementation, or consummation of this Plan;

**(h)**  consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

**(i)**  hear and determine all applications for allowance of compensation and reimbursement of Professional Claims under this Plan or under Bankruptcy Code sections 328, 330, 331, 503(b), 1103, and 1129(a)(4);

**(j)**  determine requests for the payment of Claims entitled to priority under Bankruptcy Code section 507(a)(1), including compensation and reimbursement of expenses of parties entitled thereto;

**(k)**  adjudicate, decide, or resolve any and all matters related to Bankruptcy Code section 1141;

**(l)**  hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan and disputes arising in connection with any Entity's obligations incurred in connection with this Plan;

**(m)** hear and determine all suits or adversary proceedings to recover assets of the Debtors and property of their Estates, wherever located;

**(n)**  hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

**(o)**  resolve any matters relating to the pre- and post-confirmation sales of the Debtors' assets;

**(p)**  grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases under Bankruptcy Code section 365(d)(4);

**(q)**  hear any other matter not inconsistent with the Bankruptcy Code;

**(r)**  hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

**(s)**  enter a final decree closing any and all of the Chapter 11 Cases;

**(t)**  enforce all orders previously entered by the Bankruptcy Court; and

**(u)**  hear and determine all matters relating to any Subordinated Claim.

From the Confirmation Date through the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters that were subject to its jurisdiction prior to the Confirmation Date. Nothing contained herein shall be construed to increase, decrease, or otherwise modify the independence, sovereignty, or jurisdiction of the Bankruptcy Court.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

**14.1    Binding Effect.** Upon the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtors, the Plan Debtors, all current and former Holders of Claims, all current and former Holders of Interests, and all other parties-in-interest and their respective heirs, successors, and assigns.

**14.2    Payment of Statutory Fees.** All fees payable under section 1930 of title 28 of the United States Code, as of the entry of the Confirmation Order as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date. The Plan Administrator shall continue to pay fees under section 1930 of title 28 of the United States Code from the Wind-Down Account until the Chapter 11 Cases are closed by entry of final decrees. Furthermore, following entry of the Confirmation Order, the Plan Administrator shall continue to file quarterly reports in compliance with Bankruptcy Rule 2015(a)(5), which such reports shall not purport to be prepared in accordance with GAAP and may not be construed as reports filed under the Exchange Act.

**14.3    Adequate Protection Obligations**. Without any further notice to, or action, order, or approval of, the Bankruptcy Court, the Debtors shall pay in full on the Effective Date of the Emerging Debtors' Plans: (i) the payment of professional fees and expenses of DNB, and (ii) postpetition interest due and payable under the Constellation Credit Agreement and related credit documents. In addition, the Emerging Debtors shall pay the daily charter rate under the Short Term Bareboat Charter, if any, during any period after the Effective Date of any Emerging Debtors' Plans and before the Effective Date of the Constellation Debtor's Plan. All such payments shall be applied on a final basis.

**14.4    Modification and Amendments**. Subject to the terms and conditions of the Plan Support Agreement, the Plan Debtors may, with the consent of the Plan Sponsors, the Creditors' Committee to the extent any such alteration, amendment, or modification affects, involves or is related to Net GUC Cash, and, to the extent that any such alteration, amendment, or modification materially affects the Constellation Debtor, the Required Constellation Lenders, in a manner consistent with the Plan Support Agreement alter, amend, or modify, this Plan under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of this Plan as defined in Bankruptcy Code section 1101(2), the Debtors may, with the consent of the Plan Sponsors and the Creditors' Committee, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan.

**14.5    Confirmation of this Plan.**  The Plan Debtors request Confirmation of this Plan under Bankruptcy Code section 1129(b) with respect to any Impaired Class that does not accept this Plan under Bankruptcy Code section 1126.  Subject to Section 14.4 hereof, the Plan Debtors reserve the right to amend this Plan to any extent that Confirmation under Bankruptcy Code section 1129(b) requires modification.

**14.6    Additional Documents.**  On or before the Effective Date, in each case subject to the terms of the Plan Support Agreement, the Debtors may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtors or the Plan Debtors, as applicable, and Holders of Claims receiving distributions under this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provision and intent of this Plan.

**14.7    Dissolution of Creditors' Committee.**  Effective on the later of (i) the Effective Date and (ii) the date on which the last case of the Non-Reorganizing Debtors is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or (iii) the date on which a plan of reorganization with respect to the last Non-Reorganizing Debtor becomes effective, the Creditors' Committee shall dissolve automatically, whereupon their members, professionals, and agents shall be released from any further duties, responsibilities, and liabilities in the Chapter 11 Cases and under the Bankruptcy Code, provided that obligations arising under confidentiality agreements, joint interest agreements, and protective orders entered during the Chapter 11 Cases shall remain in full force and effect according to their terms.  The Creditors' Committee may make applications for Professional Claims.  The Professionals retained by the Creditors' Committee and the respective members of the Creditors' Committee shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, provided, however, notwithstanding the foregoing, the Professionals retained by the Creditors' Committee shall be entitled to submit invoices for compensation and reimbursement of expenses for time spent with respect to applications for the allowance of compensation and reimbursement of expenses filed after the Effective Date and have such allowed amounts paid consistent with the procedures set forth herein.

### 14.8    Revocation, Withdrawal, or Non-Consummation.

**(a)    Right to Revoke or Withdraw.**  The Plan Debtors reserve the right to revoke or withdraw this Plan in a manner consistent with the Plan Support Agreement at any time prior to the Effective Date and file subsequent chapter 11 plans.

