

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
05/25/2017

|  |  |  |
|---|---|---|
| **In re:** | : | **Chapter 11** |
|  | : |  |
| **EMAS CHIYODA SUBSEA LIMITED**, *et al.*, | : | **Case No. 17-31146 (MI)** |
|  | : |  |
|  | : | **(Jointly Administered)** |
| **Debtors.**[1] | : |  |

**FINAL ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 362**
**AND 364 AND BANKRUPTCY RULES 2002, 4001, 6004, AND 9014 (I)**
**AUTHORIZING**
**THE DEBTORS TO OBTAIN SECURED SUPERPRIORITY**

**POSTPETITION FINANCING AND (II)  GRANTING RELATED RELIEF**

Upon the motion, dated February 28, 2017 (the "Motion") [Docket No. 14], of the above-captioned debtors and debtors-in-possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), for the entry of an order pursuant to Sections 362 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rules 2002-1, 4001-1(b) and 9013-1 of the bankruptcy local rules for the Southern District of Texas, Houston Division (the "Bankruptcy Local Rules"), the Debtors sought, among other things, the following relief:

(i)     the Court's authorization, pursuant to Sections 364(c)(1) and (c)(2) of the Bankruptcy Code, for the Debtors to (A) enter into a secured superpriority debtor-in-possession

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number and jurisdiction of formation are as follows: EMAS CHIYODA Subsea Limited (UK) (3187); EMAS Chiyoda Subsea Inc. (Delaware) (7884); EMAS CHIYODA Subsea Marine Base LLC (Texas) (5974); Lewek Falcon Shipping Pte. Ltd. (Singapore) (041E); EMAS CHIYODA Marine Base Holding Co., LLC (Texas) (7463); EMAS Chiyoda Subsea Services Pte. Ltd. (Singapore) (333Z); EMAS-AMC Pte. Ltd. (Singapore) (0442); EMAS Saudi Arabia Ltd. (Saudi Arabia) (0669); Lewek Constellation Pte. Ltd. (Singapore) (376E); EMAS CHIYODA ROV Pte. Ltd. (Singapore) (049M); EMAS CHIYODA Subsea Services B.V. (Netherlands) (4073); EMAS CHIYODA Subsea Services (UK) Limited (Scotland) (3187); EMAS CHIYODA Subsea Services LLC (Delaware) (1728); EMAS CHIYODA Subsea (Thailand) Co., Ltd. (Thailand) (1011); Gallatin Marine Management, LLC (Delaware) (8989).  The address of the Debtors' U.S. headquarters is 825 Town & Country Ln, Suite 1500, Houston, TX 77024.

credit facility (the "DIP Facility") provided by Subsea 7 Finance (UK) PLC, (the "Tranche A Lender" and Chiyoda Corporation, (the "Tranche B Lender,") (each of the Tranche A Lender and Tranche B Lender are also referred to herein as a "DIP Lender" and are collectively referred to herein as the "DIP Lenders"), in accordance with the Debtor-in-Possession Credit Agreement dated as of March 1, 2017 (as amended from time to time, the "DIP Credit Agreement")[2] and, together with this order (the "Final Order"), the Interim Order (as defined below and, together with the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, each as defined below, the "Orders"), and all other agreements, documents and instruments delivered or executed in connection therewith, as hereafter amended, supplemented or otherwise modified from time to time consistent with the Orders, collectively, the "DIP Loan Documents"), (B) obtain extensions of credit thereunder on a secured and superpriority basis, (1) during the period from the date of the First Interim Order through and including the Termination Date of the Fifth Interim Order, in an aggregate principal amount not to exceed $42,387,000 (the period of the time from the date of the First Interim Order through the Termination Date of the Fifth Interim Order is referred to herein as the "Interim Period"), and (2) upon entry of the Final Order and thereafter until the Termination Date, in an aggregate principal amount not to exceed $90,000,000, in each case at any time outstanding (all financial accommodations and extensions of credit under the DIP Credit Agreement and the DIP Facility, the "DIP Extensions of Credit"), and (C) to enter into, as applicable, guarantees of the DIP Extensions of Credit in accordance with the DIP Loan Documents;

(ii)     the Court's authorization for the Debtors to execute the DIP Credit Agreement and the other DIP Loan Documents to which they are a party and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(iii)    the Court's authorization to use DIP Extensions of Credit only in accordance with

---

[2]     Capitalized terms used but not otherwise as defined herein shall have the meanings given to them in the DIP Credit Agreement.

the terms of the DIP Loan Documents and the Payment Schedule;

(iv)     the Court's authorization to grant to the DIP Lenders in respect of the DIP Obligations (as defined below), (A) a superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code; provided, that the superpriority claim of the Lenders against a Norway Subsidiary shall be limited to the amount of Loan proceeds actually received by such Norway Subsidiary and shall not attach to the Professional Fee Account or any amounts deposited therein to the extent that such amounts constitute Budgeted Professional Fee Amounts, the Professional Fee Reserve or any applicable Fee Difference Amount, and (B) first priority Liens on and security interests in the DIP Collateral constituting Previously Unencumbered Collateral (as defined below) and in the Funding Account, pursuant to Section 364(c)(2) of the Bankruptcy Code, in each case as and to the extent set forth more fully below; provided, that such Liens that attach to the collateral of any Norway Subsidiary shall be limited to the amount of Loan proceeds actually received by such Norway Subsidiary and such Liens shall not attach to the Professional Fee Account or any amounts deposited therein to the extent that such amounts constitute Budgeted Professional Fee Amounts, the Professional Fee Reserve or any applicable Fee Difference Amount;

(v)     the modification or waiver by the Court of the automatic stay imposed by Section 362 of the Bankruptcy Code and any other applicable stay (including Bankruptcy Rule 6004) to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility, this Orders and the other DIP Loan Documents and to provide for the immediate effectiveness of the Orders;

(vi)     subject only to and effective upon entry of the Final Order, the limitation of the Debtors' right to surcharge the DIP Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(vii)   the scheduling by the Court of an interim hearing (the "Interim Hearing") to consider entry of an order (as entered on the docket, the "Interim Order") granting the relief requested in the Motion on an interim basis;

(viii)   the scheduling by the Court of a final hearing (the "Final Hearing") to consider entry of an order (the "Final Order") granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing and the transactions contemplated by the Motion; and

(ix)   approval of the Final Order.