**(b)    Effect of Withdrawal, Revocation, or Non-Consummation.**  If the Plan Debtors revoke or withdraw this Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan, any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims or the allocation of the distributions to be made hereunder), the assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be null and void in all respects.  In such event, nothing contained herein or in the Disclosure Statement, and no acts taken in preparation for

consummation of this Plan, shall be deemed to constitute a waiver or release of any Claims, Interests, or Causes of Action by or against the Debtors or any other Entity, to prejudice in any manner the rights and defenses of the Debtors, the Holder of a Claim or Interest, or any Entity in any further proceedings involving the Debtors, or to constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

14.9   **Notices.**  After the Effective Date, any pleading, notice, or other document required by this Plan to be served on or delivered to the Parties below shall be served as follows:

**If to the Debtors:**
825 Town & Country Lane
Suite 1500
Houston, TX 77024
Attention:  General Counsel

with a copy (which shall not constitute notice) to:

Skadden, Arps, Slate, Meagher & Flom LLP
155 N. Wacker Drive
Suite 2700
Chicago, IL 60606
Attention:  George N. Panagakis
            Justin M. Winerman

-and-

Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, TX 77002
Attention: John F. Higgins
           Aaron J. Power

**If to the Plan Sponsors or the Emerging Debtors:**
Subsea 7 Finance (UK) PLC
40 Brighton Road
Sutton SM2 5BN
United Kingdom
Attn:  Nathalie Louys

with a copy (which shall not constitute notice) to:

Freshfields Bruckhaus Deringer LLP
601 Lexington Avenue
31st Floor
New York, NY 10022
Attn: Scott Talmadge

Mark Liscio

-and-

Chiyoda Corporation
Minato Mirai Grand Central Tower
4-6-2, Minatomirai, Nishi-ku
Yokohama 220-8765
Japan

with a copy (which shall not constitute notice) to:

White & Case LLP
555 South Flower Street
Suite 2700
Los Angeles, CA 90071
Attn: Roberto Kampfner

**If to the Office of the United States Trustee:**

Office of the United States Trustee for the Southern District of Texas
515 Rusk Street, Suite 3516
Houston, Texas 77002
Attention:   Christine March

**If to the Plan Administrator:**

At the address set forth in the Plan Administrator Agreement.

**14.10   Term of Injunctions or Stays.**  Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**14.11   Governing Law.**  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York shall govern the construction and implementation of this Plan, any agreements, documents, and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control).  Corporate governance matters shall be governed by the laws of the state or country of formation of the applicable Plan Debtor.

**14.12   Entire Agreement.**  Except as otherwise indicated, this Plan supersedes all   previous   and   contemporaneous   negotiations,   promises,   covenants,   agreements,

68

understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

**14.13   Severability.**  If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; provided, however, that any such revision, amendment, or modification must be consistent with the Plan Support Agreement, and shall not decrease the GUC Cash amount. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable under its terms, (b) integral to this Plan and may not be deleted or modified without the Debtors' consent, and (c) nonseverable and mutually dependent.

**14.14   No Waiver or Estoppel.**  Upon the Effective Date, each Holder of a Claim or Interest shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount, in a certain priority, be secured, or not be subordinated by virtue of an agreement made with the Debtors and/or their counsel, the Creditors' Committee and/or its counsel, or any other party, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court.

**14.15   Conflicts.**  In the event that the provisions of the Disclosure Statement and the provisions of this Plan conflict, the terms of this Plan shall govern.

Dated: May 24, 2017

Respectfully submitted,

EMAS Chiyoda Subsea Inc.

_____
Name:
Title:

EMAS CHIYODA Subsea Marine Base LLC

_____
Name:
Title:

Lewek Falcon Shipping Pte. Ltd.

_____
Name:
Title:

EMAS Chiyoda Subsea Services Pte. Ltd.

_____
Name:
Title:

EMAS-AMC Pte. Ltd.

_____
Name:
Title:

EMAS Saudi Arabia Ltd.

_____

Name:
Title:


Lewek Constellation Pte. Ltd.

_____

Name:
Title:

PORTER HEDGES LLP

By: _____
      John F. Higgins (No. 09597500)
      Joshua W. Wolfshohl (No. 24038592)
      Aaron J. Power (No. 24058058)
      Brandon J. Tittle (No. 24090436)
      1000 Main Street, 36th Floor
      Houston, Texas 77002
      Telephone: (713) 226-6000
      Fax: (713) 228-1331

      -and-

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
      George N. Panagakis (admitted pro hac vice)
      Justin M. Winerman (admitted pro hac vice)
      Robert Fitzgerald (admitted pro hac vice)
      Roy Leaf (admitted pro hac vice)
      155 N. Wacker Dr.
      Chicago, Illinois 60606-1720
      Telephone: (312) 407-0700
      Fax: (312) 407-0411

Counsel for Debtors and Debtors in Possession

# EXHIBIT A

## Bareboat Charter Terms

**Bareboat Charter Terms**

| | |
|---|---|
| Charter Rate | $11,720 per day or $4.278m per annum (excluding cost for storage of reels) to be adjusted by 3-month floating LIBOR |
| Initial Term | 3 years - Standard industry bare-boat charter terms will apply. |
| Extension Options & Step-Ups | 2 x 1-year extension options, at Charterer's option, with 6-month notice period for the first extension and 12-month notice period for the second extension.<br><br>Charter rates are $60,000 per day during year 4 and $80,000 per day during year 5. |
| Purchase Option | For the first 2 years of the Charter: $370m<br><br>After the first 2 years: Higher of floor price (par/$370m) or 3-broker market value less $20m |
| Insurance borne by | Charterer |
| Dry-dock borne by | Scope of the dry-dock as per class requirements; Shared 50% / 50%; additional costs above budget (being US$10 million) to be borne by Charterer |
| Quiet Enjoyment Letter | Agreed plus buyer accepts the Extension Options highlighted above. Owner may market and sell the vessel during the pendency of the charter, subject to the terms of the charter. |