Pursuant to Bankruptcy Rule 4001, this Court held an interim hearing with respect to the Motion on March 1, 2017 (the "First Interim Hearing"). Following the First Interim Hearing, the Court entered the Interim Order Pursuant to Bankruptcy Code Sections 362 and 364 and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Secured Superpriority Postpetition Financing, (II) Scheduling a Final Hearing, and (III) Granting Related Relief (the "First Interim Order") [Docket No. 50]. Pursuant to the First Interim Order, this Court authorized the Debtors to borrow, and the Debtors borrowed $20,000,000 in accordance with the DIP Loan Documents.

Following entry of the First Interim Order and prior to the scheduled Final Hearing, the Official Committee of Unsecured Creditors (the "Committee") was formed.

Pursuant to Bankruptcy Rule 4001, this Court held a second interim hearing with respect to the Motion on March 28, 2017 (the "Second Interim Hearing"). Following the Second Interim Hearing, the Court entered the Second Interim Order Pursuant to Bankruptcy Code Sections 362 and 364 and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Secured Superpriority Postpetition Financing, (II) Scheduling a Final Hearing, and (III) Granting Related Relief (the "Second Interim Order") [Docket No. 179]. Pursuant to the Second Interim Order, this Court authorized the Debtors to borrow, and the Debtors borrowed $21,000,000 (in addition to the $20,000,000 borrowed under the First Interim Order) in accordance with the DIP

Loan Documents. The Second Interim Order scheduled a continued hearing in respect of the Motion for April 13, 2017 (the "Third Interim Hearing").

The Court held the Third Interim Hearing under Bankruptcy Rule 4001 on April 13, 2017. Following the Third Interim Hearing, the Court entered the Third Interim Order Pursuant to Bankruptcy Code Sections 362 and 364 and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Secured Superpriority Postpetition Financing, (II) Scheduling a Final Hearing, and (III) Granting Related Relief (the "Third Interim Order") [Docket No. 273]. The Third Interim Order continued the relief of the First and Second Interim Orders and allowed the Debtors to continue to draw on the $41,000,000 already authorized under the First and Second Interim Orders.

Pursuant to Bankruptcy Rule 4001, this Court held a fourth interim hearing with respect to the Motion on April 24, 2017 (the "Fourth Interim Hearing"). Following the Fourth Interim Hearing, the Court entered the Fourth Interim Order Pursuant to Bankruptcy Code Sections 362 and 364 and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Secured Superpriority Postpetition Financing, (II) Scheduling a Final Hearing, and (III) Granting Related Relief (the "Fourth Interim Order") [Docket No. 319]. Like the Third Interim Order, the Fourth Interim Order continued the relief this Court granted under the First, Second, and Third Interim Orders and authorized the Debtors to continue to draw on the $41,000,000 already authorized under the First, Second, and Third Interim Orders. The Fourth Interim Order scheduled a continued hearing in respect of the Motion for May 15, 2017 (the "Fifth Interim Hearing").

Following the Fifth Interim Hearing, the Court entered the Fifth Interim Order Pursuant to Bankruptcy Code Sections 362 and 364 and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Secured Superpriority Postpetition Financing, (II) Scheduling a Final Hearing, and (III) Granting Related Relief (the "Fifth Interim Order") [Docket No. 387]. Pursuant to the Fifth Interim Order, this Court authorized the Debtors to borrow, and the Debtors

borrowed $1,387,000 (in addition to the $41,000,000 borrowed under the First and Second Interim Orders) in accordance with the DIP Loan Documents. The Fifth Interim Order scheduled a final hearing in respect of the Motion for May 24, 2017.

The Court having considered the Motion, the terms of the DIP Facility and the DIP Loan Documents, and the Summary DIP Budget attached hereto as Exhibit A, the Declaration of Stephen H. McGuire in Support of Chapter 11 Petitions and First Day Pleadings, and the evidence submitted at each of the Interim Hearings and the Final Hearing; and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014, due and proper notice of the Motion and the Final Hearing having been given; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and essential for the continued operation of the Debtors' businesses; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    Petition Date.  On February 27, 2017 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas (the "Court").  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

B.    Jurisdiction and Venue.  The Court has jurisdiction over these proceedings and the Motion, pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Committee Formation. On March 21, 2017, the Office of the United States Trustee for the  Southern District of Texas (the "United States Trustee") appointed Committee under Bankruptcy Code section 1102 [Docket No. 130].  No trustee or examiner has been appointed in the Chapter 11 Cases.

D.      Notice.  Notice of the Final Hearing and the relief request in the Motion constitutes due and sufficient and appropriate notice and complies with Section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2001 and 4001(b) and (c) and the Bankruptcy Local Rules.

E.      No Credit Available on More Favorable Terms.  The Debtors have been unable to obtain financing on more favorable terms and conditions than those provided in the DIP Documents and this Final Order.  Among other things, the Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense and also are unable to obtain credit for borrowed money without granting the DIP Liens (as defined below) and the DIP Superpriority Claim (as defined below) to (or for the benefit of) the DIP Lenders.

F.      Proceeds of the DIP Facility and DIP Collateral.  All proceeds of the DIP Facility and all proceeds of the DIP Collateral (except for Budgeted Professional Fee Amounts, the Professional Fee Reserve and any applicable Fee Difference Amount) shall be segregated and deposited in a newly-created account held at a financial institution satisfactory to the DIP Lenders (the "Funding Account") and shall be available for further disbursements only in accordance with the terms and conditions of this Final Order, the DIP Credit Agreement and the Payment Schedule and for no other purpose.

G.      Extension of Financing.  The DIP Lenders have indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and the other DIP Loan Documents and subject to entry of the Orders, including entry of this Final Order and (ii) findings by this Court that such financing is essential to the Debtors' estates, that each DIP Lender is a good faith financier, and that the DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to the First Interim Order, the Second

Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and this Final Order, and the DIP Facility (including the DIP Superpriority Claim and the DIP Liens) will not be affected by any subsequent reversal, modification, vacatur or amendment of, as the case may be, the Interim Order, this Final Order or any other order, as provided in Section 364(e) of the Bankruptcy Code.

      H.      <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>.

      (i)      The terms and conditions of the DIP Facility, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration;

      (ii)      the DIP Facility was negotiated in good faith and at arm's length among the Debtors and the DIP Lenders; and

      (iii)      the use of the proceeds to be extended under the DIP Facility will be so extended in good faith and for valid business purposes and uses, as a consequence of which the DIP Lenders are entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code.

      I.      <u>Relief Essential; Best Interest</u>.  The relief requested in the Motion (and provided in this Final Order) is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property.  It is in the best interest of the Debtors' estates that the Debtors be allowed to enter into the DIP Facility and incur the DIP Obligations.

      NOW, THEREFORE, on the Motion of the Debtors and the record before this Court with respect to the Motion, including the record made during the First Interim Hearing, the Second Interim Hearing, the Third Interim Hearing, the Fourth Interim Hearing, the Fifth Interim Hearing, and this Final Hearing and with the consent of the Debtors and each DIP Lender, and good and sufficient cause appearing therefor, it is hereby

<u>ORDERED, ADJUDGED, AND DECREED that</u>:

1.    <u>Motion Granted</u>.  The Motion is granted on a final basis in accordance with the terms and conditions set forth in this Final Order.  Any objections to the Motion with respect to entry of this Final Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2.    <u>DIP Facility</u>.

(a)    <u>DIP Obligations, etc.</u>  The Debtors are expressly and immediately authorized and empowered to (i) enter into the DIP Facility and to incur and to perform the DIP Obligations in accordance with and subject to the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and this Final Order and the other DIP Loan Documents, (ii) execute and/or deliver all DIP Loan Documents and all other instruments, certificates, agreements and documents related thereto, and (iii) take all actions which may be necessary for the performance by the Debtors under the DIP Facility, including the creation and perfection of the DIP Liens described and provided for herein.  The Debtors are hereby authorized and directed to pay all principal, interest, all reasonable and documented fees and expenses, indemnities and other amounts described herein and in the other DIP Loan Documents as such shall accrue and become due thereunder (collectively, all loans, advances, extensions of credit, financial accommodations, fees, expenses and other liabilities and obligations (including indemnities and similar obligations) in respect of DIP Extensions of Credit, the DIP Facility and the DIP Loan Documents, the "<u>DIP Obligations</u>").  The DIP Loan Documents and all DIP Obligations shall represent, constitute and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates and any successors thereto in accordance with their terms.  No obligation, payment, transfer or grant of security under the DIP Loan Documents as approved under this Final Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim. The term of the DIP Facility shall have commenced on the date of entry of the First Interim Order and end on the Termination Date, subject to the terms and conditions set forth herein and

in the other DIP Loan Documents, including the protections afforded a party acting in good faith under Section 364(e) of the Bankruptcy Code.

(b)     <u>Authorization to Borrow, etc.</u>  In order to continue to operate its business, subject to the terms and conditions of this Final Order and the other DIP Loan Documents, the Debtors are hereby authorized to borrow under the DIP Facility for the purposes and under the conditions set forth in the DIP Loan Documents and the applicable Payment Schedule.

(c)     <u>Conditions Precedent</u>.  The DIP Lenders shall have no obligation to make any DIP Extension of Credit or any other financial accommodation under the DIP Loan Documents (and the Debtors shall not make any request therefor) unless all conditions precedent to making DIP Extensions of Credit under the DIP Loan Documents have been satisfied or waived in accordance with the terms of the DIP Loan Documents.

(d)     <u>DIP Collateral</u>.  As used herein, "<u>DIP Collateral</u>" shall mean (i) all of the property of the Debtors, now owned or hereafter acquired, wherever located in the world, whether real or personal, tangible or intangible, including all Goods, Inventory, Accounts, Investment Property, Chattel Paper, Electronic Chattel Paper, General Intangibles, Payment Intangibles, Deposit Accounts, Commercial Tort Claims, Equipment, Contract Rights, Commodities Accounts, Letter of Credit Rights, Promissory Notes, Tangible Chattel Paper, Instruments, any Secondary Obligations related to any of the foregoing and all of the proceeds thereof, wherever located in the world, which was not subject to a valid, perfected and fully enforceable Lien as of the Petition Date, but, for the avoidance of doubt, excluding the Avoidance Actions and Avoidance Proceeds (each as defined below) (collectively, the "<u>Previously Unencumbered Collateral</u>") and (ii) the Funding Account; <u>provided</u> that Loan proceeds constituting Budgeted Professional Fee Amounts, the Professional Fee Reserve and any applicable Fee Difference Amount and the Professional Fee Account shall not constitute DIP Collateral.  For the avoidance of doubt, DIP Collateral does not include property owned by non-Debtor third parties.

(e)     <u>DIP Liens</u>.  As security for the DIP Obligations, effective immediately upon the entry of the First Interim Order, each DIP Lender was hereby granted pursuant to Section 364(c)(2) of the Bankruptcy Code, valid, enforceable, perfected and non-avoidable Liens on and security interests in the DIP Collateral (all liens and security interests granted to the DIP Lenders pursuant to the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and this Final Order and the other DIP Loan Documents (except as modified by this Final Order, the "<u>DIP Liens</u>"), which liens and security interests shall be first priority Liens and security interests therein, except for the Carve-Out, any perfected, enforceable and non-avoidable Liens on the Debtors' assets as of the Petition Date, and except as otherwise permitted by the DIP Credit Agreement.  For the avoidance of doubt, the DIP Collateral and the DIP Liens shall not include the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "<u>Avoidance Actions</u>") or any proceeds or property recovered, unencumbered or otherwise from successful Avoidance Actions, whether by judgment, settlement or otherwise (the "<u>Avoidance Proceeds</u>").

(f)     <u>Other Provisions Relating to the DIP Liens</u>.  The DIP Liens shall secure all of the DIP Obligations.  Except with respect to the Carve-Out, any perfected, enforceable and non-avoidable Liens on the Debtors' assets as of the Petition Date, any break-up fee (the "<u>Break-Up Fee</u>") approved by this Court in favor of the Tranche A Lender or an Affiliate thereof in connection with the 363 Sale and as otherwise permitted by the DIP Credit Agreement, the DIP Liens shall not, without the consent of the DIP Lenders, be made subject or subordinate to, or <u>pari passu</u> with, any other Lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (such cases or proceedings, "<u>Successor Chapter 11 Cases</u>"), and/or upon the dismissal of any of

the Chapter 11 Cases.  The DIP Liens shall not be subject to Sections 510, 549, 550 or 551 of the Bankruptcy Code or Section 506(c) of the Bankruptcy Code.

(g)    Superpriority Administrative Claim Status.    The DIP Obligations shall, pursuant to Section 364(c)(1) of the Bankruptcy Code, at all times constitute an allowed superpriority claim (the "DIP Superpriority Claim") of the DIP Lenders, and be payable from and have recourse to all DIP Collateral (which, for the avoidance of doubt, does not include the Avoidance Proceeds).  Except with respect to the Carve-Out and the Break-Up Fee, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings or in any Successor Chapter 11 Cases, and no priority claims are, or will be, senior to, prior to or pari passu with the DIP Liens, the DIP Superpriority Claim or any of the DIP Obligations except with respect to 507(b) claims at Debtor Lewek Constellation Pte. Ltd. as provided in any order providing for adequate protection for the Constellation Lenders (as defined in the Declaration of Stephen H. McGuire in Support of Chapter 11 Petitions and First Day Pleadings).  In the interest of clarity, the DIP Liens and the DIP Superiority Claim against a Norway Subsidiary shall be limited solely to the amount of Loan proceeds actually received by such Norway Subsidiary.

3.    Authorization and Approval to Use Proceeds of DIP Facility. Subject to the terms and conditions of the First Interim Order, the Second Interim Order, the Third Interim Order, Fourth Interim Order, the Fifth Interim Order, and this Final Order and the other DIP Loan Documents, the Debtors are authorized to request and use proceeds of the DIP Extensions of Credit. Notwithstanding anything herein to the contrary, subject only to the Debtors' rights under paragraph 14(b) hereof, the Debtors' right to request or use proceeds of DIP Extensions of Credit shall terminate on the Termination Date; provided, that all Budgeted Professional Fee Amounts, the Professional Fee Reserve and any applicable Fee Difference Amount deposited in the Professional Fee Account shall be used to pay allowed Professional Fees; provided, however, that, at the conclusion of these cases, if any funds remain in the Professional Fee Account after

payment in full of all allowed Professional Fees, such excess funds shall be used *first*, to pay any unpaid DIP Loans, if applicable, and *second*, to be distributed for the benefit of creditors pursuant the terms of a chapter 11 plan or as otherwise required pursuant to the terms of the Bankruptcy Code; provided further, that the Borrower may deliver a Notice of Borrowing to the DIP Lenders (with a copy to be provided by the Borrower contemporaneously to the Committee, provided, however, that failure to provide such notice to the Committee shall not affect the validity of the Notice of Borrowing), and the DIP Lenders shall fund the portion of the Fee Difference Amount in excess of the Professional Fee Reserve, notwithstanding the occurrence of an Event of Default or the Commitment Termination Date (provided, that the total amount of the DIP Extensions of Credit of each DIP Lender may not exceed such DIP Lender's Commitments (or, if the Commitment Termination Date has occurred, the unused Commitments in effect immediately prior to the Commitment Termination Date); provided further, that the DIP Lenders shall have no obligation to fund any Professional Fees incurred after the occurrence of the Commitment Termination Date, except as provided in the DIP Credit Agreement).  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates or other proceeds resulting therefrom outside the ordinary course of business, except as permitted herein (subject to any required Court approval).

4.     Funding Account.   All proceeds of the DIP Facility (other than Budgeted Professional Fee Amounts, the Professional Fee Reserve, and any applicable Fee Difference Amount) and all Net Asset Sale Proceeds of the DIP Collateral shall be deposited in the Funding Account and shall be available for further disbursements only in accordance with the terms and conditions of this Final Order, the DIP Loan Documents and the Payment Schedule and in no other manner and for no other purpose.

5.     Credit Bid Limitations.  Each DIP Lender acknowledges that it shall have no right to credit bid at the 363 Sale of the Ingleside Spoolbase.  Except as set forth in the immediately preceding sentence, each of the DIP Lenders shall have the right to credit bid the amount of any outstanding DIP Obligations in connection with any sale of the DIP Collateral including, without

limitation, any sale occurring pursuant to section 363 of the Bankruptcy Code or included as part of any plan of reorganization.  .

6.      Financial Reporting.    The Debtors shall provide each DIP Lender and the Committee with all of the financial reporting as required under and in all instances consistent with the DIP Loan Documents.

7.      DIP Lien Perfection.    The First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and this Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein.  Notwithstanding the foregoing, each DIP Lender may, in its sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.  The Debtors shall execute and deliver to each DIP Lender all such financing statements, mortgages, security agreements, notices and other documents as such DIP Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens.  Each DIP Lender, in its sole discretion, may file a photocopy of the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order and/or this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order.

8.      Section 506(c) Claims.   The Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Chapter 11 Cases or any Successor Case) shall be deemed to have waived any rights, benefits or causes of action under 506(c) of the Bankruptcy Code as they may relate to or be asserted against the DIP Lenders, the DIP Liens or the DIP Collateral.  Nothing contained in this Final Order or in the other DIP Loan Documents shall be deemed a consent by the DIP Lenders to any charge, lien, assessment or claim against, or in respect of, the DIP Collateral under 506(c) of the Bankruptcy Code or otherwise.

9.      Collateral Rights; Limitations in Respect of Subsequent Court Orders.  Without limiting any other provisions of the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, or this Final Order and except with respect to the Break-Up Fee, unless permitted under the DIP Loan Documents or the DIP Lenders have provided their prior written consent, there shall not be entered in the Chapter 11 Cases, or in any Successor Case, any order which authorizes the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status which is superior to or pari passu with those granted pursuant to the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order or this Final Order to or for the benefit of the DIP Lenders.  Provided, this paragraph shall not apply to the obtaining of credit if the DIP Facility is Paid in Full simultaneously with the granting of the authorization.

10.     Proceeds of Subsequent Financing.  Without limiting the provisions and protections of paragraph 9 hereof, if at any time prior to the indefeasible repayment and satisfaction in full in cash of all DIP Obligations, and the termination of each DIP Lender's obligations to make DIP Extensions of Credit, including subsequent to the confirmation of any Chapter 11 plan or plans (the "Plan") with respect to the Debtors, the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed,

shall obtain credit or incur debt in violation of the Orders or the other DIP Loan Documents, then the cash proceeds derived from such credit or debt and cash proceeds of DIP Collateral shall immediately be used by the Debtors first to pay off any unpaid amounts owed under the DIP Loan until the DIP Loan is Paid In Full in accordance with the DIP Loan Documents and paragraph 15 hereof.

11.     Cash Management.  The Debtors' cash management system shall at all times comply with the terms of the DIP Loan Documents or Orders of the Court, including, for the avoidance of doubt, that certain Third Interim Order (i) Approving the Continued Use of the debtors' Cash Management System and (II) Granting Related Relief (and such other interim or final orders entered in connection therewith).   The DIP Lenders shall be deemed to have "control" over the Funding Account and its Lien in the Funding Account and the funds therein shall be perfected for all purposes of perfection under the Uniform Commercial Code.  Until the occurrence of an Event of Default and the exercise of the DIP Lenders' rights and remedies with respect thereto, all amounts collected in the Funding Account may be used in accordance with this Final Order, the other DIP Loan Documents and the applicable Payment Schedule; after the occurrence and during the continuance of an Event of Default and the exercise of the DIP Lenders' rights and remedies with respect thereto, subject only to the Debtors' rights under paragraph 14(b) hereof, all such amounts shall be applied in accordance with paragraph 15 hereof.

12.     Disposition of Collateral.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as permitted by the DIP Loan Documents; provided, further, that the Debtors shall provide the Committee three business days' advance written notice prior to any such sale, transfer, lease, encumbrance or other disposition of any portion of the DIP Collateral to the extent the Debtors seek to dispose of such DIP Collateral in the ordinary course of business without Court approval, provide that the failure to provide such notice shall not affect the validity of any such sale, transfer, lease, encumbrance or other disposition.

13.     <u>Survival of Certain Provisions</u>.  In the event of the entry of any order converting any of the Chapter 11 Cases into a Successor Case, the DIP Liens and the DIP Superpriority Claim shall continue in these proceedings and in any Successor Case, and such DIP Liens and DIP Superpriority Claim shall maintain their respective priorities as provided by the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, or this Final Order.

14.     <u>Events of Default; Rights and Remedies Upon Event of Default</u>.

(a)     Any automatic stay otherwise applicable to the DIP Lenders is hereby modified so that, upon and after the occurrence of the Termination Date, each DIP Lender shall, subject to subparagraph (b) of this paragraph 14, be immediately entitled to exercise all of its rights and remedies in respect of the DIP Collateral in accordance with this Final Order and the other DIP Loan Documents.  The term "Termination Date" shall mean the Maturity Date. Notwithstanding the foregoing, no Estate property (other than the Funding Account) may be seized or otherwise taken or controlled without first obtaining an Order from this Court authorizing such seizure, taking, or control.

(b)     Notwithstanding the foregoing subparagraph (a) of this paragraph 14, immediately following the giving of notice by any DIP Lender to the Debtors, counsel to the Debtors, counsel for the Committee appointed in the Chapter 11 Cases and the U.S. Trustee of the occurrence of an Event of Default and the intention of such DIP Lender to exercise its rights and remedies with respect thereto: (i) all Commitments of the DIP Lenders to provide any DIP Extensions of Credit shall immediately be suspended; (ii) the Debtors shall have no right to request or use any proceeds of any DIP Extensions of Credit (including, for the avoidance of doubt, any funds in the Funding Account) other than towards the satisfaction of the DIP Obligations, as provided in the applicable DIP Loan Documents; <u>provided</u>, that all Budgeted Professional Fee Amounts, the Professional Fee Reserve and any applicable Fee Difference Amount deposited in the Professional Fee Account may be used to pay allowed Professional Fees; (iii) the Debtors shall deliver and cause the delivery of the proceeds of the DIP Extensions

of Credits to the DIP Lenders as provided herein and in the DIP Loan Documents; and (iv) the DIP Lenders shall be permitted to apply such proceeds in accordance with the terms of this Final Order and the DIP Loan Documents.  Such DIP Lender giving such notice and the Debtors shall use commercially reasonable efforts to provide such notice to counsel to the Committee, Chevron U.S.A. Inc. ("Chevron"), and Larsen & Toubro Hydrocarbon Engineering ("L&T"), provided that failure to provide such notice to counsel to the Committee, Chevron and L&T shall not invalidate the effect of the original notice given by such DIP Lender as provided in the previous sentence. The Debtors, Chevron, L&T and the Committee shall be entitled to seek an emergency hearing before this Court within five (5) Business Days' after the giving of written notice by a DIP Lender of the occurrence of an Event of Default and no DIP Lender shall object to any motion filed by the Debtors or the Committee seeking such expedited hearing nor shall seek to reduce such five (5) Business Day default notice period.  If the Debtors or the Committee do not contest the occurrence of the Event of Default within such five (5) Business Day period, or if the Debtors or the Committee do timely contest the occurrence of an Event of Default and the Court after notice and a hearing declines to stay the enforcement thereof, the Termination Date shall be deemed to have occurred for all purposes and the automatic stay, as to the DIP Lenders, shall automatically terminate in all respects.  .

(c)     Upon the occurrence of the Termination Date (but subject, only in the case of the occurrence of the Termination Date resulting from an Event of Default, to the provisions of paragraph 14(b) hereof), each DIP Lender is authorized to exercise all remedies and proceed under the applicable DIP Loan Documents.  All proceeds realized in connection with the exercise of the rights and remedies of the applicable DIP Lender shall be turned over and applied in accordance with paragraph 15 hereof.

(d)     The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Loan Documents as necessary to (i) permit the Debtors to incur all DIP Obligations and all liabilities and obligations hereunder and under the other DIP Loan Documents, as the case may be, and (ii) authorize each DIP Lender to retain

and apply payments, and otherwise enforce its respective rights and remedies hereunder subject to the provisions of paragraph 14(b) hereof.

(e)     Nothing included herein shall prejudice, impair, or otherwise affect any DIP Lender's rights to seek any supplemental relief in respect of the Debtors, nor such DIP Lender's rights to suspend or terminate the making of DIP Extensions of Credit if permitted under the terms of the applicable DIP Loan Documents.

15.     <u>Applications of Proceeds of Collateral, Payments and Collections</u>.  Subject to the Debtors' rights under paragraph 14(b) hereof, upon and after the occurrence of the Termination Date, all proceeds of DIP Collateral, whenever received, shall be paid and applied to permanently and indefeasibly pay the Break-Up Fee (but only to the extent that the Break-Up Fee is outstanding, past due and cannot be paid from sources other than DIP Collateral) and, following the payment thereof, to permanently and indefeasibly repay and reduce the DIP Obligations then due and owing in accordance with the DIP Loan Documents, until paid and satisfied in full in cash.  Without limiting the generality of the foregoing, all proceeds of DIP Collateral shall be paid to the Lenders in accordance with Section 7.02 of the DIP Credit Agreement; <u>provided</u>, that if the Break-Up Fee is outstanding, past due and cannot be paid from other sources, the proceeds of the DIP Collateral shall first be used to pay the Break-Up Fee. Nothing in this Final Order shall be construed to limit the voluntary and mandatory repayment provisions set forth in the DIP Loan Documents.

16.     <u>Proofs of Claim, etc.</u>  No DIP Lender shall be required to file proofs of claim or notices of administrative expense claims in any of the Chapter 11 Cases or any Successor Case for any claim allowed herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Case to the contrary, each DIP Lender is hereby authorized and entitled, in its sole and absolute discretion, but not required, to file (and amend and/or supplement, as each sees fit) a proof of claim or a notice of administrative expense claim in any of the Chapter 11 Cases or any Successor Case for any claim allowed herein; for the avoidance of doubt, any such proof of claim or notice of administrative

expense claim may (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim or notice of administrative expense claim against each Debtor.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Chapter 11 Cases or any Successor Case shall not apply to the DIP Lenders in their capacity as DIP Lenders.

      17.   <u>Other Rights and Obligations</u>.

      (a)   <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order</u>.  Based on the findings set forth in the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and this Final Order and in accordance with Section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility as approved by the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and/or this Final Order, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, each DIP Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby.  Notwithstanding any such modification, amendment or vacation, any claim granted to a DIP Lender hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Liens or of the DIP Superpriority Claim granted to or for the benefit of such DIP Lender shall be governed in all respects by the original provisions of the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and this Final Order, and such DIP Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Liens and the DIP Superpriority Claim granted herein, with respect to any such claim.  Because the DIP Extensions of Credit are made in reliance on the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and this Final Order, the DIP Obligations incurred by the Debtors

or owed each DIP Lender prior to the effective date of any stay, modification or vacation of this Final Order shall not, as a result of any subsequent order in the Chapter 11 Cases or in any Successor Case, be disallowed or subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to such DIP Lender under this Final Order.

(b)     Expenses.   The Debtors shall reimburse each DIP Lender for its reasonable and documented fees and costs for up to $1,000,000 for each Lender (inclusive of such Lender's professional fees and expenses) as required by the DIP Loan Documents, including Section 8.06 of the DIP Credit Agreement.   Notwithstanding any other provisions of this Final Order, the DIP Lenders, and their advisors and professionals, shall not be required to comply with the U.S. Trustee fee guidelines, but shall provide reasonably detailed statements (redacted if necessary for privileged or confidential information) to the Office of the U.S. Trustee and counsel for the Committee and the Debtors.   Thereafter, within ten (10) days of presentment of such statements, if no written objections to the fees and expenses charged in any such invoice (or portion thereof) is made, the Debtors shall pay in cash all such fees and expenses of the DIP Lenders and their advisors and professionals.   Any objection to the payment of such fees or expenses may be made (1) on the basis of "reasonableness," or (2) on the basis that such fees or expenses are not of the type specified in the DIP Loan Documents, and shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection.   To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid.   If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the Debtors, the Committee or the U.S. Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a determination.   This Court shall resolve any such dispute.

(c)     Notice of Borrowing.   Whenever the Debtors desire to incur Loans under the DIP Loan Documents, the Debtor shall give written notice to the Committee identical to, and substantially contemporaneously with, the Notice of Borrowing pursuant to the DIP Loan

Documents; provided, however, that failure to provide such notice to the Committee shall not affect the validity of the Notice of Borrowing.

(d)     Binding Effect.  The provisions of this Final Order shall be binding upon and inure to the benefit of each DIP Lender, the Debtors, the Committee and each other party in interest in the Chapter 11 Cases, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases, in any Successor Case (including any examiner appointed in the Chapter 11 Cases), or upon dismissal of any such Chapter 11 or Chapter 7 case.

(e)     No Waiver.  The failure of any DIP Lender to seek relief or otherwise exercise its rights and remedies under the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, and this Final Order, the DIP Loan Documents or otherwise, as applicable, shall not constitute a waiver of such DIP Lender's rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of any DIP Lender under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court, including, without limitation, the rights of such DIP Lender (i) to request conversion of any of the Chapter 11 Cases to cases under Chapter 7, dismissal of any of the Chapter 11 Cases, or the appointment of a trustee in any of the Chapter 11 Cases, or (ii) to propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Plan, or (iii) to exercise any of its rights, claims or privileges (whether legal, equitable or otherwise).

(f)     No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(g)    <u>No Marshaling</u>.  No DIP Lender shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

(h)    <u>Amendment</u>.   The Debtors and the DIP Lenders may amend, modify, supplement or waive any provision of the DIP Loan Documents (including, for the avoidance of doubt, the Payment Schedule) without further notice to or approval of the Court, unless such amendment, modification, supplement or waiver (i) increases the interest rate (other than as a result of the imposition of the default rate) or fees charged in connection with the DIP Facility, (ii) alters the commitments of the DIP Lenders to make DIP Extensions of Credit under the DIP Loan Documents, (iii) provides for additional Events of Default, (iv) changes the Termination Date; (v) alters the Carve-Out or impairs the lien position of any other party-in-interest, or (vi) alters any provision of the DIP Credit Agreement related to the Professional Fee Account, the Professional Fee Reserve, the Budgeted Professional Fees, or any related provision with respect thereto; <u>provided</u>, <u>however</u>, that (w) the Debtors will give the Committee three business days' advance written notice of any amendment, modification, supplement or waiver of any provision of the DIP Loan Documents (including, for the avoidance of doubt, the Payment Schedule) (the "<u>DIP Amendments</u>") notwithstanding whether such amendment requires approval of this Court, (x) if it is not possible to give the Committee three business days' advance written notice of any such DIP Amendments, the Debtors shall provide the Committee with advanced written notice of such DIP Amendments as soon as reasonably practicable, (y) the Debtors' failure to provide such notice to the Committee shall not affect the validity of any such DIP Amendment and (z) the Debtors shall make a representation in any such DIP Amendment that requisite notice has been given to the Committee.   Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, the Debtors and the DIP Lenders and approved by the Court after appropriate notice to parties in interest.

(i)    <u>Plan Support Agreement</u>. Upon the entry of this Order, the DIP Credit Agreement shall be amended to add an additional milestone requiring that a Plan Support

Agreement between (a) the Debtors, (b) the DIP Lenders in their capacities as "Plan Sponsors" and (c) the Constellation Lenders be executed and approved by the Court no later than June 7, 2017. Failure to satisfy such milestone shall constitute an Event of Default under the DIP Credit Agreement. In addition, it shall also constitute an Event of Default under the DIP Credit Agreement for such Plan Support Agreement to be terminated by the Constellation Lenders or Subsea 7.

        (j)      <u>Priority of Terms</u>. To the extent of any conflict between or among (i) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (ii) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as set forth in" the DIP Credit Agreement, the terms and provisions of this Final Order shall govern.

        (k)      <u>Survival of Final Order</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in any of the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from this Court or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court. The terms and provisions of this Final Order, including the DIP Liens and DIP Superpriority Claim granted pursuant to this Final Order shall continue in full force and effect notwithstanding the entry of such order, and such DIP Liens and DIP Superpriority Claim shall maintain their priority as provided by this Final Order and the other DIP Loan Documents (as the case may be), until all of the DIP Obligations have been indefeasibly paid and satisfied in full in cash and discharged.

        (l)      <u>Reservation of Rights</u>. The Committee's consent to this Final Order is conditioned upon, among other things, specific treatment of General Unsecured Creditors (the "<u>General Unsecured Plan Treatment</u>") agreed to under the terms of the Plan of Reorganization

filed by certain of the Debtors on May [24], 2017 [Docket No. ___] (the "Plan"). Notwithstanding any other provision of this Final Order, the Committee shall have the right to object (a "Committee Objection") to any additional and/or subsequent draws or borrowings under the DIP Credit Agreement if the General Unsecured Treatment in the Plan is modified in any way by the Debtors without the Debtors obtaining the advance written consent of the Committee; provided, however, that all DIP Extensions of Credit and all DIP Obligations relating thereto prior to any ruling by this Court in respect of a Committee Objection shall be valid, binding and enforceable, and shall have all of the protections afforded to the DIP Lenders under the DIP Loan Documents, including this Final Order.

(m)     Enforceability.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon execution hereof.

(n)     No Waivers or Modification of Final Order.   The Debtors irrevocably waive any right to seek any modification or extension of this Final Order without the prior written consent of the DIP Lenders, and no such consent shall be implied by any other action, inaction or acquiescence of any DIP Lender.

(o)     Waiver of any Applicable Stay.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

(p)     Bankruptcy Rule 6003. The requirements of Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

(q)     Headings.  Section headings used in this Final Order are for convenience only and are meant to affect the construction of or to be taken into consideration in interpreting this Final Order.

(r)     Limitation of Liability.   In determining to make any loan or other extension of credit under the DIP Credit Agreement or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the Tranche A Lender

shall not (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).

18.     <u>Waiver of Past Defaults</u>.   Upon this entry of this Final Order, all Events of Default resulting from the Debtors' failure to satisfy the milestones set forth in the DIP Credit Agreement shall be waived.  Further, any Events of Default resulting from the Debtors' failure to execute security documents within 60 days of the First Interim Order as required by the DIP Credit Agreement shall be waived; <u>provided</u>, all such security documents are executed on or before June 7, 2017.  Nothing in this Section 18 shall waive the Debtors' obligations to comply with any provisions of the DIP Credit Agreement, including all future milestones.

19.     <u>Retention of Jurisdiction</u>.   The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: Houston, Texas

_____5-25_____, 2017

_____
Honorable Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

EMAS Chiyoda Subsea Consolidated budgeted cash flow summary

## Budgeted cash flow through July 1, 2017

| | Wk 13 May 21 to May 27 | Wk 14 May 28 to June 3 | Wk 15 June 4 to 10 | Wk 16 June 11 to 17 | Wk 17 June 18 to 24 | Wk 18 June 25 to July 1 | Total |
|---|---|---|---|---|---|---|---|
| **$000s** | | | | | | | |
| **Receipt schedule** | | | | | | | |
| Customer and other receipts | 985 | 8,163 | - | 10,071 | 5,000 | 10,575 | 34,795 |
| **Total Receipts** | 985 | 8,163 | - | 10,071 | 5,000 | 10,575 | 34,795 |
| **Post petition Disbursement schedule** | | | | | | | |
| **Shore side payments** | | | | | | | |
| Salaries | (2,179) | (680) | - | (910) | (42) | (2,836) | (6,647) |
| Employee benefits and taxes | (54) | (870) | - | (515) | - | (924) | (2,363) |
| Travelling and expenses claims | (91) | (123) | (338) | (18) | (91) | (130) | (791) |
| Rentals | (3) | (707) | (8) | - | - | (397) | (1,115) |
| Other shore side payments | (372) | (623) | (71) | - | (10) | (622) | (1,698) |
| Sub-total shore side payments | (2,700) | (3,003) | (416) | (1,443) | (143) | (4,909) | (12,614) |
| Tax payments | - | - | - | - | (58) | - | (58) |
| **Vessel related payments** | | | | | | | |
| - Vessel leases | - | (833) | - | - | - | (775) | (1,608) |
| - Vessel financing | - | - | - | - | - | (5,212) | (5,212) |
| - Crew salaries and other crew costs | (990) | - | - | - | (670) | (110) | (1,770) |
| - Vessel Insurance | (713) | - | - | (54) | - | (238) | (1,004) |
| - Variable vessel opex costs | (539) | (1,500) | - | - | (210) | (627) | (2,876) |
| - CAPEX | - | (929) | (250) | (367) | (180) | (353) | (2,078) |
| - Others | - | - | - | - | - | - | - |
| Sub-total Vessel related payments | (2,242) | (3,262) | (250) | (420) | (1,060) | (7,314) | (14,547) |
| Project payments | (6,624) | (6,667) | (5,332) | (18,853) | (8,190) | (8,000) | (53,665) |
| Contingency payments | - | (4,500) | - | - | - | (500) | (5,000) |
| Interco (receipts) | 593 | - | - | - | - | 2,649 | 3,242 |
| Interco (payments) | (593) | - | - | - | - | (2,649) | (3,242) |
| Financing payments | (45) | (22) | - | - | - | (22) | (89) |
| **Total Post petition Disbursements** | (11,611) | (17,454) | (5,998) | (20,716) | (9,451) | (20,745) | (85,974) |
| **Restructuring related costs** | | | | | | | |
| - Professional Fees | (795) | (721) | (721) | (721) | (721) | (1,894) | (5,573) |
| - US Trustee Fees | - | - | - | - | - | - | - |
| - Restructuring Actions | - | - | - | - | - | - | - |
| Total restructuring related costs | (795) | (721) | (721) | (721) | (721) | (1,894) | (5,573) |
| **Prepetition Disbursement schedule** | | | | | | | |
| - Tax payments | - | - | - | - | - | - | - |
| - Critical vendors | (728) | (2,348) | (521) | (301) | (129) | (1,202) | (5,230) |
| - Insurance | (44) | - | - | - | - | - | (44) |
| - Employee related | - | - | - | - | - | - | - |
| - Potential payment related to clients' receipt | - | - | - | - | - | - | - |
| - Potential payment related to vessels | - | - | - | - | - | - | - |
| Total Prepetition Disbursements | (772) | (2,348) | (521) | (301) | (129) | (1,202) | (5,274) |
| **Total Disbursements** | (13,177) | (20,523) | (7,240) | (21,739) | (10,301) | (23,841) | (96,820) |
| **Cash from (used in) operations** | (12,192) | (12,360) | (7,240) | (11,668) | (5,301) | (13,265) | (62,025) |
| **Beginning cash balance - unrestricted** | 1,219 | 808 | 1,958 | 1,018 | 3,350 | 7,869 | 1,219 |
| Cash from (used in) operations | (12,192) | (12,360) | (7,240) | (11,668) | (5,301) | (13,265) | (62,025) |
| Decrease/(increase) in restricted cash | - | 6,000 | - | - | - | - | 6,000 |
| Requested DiP borrowings | 11,780 | 7,510 | 6,300 | 14,000 | 9,820 | 6,875 | 56,285 |
| Ending cash balance - unrestricted | 808 | 1,958 | 1,018 | 3,350 | 7,869 | 1,480 | 1,480 |
| **DIP draws for the benefit of:** | | | | | | | |
| Emas AMC Pte Ltd | 8,100 | - | 2,000 | - | 8,500 | - | 18,600 |
| Emas Chiyoda Subsea inc | 2,200 | 1,100 | 2,000 | - | - | 2,300 | 7,600 |
| Emas Saudi Arabia Ltd | 500 | 1,200 | 1,550 | 13,300 | 570 | 1,100 | 18,220 |
| Emas Chiyoda Subsea Limited | 800 | 5,200 | 750 | 700 | 750 | 1,850 | 10,050 |
| Lewek Constellation | 90 | - | - | - | - | 1,600 | 1,690 |
| Emas Chiyoda ROV Pte Ltd | - | - | - | - | - | - | - |
| Emas Chiyoda Subsea Services Pte Ltd | - | - | - | - | - | (150) | (150) |
| Emas Chiyoda Subsea Services B.V. | 60 | 10 | - | - | - | 150 | 220 |
| Emas Chiyoda Subsea Thailand Co. Ltd | - | - | - | - | - | - | - |
| Lewek Falcon Shipping Pte Ltd | - | - | - | - | - | - | - |
| Emas Chiyoda Subsea Services UK Ltd | 30 | - | - | - | - | 25 | 55 |
| Emas Chiyoda Subsea Services LLC | - | - | - | - | - | - | - |
| **Total** | 11,780 | 7,510 | 6,300 | 14,000 | 9,820 | 6,875 | 56,285 |
| **DIP Balance at end of the week** | 42,387 | 49,897 | 56,197 | 70,197 | 80,017 | 86,892 | |
| **Restricted Cash balance** | | | | | | | |
| Cash collateral deposits | 8,717 | 2,717 | 2,717 | 2,717 | 2,717 | 2,717 | |
| DIP - Professional fees | 11,910 | 12,631 | 13,352 | 14,073 | 14,794 | 16,688 | |
| DIP - Utilities | 45 | 45 | 45 | 45 | 45 | 45 | |
| **Total** | 20,672 | 15,393 | 16,114 | 16,835 | 17,556 | 19,450 | |